

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 2, 2025**

_____
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AMERGENT HOSPITALITY GROUP, INC.; | § | Case No. 24-42483-MXM-11 |
| et al.,[1] | § | (Jointly Administered) |
| | § | Chapter 11 |
| Debtors. | § | |

### ORDER (I) APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT, (II) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (III) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, (IV) MODIFYING THE REQUIREMENT TO PROVIDE NOTICE DIRECT TO THE EQUITY SECURITY HOLDERS, AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order (this "Order"), pursuant to sections

105, 363, 502, 1123(a), 1124, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules

---

[1] The jointly administered debtors are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (   24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494). Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion

2002, 3016, 3017, 3018, 3020, and 9006, and Bankruptcy Local Rules 2002-1 and 3016-1: (a)

approving the adequacy of the *Disclosure Statement Relating to the Joint Chapter 11 Plan of*

*Liquidation of Amergent Hospitality Group, Inc. and its Debtor Affiliates*, substantially in the

form attached to this Order (the "Disclosure Statement"); (b) approving the Ballots; (c)

approving the Cover Letter; (d) approving the Confirmation Hearing Notice; (e) approving the

Non-Voting Status Notice; and (f) approving certain dates and deadlines related to the foregoing;

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and that this

Court may enter a final order consistent with Article III of the United States Constitution; and

this Court having found that venue of this proceeding and the Motion in this district is proper

pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in

the Motion is in the best interests of the Debtors' Estates, their creditors, and other parties in

interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a

hearing on the Motion were appropriate under the circumstances and no other notice need be

provided; and this Court having reviewed the Motion and having heard the statements in support

of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court

having determined that the legal and factual bases set forth in the Motion and at the Hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before this

Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.     The Motion is granted as provided herein.

2.     *Approval of Disclosure Statement*. The Disclosure Statement, attached hereto as

**Exhibit 1**, is approved as containing adequate information within the meaning of section 1125 of

the Bankruptcy Code.

3.      *Confirmation Deadlines*. The following dates are hereby established (subject to

modification as necessary) with respect to the solicitation of votes to accept the Plan, voting on

the Plan, and confirming the Plan:

| Event | Date |
|---|---|
| Voting Record Date | Date of Entry of this Order |
| Solicitation Mailing Deadline | Five (5) business days following the entry of the Order (or as soon as reasonably practicable thereafter) |
| Voting Deadline | 30 calendar days following the Solicitation Mailing Deadline at 11:59 p.m. (prevailing Central Time) |
| Confirmation Objection Deadline | Five (5) business days prior to the Confirmation Hearing Date at 5:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | Three (3) business days prior to the Confirmation Hearing Date |
| Confirmation Hearing Date | **October 21, 2025 at 1:30 p.m. CT** or such other date as may be scheduled by the Court |

4.      *Share Ledger*. The transfer agent for the Debtors' common stock is directed to

provide the Solicitation Agent with lists of the registered holders of the registered holders of the

Debtors' common and preferred stock, respectively, reflecting the share amounts held by

registered holders of the Debtors' common stock held as of the Voting Record Date as soon as

practicable, but no later than one (1) Business Day following the Voting Record Date.

5.      *Solicitation Package*. The Solicitation Packages to be transmitted on or before the

Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter, to those holders of

Claims and Interests entitled to vote on the Plan as of the Voting Record Date, shall include the

following, the form of each of which is hereby approved:

a)      this Order (excluding the Exhibits hereto, except as set forth below);

b)      the Disclosure Statement attached hereto as **Exhibit 1**;

c)      the applicable form of Ballot, in substantially the form of the Ballots attached
        hereto as **Exhibit 2**;

d)      a cover letter, in substantially the form attached hereto as **Exhibit 3** describing the contents of the Solicitation Package and urging the holders of Claims and Interests in each of the Voting Classes to vote to accept the Plan;

e)      the Confirmation Hearing Notice substantially the form attached hereto as **Exhibit 5**; and

f)      a pre-addressed, postage pre-paid reply envelope.

6.      *Solicitation*. The Debtors shall distribute Solicitation Packages to all holders of Claims and Interests entitled to vote on the Plan on or before the Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter. Such service shall satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

7.      *Manner of Distribution*. The Debtors are authorized, but not directed or required, to distribute the Plan, the Disclosure Statement, and this Order to holders of Claims and Interests entitled to vote on the Plan in electronic format (*i.e.*, on a CD-ROM or flash drive) only. Any party that receives materials in electronic format, but would prefer to receive materials in paper format, may contact the Solicitation Agent and request paper copies of the materials previously received in electronic format (to be provided at the Debtors' expense). ***Only*** the Ballots, the Solicitation Procedures, the Cover Letter, and the Confirmation Hearing Notice will be provided in paper form.

8.      *Notice to Shareholders*.  The requirement to provide notice to equity security holders of AHGI is hereby modified, and the Debtors are authorized to serve the notices required under Bankruptcy Rule 2002(d) on the registered and nominee holders of AHGI's equity securities with instructions to serve such notices down to the beneficial holders of equity securities. The Debtors shall also publish the Plan Solicitation Materials on the Debtors' case website located at https://cases.stretto.com/AHGI and file a Form 8-K with the SEC prior to the Plan Solicitation Deadline, notifying their investors and other parties of the Plan Deadlines.

9.  *Solicitation and Tabulation.* The Solicitation Agent is authorized to assist the Debtors in: (a) distributing the Solicitation Packages; (b) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Solicitation Packages (including the Ballots), and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan or the adequacy of the Disclosure Statement; and (c) if necessary, contacting creditors or interest holders regarding the Plan and/ or the Disclosure Statement.

10. *Electronic Voting.* The Solicitation Agent is also authorized to accept Ballots via electronic online transmission including electronic mail.

11. *Notice Only.* Except to the extent the Debtors determine otherwise, the Debtors are not required to provide Solicitation Packages to holders of Claims or Interests in Non-Voting Classes, as such holders are not entitled to vote on the Plan. Instead, on or before the Solicitation Mailing Deadline, or as soon as reasonably practicable thereafter, the Solicitation Agent shall mail (first-class postage prepaid) a Non-Voting Status Notice in lieu of Solicitation Packages, the form of each of which is approved, to those parties, outlined below, who are not entitled to vote on the Plan:

| Debtor Name | Classes Not Entitled to Vote | Treatment; Deemed Voting; Notice Received |
|---|---|---|
| **Parent Company**<br>• Amergent Hospitality Group, Inc. | Classes 4-7 | Receive no Distribution under the Plan, Deemed to Reject<br><br>Will receive a notice, substantially in the form attached to the Order as **Exhibit 4**, in lieu of a Solicitation Package |

| **Little Big Burger (LBB) Debtors**<br>• LBB Acquisition, LLC<br>• LBB Acquisition I, LLC<br>• LBB Platform, LLC<br>• LBB Lake Oswego, LLC<br>• LBB Progress Ridge, LLC<br>• Noveno LLC (Alberta)<br>• Quinto LLC (Division)<br>• Sexto LLC (Waterfront)<br>• Cuarto LLC (Eugene) | Class 1 (Secured) | Unimpaired; Deemed to Accept<br><br>Will receive a Solicitation Package |
| | Classes 4-7 | Receive no Distribution under the Plan, Deemed to Reject<br><br>Will receive a notice, substantially in the form attached to the Order as **Exhibit 4**, in lieu of a Solicitation Package |
| **Boudreaux's Cajun Kitchen (BCK) Debtor**<br>• I10/I20 Cuisine LLC | Class 1 (Secured) | Unimpaired; Deemed to Accept<br><br>Will receive a Solicitation Package |
| | Classes 4-7 | Receive no Distribution under the Plan, Deemed to Reject<br><br>Will receive a notice, substantially in the form attached to the Order as **Exhibit 4**, in lieu of a Solicitation Package |

12. *Other Notices*. The Debtors are not required to mail Solicitation Packages, other solicitation materials, or a Non-Voting Status Notice to: (a) holders of Claims that have already been paid in full during the Chapter 11 Cases; (b) any party to whom the notice of this motion was sent but was subsequently returned as undeliverable without a forwarding address; or (c) the holders of Class 4 Intercompany Claims or Class 5 Subordinated Claims and Class 6 Intercompany Interests.

13. *Confirmation Hearing Notice*. The Confirmation Hearing Notice, in the form attached hereto as **Exhibit 5** constitutes adequate and sufficient notice of the hearing to consider approval of the Plan, the manner in which a copy of the Plan and Disclosure Statement can be

obtained, and the time fixed for filing objections thereto, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

14.     *Confirmation Objections*. Objections to the Plan will not be considered by the Court unless such objections are timely filed and properly served in accordance with this Order. Specifically, all objections to confirmation of the Plan or requests for modifications to the Plan, if any, **must**: (a) be in writing; (b) conform to the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Court by **October 14, 2025 at 5:00 p.m.** (prevailing Central Time).

15.     *Non-Substantive Modifications*. The Debtors are authorized to make non-substantive or immaterial changes to the Disclosure Statement, the Plan, the Solicitation Package, and related documents without further order of the Court, including changes to correct typographical and grammatical errors, and to make conforming changes among the Disclosure Statement, the Plan, and related documents (including the appendices thereto) where, in the Debtors' reasonable discretion, doing so would better facilitate the solicitation process. Subject to the foregoing, the Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with this Order, without further order of the Court. The Debtors' rights are reserved to modify the Plan without further order of the Court in accordance with the Plan, including the right to withdraw the Plan as to an individual Debtor at any time before the Confirmation Date.

16.     *No Waiver of Claim Objections*. Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a proof of claim after the Voting Record Date.

17.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

18.     Notice of the Motion as provided therein shall be deemed good and sufficient and the requirements of the Bankruptcy Local Rules are satisfied by such notice.

19.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

21.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

### END OF ORDER ###

Submitted by:

Richard G. Grant
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

COUNSEL FOR
DEBTORS IN POSSESSION

# EXHIBIT 1
## DISCLOSURE STATEMENT

**[*Revised Disclosure Statement to be Filed Prior to Hearing*]**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AMERGENT HOSPITALITY GROUP, INC.; | § | Case No. 24-42483-MXM-11 |
| et al.,[1] | § | (Jointly Administered) |
| | § | Chapter 11 |
| Debtors. | § | |

**<u>FIRST AMENDED DISCLOSURE STATEMENT
FOR THE JOINT CHAPTER 11 PLAN OF LIQUIDATION AMERGENT HOSPITALITY
GROUP, INC. AND ITS JOINTLY ADMINISTERED DEBTORS</u>**

Dated: September 2, 2025

Richard G. Grant
Tex. Bar No. 08302650
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR
DEBTOR IN POSSESSION

---

[1] The jointly administered debtors (the "Jointly Administered Debtors") are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494).

***<u>THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.</u>***
<u>**ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**</u>

## <u>IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT</u>

Each of the Jointly Administered Debtors (collectively, the "<u>Debtors</u>"), are providing you this document and the accompanying materials (this "<u>Disclosure Statement</u>") because you may be a creditor entitled to vote to accept or reject the *Amended Joint Chapter 11 Plan of Liquidation for Amergent Hospitality Group, Inc. and Its Jointly Administered Debtors* (including all exhibits and schedules attached thereto, and as may be amended, altered, modified, or supplemented from time to time, the "<u>Plan</u>"),[2] attached hereto as <u>Exhibit A</u>.

## <u>DISCLAIMER</u>

This Disclosure Statement contains, among other things, summaries of the Plan, certain statutory provisions, and certain events occurring in the Chapter 11 Cases. Although the Debtors believe that these summaries are fair and accurate, these summaries are qualified in their entirety to the extent that they do not set forth the entire text of such documents or statutory provisions or every detail of such events. In the event of any inconsistency or discrepancy between a description in this Disclosure Statement and the terms and provisions of the Plan or any other documents incorporated herein by reference, the Plan or such other documents will govern for all purposes. Factual information contained in this Disclosure Statement has been provided by the Debtors' management, professionals, and the Chapter 11 Trustees except where otherwise specifically noted.

The statements contained in this Disclosure Statement are made only as of the date of this Disclosure Statement, and there can be no assurance that the statements contained herein will be correct at any time after this date. Although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so, except as otherwise provided in the Plan or in accordance with applicable law. The information contained in this Disclosure Statement, including the information regarding the history, businesses, and operations of the Debtors and the liquidation of the Debtors' assets, is included for purposes of soliciting acceptances of the Plan, but, as to contested matters and adversary proceedings, is not to be construed as an admission or stipulation, but rather as a statement made in settlement negotiations as part of the Debtors' attempt to settle and resolve claims and controversies pursuant to the Plan. This Disclosure Statement will not be admissible in any non-bankruptcy proceeding, nor will it be construed to be conclusive advice on the tax, securities, or other legal effects of the Plan as to holders of Claims against, or Interests in, the Debtors. The Debtors do not represent or warrant that the information contained herein or attached hereto is without any material inaccuracy or omission. Except where specifically noted, the financial information contained in this Disclosure Statement and the exhibits hereto has not been audited by a certified public accountant and has not been prepared in accordance with generally accepted accounting principles in the United States.

The Debtors have not authorized any Person or Entity in connection with this Disclosure Statement, the Plan, or the solicitation of votes on the Plan (the "<u>Solicitation</u>") to give any information or make any representation or statement regarding this Disclosure Statement, the Plan, or the Solicitation, in

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan (defined below).

each case, other than that which is contained in this Disclosure Statement and the exhibits hereto or as otherwise incorporated by reference or referred to herein. If any such information, representation, or statement is given or made, it may not be relied upon as having been authorized by the Debtors.

_____

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................... 6

ARTICLE I. Overview of the Disclosure statement and plan ............................................... 6

ARTICLE II. BUSINESS OVERVIEW AND CORPORATE HISTORY ............................ 6
   2.01   Overview of the Debtors' Business ....................................................................... 6
   2.02   Prepetition Capital Structure ................................................................................. 8

ARTICLE III. EVENTS LEADING TO THE CHAPTER 11 FILINGS ............................... 9

ARTICLE IV. KEY EVENTS DURING THE CHAPTER 11 CASES ................................. 10
   4.01   Commencement of the Chapter 11 Cases ............................................................ 10
   4.02   No Formation of the Creditors' Committees ....................................................... 10
   4.03   Petition Dates and First Day Motions .................................................................. 10
   4.04   Sale Motions ......................................................................................................... 10
   4.05   Relief from Stay .................................................................................................... 11
   4.06   Monthly Operating Reports .................................................................................. 11
   4.07   Sales of Estate Assets ........................................................................................... 11
        A.   Sale of Burgers Grilled Right (BGR) Restaurants ............................................ 11
        B.   Sale of Little Big Burger (LBB) Restaurants ................................................... 11
        C.   Sale of Boudreaux's Cajun Kitchen Restaurants ............................................. 12
   4.08   Bar Date Orders .................................................................................................... 13
   4.09   Ongoing Investigations ......................................................................................... 13

ARTICLE V. THE PLAN ...................................................................................................... 13

ARTICLE VI. VOTING PROCEDURES AND REQUIREMENTS ..................................... 14
        A.   Classes Entitled to Vote on the Plan ................................................................ 14
        B.   Votes Required for Acceptance by a Class ...................................................... 14
        C.   Classes Not Entitled to Vote on the Plan .......................................................... 15

ARTICLE VII. CONFIRMATION PROCEDURES ............................................................. 16
   7.01   Hearing on Confirmation ...................................................................................... 16
   7.02   Requirements for Confirmation of the Plan .......................................................... 16
        A.   Best Interests of Creditors ................................................................................ 17
        B.   Feasibility ......................................................................................................... 17
        C.   Acceptance by Impaired Class .......................................................................... 18
        D.   Confirmation Without Acceptance by Impaired Class ...................................... 18
        E.   Alternatives to Confirmation and Consummation of the Plan ........................... 19

ARTICLE VIII. RISK FACTORS .......................................................................................... 19
   8.01   Objections to the Plan's Classification or Amounts of Claims and Interests ............ 19
   8.02   Failure to Satisfy Voting Requirements ................................................................ 19
   8.03   Amendment of Plan by the Debtors Prior to Confirmation .................................. 19
   8.04   Non-Confirmation or Delay of Confirmation of the Plan ..................................... 20
   8.05   Non-Consensual Confirmation ............................................................................. 20
   8.06   Other Parties in Interest May Be Permitted to Propose Alternative Plans that Are Less
        Favorable to Certain Stakeholders ........................................................................ 20

8.07     Conversion to Chapter 7 ............................................................................... 21
8.08     Proceeds of Sales .......................................................................................... 21

ARTICLE IX. Disclosure Statement Disclaimer.......................................................... 21
9.01     Information Contained Herein is for Soliciting Votes.................................. 21
9.02     No Legal or Tax Advice is Provided to You by this Disclosure Statement ............... 21
9.03     No Admissions Made...................................................................................... 21
9.04     Failure to Identify Claims, Litigation Claims or Projected Objections .................. 21
9.05     No Waiver of Right to Object or Right to Recover Transfers and Assets................. 22
9.06     Reliance Upon Debtors' Information.............................................................. 22
9.07     Potential Exists for Inaccuracies, and the Debtors have no Duty to Update ............. 22

ARTICLE X. CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES OF
THE PLAN ...................................................................................................................... 22
10.01    A. U.S. federal income tax consequences of the Plan. ................................. 22
10.02    Certain Federal Income Tax Consequences to the Debtors ......................... 23
10.03    Federal Income Tax Treatment of the Trust ................................................ 24
10.04    Federal Income Tax Consequences to Holders of Claims ........................... 25
10.05    Allocation of Consideration to Interest........................................................ 26
10.06    Federal Income Tax Treatment of Holders of Equity Interests ................... 27
10.07    Reservation of Rights.................................................................................... 27

ARTICLE XI. CONCLUSION AND RECOMMENDATION............................................ 27

*THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.*

## INTRODUCTION

This Disclosure Statement provides information, pursuant to section 1125 of the Bankruptcy Code, regarding the Plan, a copy of which is attached hereto as **Exhibit A**.

The Debtors believe that the Plan will enable the Debtors to accomplish the objectives of an orderly liquidation of the Debtors' assets and maximizing creditor recoveries, and that acceptance of the Plan is in the best interest of the Debtors' estates and holders of Claims. Accordingly, the Debtors urge the holders of Claims to vote to accept the Plan.

The Debtors are seeking the Bankruptcy Court's approval of the Plan. Section 1125 of the Bankruptcy Code requires a plan proponent to prepare a disclosure statement containing information of a kind, and in sufficient detail as is reasonably practicable, to enable a hypothetical investor to make an informed judgment regarding acceptance of that chapter 11 plan. The Debtors submit this Disclosure Statement in accordance with such requirements.

## ARTICLE I.
## OVERVIEW OF THE DISCLOSURE STATEMENT AND PLAN

The Plan contains three primary divisions. First, the Plan provides for the distribution of the $1.0MM sales proceeds it received upon the sale of the Little Big Burger restaurant locations located in the Oregon area. Secondly, it notifies creditors that the Boudreaux's Cajun Kitchen entity is administratively insolvent, and there will be no distributions to creditors. Third, the Plan provides for the reorganization of the parent entity, Amergent Hospitality Group, Inc., through the cancellation of equity and subordinated unsecured claims and the issuance of new common stock to the secured and unsecured creditors of AHGI.

Prior to discussing the details of the Plan, this Disclosure Statement will discuss the Debtors' businesses, pre-petition assets and pre-petition liabilities. It will then discuss the key events leading to this chapter 11 filing. Next, this Disclosure Statement will summarize the significant events occurring during this Chapter 11 proceeding. This Disclosure Statement will then summarize the assets available in the case and discuss the claims held by creditors. This Disclosure Statement will then discuss certain of the key provisions of the Plan and the risk factors associated therewith. This Disclosure Statement will also discuss the actual confirmation process.

## ARTICLE II.
## BUSINESS OVERVIEW AND CORPORATE HISTORY

### 2.01   Overview of the Debtors' Business

As of the Petition Date, American Hospitality Group, Inc. owned and operated approximately 5 fast-casual restaurant brands: Little Big Burger ("LBB"); Burgers Grilled Right ("BGR"); Boudreaux's Cajun Kitchen ("BCK"); Jaybee's Chicken Palace and PizzaRev. Not all of the subsidiaries of AGHI filed

for Chapter 11. Only the parent company, AGHI, and its subsidiaries for the LBB and BCK brands filed for Chapter 11 protection. The Debtors' operational restaurants are described in Exhibit A attached hereto.

AGHI's principal office is located at 7529 Red Oak Lane, Charlotte, North Carolina 28226. The Debtors own no real estate, but leased each of the store locations. The primary tangible assets of the Debtors consist of the leased locations, store-level bank accounts and a small amount of accounts receivable in the form of credit card receipts (typically 1-3 days).

The board of directors of AHGI consists of Mike Pruitt, Eric Wagoner and Keith Johnson. The officers of the Debtor include Mr. Pruitt as CEO/President and Steve Hoelscher as CFO. Subsidiaries of AHGI are specified in **Schedule 1** attached hereto (the "Organization Chart), which also indicates filing and non-filing subsidiaries. In general, each store location was held in a limited liability company (a "Store Subsidiary") organized in the state of the store location. All Store Subsidiaries are owned by a brand parent company (a "Brand Subsidiary") such as nondebtors BGR Acquisitions, LLC (holds BGR stores), Debtor LBB Acquisition, LLC (holds LBB) and Debtor I10/I20 Cuisine LLC (holds BCK brand, hereinafter, "BCK"). All of BCK stores are directly leased by I10/I20 Cuisine, LLC, which has no subsidiaries.



**2.02     Prepetition Capital Structure**

Secured claimants of the Debtors consist of store-level Receivables Purchase Financing (the LBB Stores), the Boudreaux's Seller Financing (BCK only), and the Oz Rey Secured Debentures (AGHI parent level), discussed as follows:

*BCK Seller Financing.* BCK acquired certain of the BCK restaurants from Boudreaux's Cajun Kitchen, Inc., a Texas corporation, unaffiliated with the Debtors (the "BCK Seller"), in approximately March, 2023. BCK allegedly executed (a) a 6.0% Secured Convertible Promissory Note (the "BCK Seller Note") in favor of the BCK Seller; and (b) a Security Agreement in all personal property and proceeds. A Guaranty was allegedly executed by AHGI of the BCK Seller Note. The BCK Seller filed a UCC1 Financing Statement against BCK on or about March 28, 2023. Rewards Network is not a party to a Deposit Account Control Agreement. Accordingly, the Debtor asserts that the BCK Seller at most has a perfected security interest in the BCK' FF&E, accounts receivable and the proceeds thereof. The Debtor estimates the asserted balance of the BCK Seller Note to be $1.3MM.

*Rewards Network Receivables Purchase Financing.* Rewards Network Establishment Services Inc., a Delaware corporation ("Rewards Network") and the LBB Store Subsidiaries are parties to a Rewards Network Receivables Purchase and Marketing Agreement dated April 5, 2023. Rewards Network is not a party to a Deposit Account Control Agreement. There is no UCC1 on file with Rewards Network as a named secured party; however, there are UCC1s filed by Corporation Service Company, as representative, that appears to be Financing Statements for an accounts receivable purchaser, covering all personal property, fixtures and proceeds. Accordingly, the Debtor asserts that Rewards Network at most has a perfected security interest in the LBB Store Subsidiaries FF&E, accounts receivable and the proceeds thereof. The Debtor estimates Rewards Network asserts a claim against the LBB Store Subsidiaries in the amount of $344,000.

*BCK Receivables Purchase Financing.* Libertas Funding, LLC ("Libertas") is a party to an Agreement[s] of Sale of Future Receipts with Boudreaux's and AHGI (Boudreaux's Cajun Kitchen) dated January 25, 2024 and March 13, 2024. Libertas is not a party to a Deposit Account Control Agreement but holds an ECF Authorization only. There is no UCC1 on file with Libertas as a named secured party; however, there is a UCC1 filed by Corporation Service Company, as representative, that appears to be a Financing Statement for an accounts receivable purchaser, covering "all personal property and fixtures…. and proceeds." Accordingly, the Debtor asserts that Libertas at most has a perfected security interest in BCK's FF&E, accounts receivable and the proceeds thereof, subordinate to that of the BCK Seller Note. The Debtor estimates Libertas' asserts a claim against Boudreaux's in the amount of $344,000.

*LBB Platform Receivables Purchase Financing.* LG Funding LLC ("LG Funding") and LBB Platform LLC are parties to a Standard Merchant Cash Advance Agreement dated January 25, 2024. LG Funding is not a party to a Deposit Account Control Agreement. There is no UCC1 on file with LG Funding as a named secured party and none that appear to be filed by any nominee. Accordingly, the Debtor asserts that LG Funding is likely unsecured as having failed to file a Financing Statement. The Debtor estimates LG Funding's claim against LBB Platform, LLC at $20,228.

*LBB Division Receivables Purchase Financing.* LG Funding and Quinto LLC are parties to a Standard Merchant Cash Advance Agreement dated January 25, 2024. LG Funding is not a party to a Deposit Account Control Agreement. There is no UCC1 on file with LG Funding as a named secured party and none that appear to be filed by any nominee. Accordingly, the Debtor asserts that LG Funding is likely unsecured as having failed to file a Financing Statement. The Debtor estimates LG Funding's claim against Quinto LLC at $15,171.

*LBB Progress Receivables Purchase Financing*. Kapitus LLC ("Kapitus") and LBB Progress Ridge LLC are parties to a Forward Purchase Agreement (Fixed ACH Delivery) dated October 4, 2023. LG Funding is not a party to a Deposit Account Control Agreement. This agreement is purportedly cross-collateralized with assets of AHGI, Quinto LLC, Noveno LLC, LBB Platform, LLC and I10/I20 Cuisine LLC (the "Debtor Kapitus Collateral Parties") and other non-debtor affiliates; however, no party other than arguably LBB Progress Ridge, LLC signed the agreement. There is no UCC1 on file with Kapitus as a named secured party; however, there is a UCC1 filed in late October, 2023 by CT Corporation System, as representative, that appears to be a Financing Statement for an accounts receivable purchaser, covering Receivables, Inventory, Equipment, … and proceeds thereof. Accordingly, the Debtor asserts that LG Funding at most has a perfected security interest in the Debtor LBB Progress Ridge, LLC's FF&E, accounts receivable and the proceeds thereof, subordinate to that of Rewards Network. The Debtor estimates LG Funding assets a claim against LBB Platform, LLC in the amount of $71,487.

*Oz Rey Secured Debentures*. Secured claims asserted against the parent entity, AHGI, include the Oz Rey Debentures. On or about April 1, 2020, AHGI issued 10% Secured Convertible Debentures (the "Oz Rey Debentures") in the original principal amount of $4,037,889.00 to Oz Rey, LLC ("Oz Rey"). On or about March 29, 2022, AHGI issued 8% Senior Unsecured Convertible Debentures (the "Senior Debentures") in the collective amount of $1,350,000 to Eric D'Olive ($50k); Equity Markets Adv LLC c/o Stephen Apolant ($250k); Bruce and Judy K. Hankerson ($150k); Michael Ho ($250k); Lisa E. Mannion ($150k); Pinous Reisz ($250k); and Seacor Capital Inc. ($250k). The Oz Rey Debentures were assertedly (i) secured by that certain Security Agreement dated April 1, 2020 and (ii) guaranteed by a Subsidiary Guarantee dated April 1, 2020, both executed by AHGI and certain of, but not all, of the subsidiaries. Oz Rey executed one or more Subordination Agreements dated March 29, 2022, subordinating the right to collection on the Oz Rey Debentures to the Senior Debentures. Oz Rey filed a single UCC1 Financing Statement against AHGI (but not against any other Debtor) on April 1, 2020 covering "all assets" of AHGI. The Debtor estimates Oz Rey to assert a claim under the Oz Rey Debentures in the amount of $4,037,889 and the Senior Debentures to assert a claim in the amount of $1,300,000.

## ARTICLE III.
## EVENTS LEADING TO THE CHAPTER 11 FILINGS

AHGI (formerly Chanticleer Holdings) launched June of 2005 as an investment company. In 2007, AHGI converted to an operating company with opportunity to focus on the hospitality and leisure dining space after the death of the founder of Hooters which was one of AHGI's investments. In late 2007, I relinquished the President title of AHGI but remained as Chairman/CEO focused on investor relations and M & A opportunities. In 2015, AHGI acquired Little Big Burger in 2015 for $6 million, $4 million in cash & $2 million in shares. The Debtor acquired Boudreaux's Cajun from Boudreaux's Cajun Kitchen, Inc. in March 17, 2023 for $3.75 million, including the BCK Seller Note. The Debtor raised preferred equity to make the first two payments, and the remainder was seller financed, as discussed above. The AGHI also acquired the restaurant/gaming facility in Jantzen Beach in October, 2022.

From 2016 to mid-2019 AGHI was in growth mode funded in part with debt. Decreased revenue due to COVID; new expenses associated with heavily regulated geographic markets; and other factors depleted company assets. The Debtors were forced to close a number of locations which resulted in extensive landlord deficiency claims and associated litigation costs. The Debtors have seen deterioration of profitability based on labor cost, commodity cost, inflation impact on our consumer and turnover in leadership.

After COVID, Oz Rey acquired certain of the outstanding obligations of AHGI on April 1, 2021 for funds for growth in our portfolio of brands in approximately 2014. AHGI sold some of the brands in 2019, others closed during COVID or shortly thereafter. AHGI issued the Senior Debentures to raise funds to transaction costs on an attempted transaction with Everbowl (a San Diego company). AHGI has investigated multiple opportunities for merger or acquisition. The Debtors obtained the receivables financing discussed above to cover losses while such opportunities were investigated.

In January 2024, given our significant downsizing, financial condition & our long time president resigning, I resumed as interim President. After analysis, the board of directors determined that Chapter 11 bankruptcy was necessary to prevent store lease evictions and terminations on profitable locations, critical vendor terminations and reprieve from loan payments while the Debtor seeks an orderly sale of assets preserving going concern value or other viable reorganization exit

## ARTICLE IV.
## KEY EVENTS DURING THE CHAPTER 11 CASES

### 4.01   Commencement of the Chapter 11 Cases

On August 11, 2019, each of the Jointly Administered Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "Bankruptcy Court"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b) [ECF No. 38]. The Debtors continue to manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

### 4.02   No Formation of the Creditors' Committees

No Official Committee of Unsecured Creditors has been formed in this Case.

### 4.03   Petition Dates and First Day Motions

The Debtors' Chapter 11 Petitions were filed on July 18, 2024. The "First Day Motions" were filed on July 22, 2024, including motions for joint administration, use of cash collateral, maintaining bank accounts, and paying pre-petition employee wages. Hearings on the First Day Motions were held on July 23, 2024, with several motions granted on an interim basis. Final Orders were issued on August 21, 2024 on the first day motions for maintaining bank accounts and prohibiting utilities from altering services.

### 4.04   Sale Motions

During the proceeding, the Debtor sought to sell its Little Big Burger and Boudreaux's Cajun Kitchen stores. The Debtors filed their motion to sell the Little Big Burger Brand on December 31, 2024, with interim relief granted on January 14, 2025. The sale was approved by final order entered January 30, 2025 and closed on or about January 31, 2025 for a gross purchase price of $1,000,000, as discussed in more detail below. The Debtors filed their motion to sell the Boudreaux's Cajun Kitchen Brand on January 6, 2025, with interim relief granted on January 14, 2025. The sale was approved by final order entered January 30, 2025 and closed on or about February 4, 2025 for a gross purchase price of $150,000, as discussed in more detail below.

**4.05    Relief from Stay**

The Court granted relief from the automatic stay as to landlord Houston Gulfgate Partners, L.P. on February 19, 2025.

**4.06    Monthly Operating Reports**

Monthly Operating Reports have been filed monthly through March 2025.

**4.07    Sales of Estate Assets**

Following the Petition Date, the Debtors, in consultation with their advisors, pursued a marketing process for the sale of the Debtors' assets. Transfer of the Debtors' Cases to the Bankruptcy Court

**A.    Sale of Burgers Grilled Right (BGR) Restaurants**

A nondebtor subsidiary of the Debtor, BGR Acquisitions, LLC sold its interests in the remaining Burgers Grilled Right Restaurants to the purchaser group consisting of Equity Markets Advisory, LLC, PR Diamonds, Inc., Seacor Capital, Inc., Bruce Hankerson and Lisa E. Mannion for a total credit on their secured claims in this Case the amount of $831,604.

**B.    Sale of Little Big Burger (LBB) Restaurants**

The Debtor filed its Motion to Sell the Little Big Burger Restaurants on December 31, 2024. The Debtor sought approval bid procedures, which were granted on January 14, 2025 with a final hearing scheduled for January 29, 2025. Following the bid procedures, the Debtor received a number of competing offers. The sale was granted on January 30, 2025, approving the sale of the LBB Restaurants to Randy L L Corporation for $1,000,000.

| Debtor Name | Name | Allocation (%) | % EBITDA | Allocation | Allocation - Personal Property | Allocation - Brand | Allocation Remainder |
|---|---|---|---|---|---|---|---|
| Noveno | Alberta | 19.84% | 19.84% | 198,500 | 10,000 | 9,920 | 174,592 |
| Quinto | Division | 4.09% | 4.09% | 40,900 | 10,000 | 2,045 | 35,992 |
| Cuarto | Eugene | 4.86% | 4.86% | 48,600 | 10,000 | 2,430 | 42,768 |
| Platform | Platform | 19.84% | 19.84% | 198,400 | 10,000 | 9,920 | 174,592 |
| Progress Ridge | Progress Ridge | 21.98% | 21.98% | 219,800 | 10,000 | 10,990 | 193,424 |
| Sexto | Waterfront | 16.73% | 16.73% | 167,300 | 10,000 | 8,365 | 147,224 |
| Lake Oswego | Lake Oswego | 12.65% | 12.65% | 126,500 | 10,000 | 6,325 | 111,320 |
| TOTALS | | 100% | 100% | 1,000,000 | $70,000 | $50,000 | $880,000 |

### C.      Sale of Boudreaux's Cajun Kitchen Restaurants

*BCK – West Loop.* The Debtor filed its Motion to Sell the Boudreaux's Cajun Kitchen (BCK) Restaurants on January 6, 2025. The Debtor sought approval bid procedures, which were granted on January 14, 2025: with a final hearing scheduled for January 29, 2025. After following the bid procedures, the Debtor received a number of competing offers. The motion was granted in part on January 30, 2025, approving the sale of the Galleria/West Loop LBB Restaurant to French Quarter Restaurants, Inc. for a purchase price of $150,000.

*BCK – Woodbridge/Gulfgate.* The lease for the Debtor's Woodbridge/Gulfgate location provided for its conclusion in the fall of 2025.  This landlord was unwilling to grant any lease extensions. Accordingly, no buyer wished to purchase the remaining term of this lease. As a result, the Debtor consented to the lifting of the automatic stay was lifted as to Houston Gulfgate Partners, L.P. with respect to the BCK Woodbridge/Gulfgate location, as evidenced by an order entered on February 19, 2025. The landlord thereafter repossessed the leased location.

*BCK – Willowbrook.* The third BCK location in Houston was located at Willowbrook. The Willowbrook Location was arguably the least profitable of Debtor's Boudreaux's Cajun Kitchen locations. Debtor believed that the obligation to paid unpaid rent obligations will subsume any profitability from that location and potentially cut into the recovery from any other Boudreaux's locations. The Debtor and Landlord reached a resolution whereby the lease was terminated, the landlord waived its $1175,000 administrative rent claim and the Debtor transferred the remaining restaurant assets and goodwill to the

landlord. This agreement was approved by the Court on January 29, 2025. This transaction yielded no cash proceeds to the estate other than the forgiveness of the administrative claim.

### 4.08   Bar Date Orders

On July 22, 2024, the Court set a bar date for the filing of proofs of claim of nongovernmental entities for November 19, 2024 and for governmental entities, January 14, 2025. The United States Department of Labor filed a motion to file a late proof of claim in the estates of AHGI and LBB Progress Ridge. The Debtor has not opposed the motion to file the late claim.

### 4.09   Ongoing Investigations

The Debtors are also conducting several ongoing investigations regarding potential claims against those who may bear some level of responsibility for the losses leading to the filing of bankruptcy. While the Debtors continue to work, along with their advisors, towards an understanding and agreement on the key facts and potential claims and causes of action at issue in these investigations, the Debtors do not intend to place the Plan process on hold until the causes of action is concluded. The Debtors have identified potential causes of action for breaches of duty of care and loyalty by Robert Hersch and his Affiliates, including Oz Rey, LLC. These claims are reserved under the Plan. The Debtors intend to pursue confirmation of the Plan in tandem with investigations and the pursuit of certain claims and causes of action, many of which may be most efficiently administered, at least in part, by the Plan Trustee.

**ARTICLE V.**
**THE PLAN**


**OVERVIEW OF THE PLAN**

The following is a brief summary of the Plan. **The description of the Plan set forth below constitutes a summary only and is qualified, in its entirety, by the Plan.** For a more detailed description of the terms of the Plan, see Article VI of this Disclosure Statement and the Plan itself, attached hereto as Exhibit A. In the event of any inconsistency between this Disclosure Statement and the Plan, the Plan controls.

The Plan provides for the reorganization of the parent Debtor, AHGI, by the cancellation of all existing equity interests.  Holders of unsecured claims against AGHI will receive nothing under the Plan. New common stock in AHGI shall be issued to the holders of allowed secured claims against AHGI.  It will retain ownership of AHGI's nondebtor subsidiaries that own the Jantzens' Beach Wings and Owl's Nest restaurant and gaming establishments in Oregon.

The Plan also provides for the liquidation and conversion of all of the Subsidiary Debtors' remaining assets to Cash and the distribution of the net proceeds realized from the sale of assets to creditors holding Allowed Claims in accordance with the treatment set forth in the Plan. In addition, the Plan contemplates the consolidation of the Estates into a single and the appointment of a Plan Trustee to, among other things, resolve Disputed Claims, implement the terms of the Plan, pursue Reserved Causes of Action, make distributions, and close the Chapter 11 Cases.  Primarily, the Plan Trust will be distributing the cash proceeds of the prior sale of the Oregon Little Big Burger Restaurants.  An estimated accounting of the proceeds received from the sales and distributions therefrom is attached hereto as **Exhibit B.**

The Plan Trustee shall be Mike Pruitt, who is the current CEO of AHGI, the parent company.  The Plan Trust shall have an Oversight Committee consisting of the unsecured creditors holding the largest

unsecured claims and shall initially be Paul Mannion, Steve Apolant and a third qualified member to be selected by them.  The current officers of the AHGI, Mike Pruitt (CEO) and Steve Hoelscher (CFO) shall remain as officers of the Reorganized Debtor AHGI until their successors are duly elected.

## ARTICLE VI.
## VOTING PROCEDURES AND REQUIREMENTS

### A.      Classes Entitled to Vote on the Plan

The following Classes are the only Classes entitled to vote to accept or reject the Plan (collectively, the "Voting Classes"):

| Debtor Name | Classes Entitled to Vote |
|---|---|
| **Parent Company** <br> • Amergent Hospitality Group, Inc. | Class 1 (Secured) <br> Class 2 (Priority) <br> Class 3 (Unsecured) |
| **Little Big Burger (LBB) Debtors** <br> • LBB Acquisition, LLC <br> • LBB Acquisition I, LLC <br> • LBB Platform, LLC <br> • LBB Lake Oswego, LLC <br> • LBB Progress Ridge, LLC <br> • Noveno LLC (Alberta) <br> • Quinto LLC (Division) <br> • Sexto LLC (Waterfront) <br> • Cuarto LLC (Eugene) | Class 2 (Priority) <br> Class 3 (Unsecured) |
| **Boudreaux's Cajun Kitchen (BCK) Debtor** <br> • I10/I20 Cuisine LLC | Class 2 (Priority) <br> Class 3 (Unsecured) |

A Ballot for acceptance or rejection of the Plan is being provided only to Holders of Claims in the Voting Classes. If your Claim is included in one of the Voting Classes, you should read your Ballot and carefully follow the instructions included in the Ballot. Please use only the Ballot that accompanies this Disclosure Statement or the Ballot that the Debtors, or the Balloting Agent (as defined below) on behalf of the Debtors, otherwise provides to you. Before voting, such Holders in the Voting Classes should read this Disclosure Statement and its Exhibits, including the Plan, related Plan documents, and the instructions on the Ballot in their entirety. **YOUR VOTE ON THE PLAN IS IMPORTANT.**

If your Claim or Interest is not included in the Voting Classes, you are not entitled to vote on the Plan and you will not receive a Solicitation Package (defined below), or a Ballot.

### B.      Votes Required for Acceptance by a Class

Under the Bankruptcy Code, acceptance of a plan of liquidation by a class of claims or interests is determined by calculating the amount and, if a class of claims, the number, of claims and interests voting

to accept, as a percentage of the allowed claims or interests, as applicable, that have voted. **Acceptance by a class of claims requires an affirmative vote of more than one-half (1/2) in number of total allowed claims that have voted and an affirmative vote of at least two-thirds (2/3) in dollar amount of the total allowed claims that have voted.** Whether or not the Holder of a Claim votes on the Plan, such Person will be bound by the terms and treatment set forth in the Plan if the Plan is confirmed by the Bankruptcy Court. To be confirmed by the Bankruptcy Court, the Plan must be accepted by the requisite majority of the Holders of Claims in one of the Voting Classes, and must satisfy section 1129(b) of the Bankruptcy Code as to any Class that does not accept the Plan. In addition, the Bankruptcy Court must determine that each member of each Voting Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class member would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Pursuant to the provisions of section 1126(e) of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith.

## C. Classes Not Entitled to Vote on the Plan

Under the Bankruptcy Code, holders of claims and interests are not entitled to vote if their contractual rights are unimpaired by the proposed plan or if they will receive no property under the plan. Accordingly, the following Classes of Claims and Interests are not entitled to vote to accept or reject the Plan:

| Debtor Name | Classes Not Entitled to Vote | Treatment; Deemed Voting |
|---|---|---|
| **Parent Company**<br>• Amergent Hospitality Group, Inc. | Classes 4-7 | Receive no Distribution under the Plan, Deemed to Reject |
| **Little Big Burger (LBB) Debtors**<br>• LBB Acquisition, LLC<br>• LBB Acquisition I, LLC<br>• LBB Platform, LLC<br>• LBB Lake Oswego, LLC | Class 1 (Secured) | Unimpaired; Deemed to Accept |
| • LBB Progress Ridge, LLC<br>• Noveno LLC (Alberta)<br>• Quinto LLC (Division)<br>• Sexto LLC (Waterfront)<br>• Cuarto LLC (Eugene) | Classes 4-7 | Receive no Distribution under the Plan, Deemed to Reject |
| **Boudreaux's Cajun Kitchen (BCK) Debtor**<br>• I10/I20 Cuisine LLC | Class 1 (Secured) | Unimpaired; Deemed to Accept |
| | Classes 4-7 | Receive no Distribution under the Plan, Deemed to Reject |

# ARTICLE VII.
## CONFIRMATION PROCEDURES

### 7.01 Hearing on Confirmation

Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing to confirm a plan of liquidation. The Confirmation Hearing may be continued from time to time without further notice other than an adjournment announced in open court or a notice of adjournment filed with the Bankruptcy Court and served on those parties who have requested notice under Bankruptcy Rule 2002 and the entities who have filed an objection to the Plan, if any, without further notice to parties in interest. The Bankruptcy Court, in its discretion and prior to the Confirmation Hearing, may put in place additional procedures governing the Confirmation Hearing. Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Confirmation Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation. All objections to the Plan must be filed with the Bankruptcy Court and served on the Debtors, the Debtors, and certain other parties in interest in accordance with the applicable order of the Bankruptcy Court so that they are received on or before the deadline to file such objections as set forth therein.

### 7.02 Requirements for Confirmation of the Plan

Among the requirements for Confirmation are that the Plan is accepted by all Impaired Classes of Claims and Interests or, if rejected by an Impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class, is feasible, and is in the "best interests" of Holders of Claims and Interests that are Impaired under the Plan. The following requirements must be satisfied pursuant to section 1129(a) of the Bankruptcy Code before the Bankruptcy Court may confirm a plan of liquidation. The Debtors submit that the Plan will be found to fully comply with the statutory requirements for Confirmation listed below.

- The Debtors have complied with the applicable provisions of the Bankruptcy Code.
- The Plan has been proposed in good faith and not by any means forbidden by law.
- Any payment made or to be made by the Debtors, Debtors or the Plan Trustee, for services or for costs and expenses in or in connection with the Chapter 11 Cases, in connection with the Plan and incident to the Chapter 11 Cases is subject to the approval of the Bankruptcy Court as reasonable.
- With respect to each Holder within an Impaired Class of Claims or Interests, each such Holder has (a) accepted the Plan or (b) will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount that such Holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.
- With respect to each Class of Claims or Interests, such Class will have either (a) accepted the Plan, (b) be Unimpaired under the Plan, or (c) be subject to the "cram-down" provisions discussed below.
- The Plan provides for treatment of Claims, as applicable, in accordance with the provisions of section 507(a) of the Bankruptcy Code.
- If a Class of Claims or Interests is Impaired under the Plan, at least one Class of Claims or Interests that is Impaired under the Plan will have accepted the Plan, determined

without including any acceptance of the Plan by any Insider.

- All fees payable under 28 U.S.C. § 1930 have been paid or will be paid as of the Effective Date.

### A.     Best Interests of Creditors

Section 1129(a)(7) of the Bankruptcy Code requires that each Holder of an Impaired Claim or Interest either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

Although the Plan effects a liquidation of the Debtors' remaining assets and a chapter 7 liquidation would have the same goal, the Debtors believe that the Plan provides the best source of recovery to Holders of Allowed Claims. The Committees, representing the interest of unsecured creditors in the Chapter 11 Cases, agree with this belief and support the Plan. First, liquidation of the Debtors' assets under chapter 7 would require the appointment of multiple chapter 7 trustees. Such appointments would delay distributions to holders of Allowed Claims and would likely provide a smaller distribution because of the additional fees and expenses which would be incurred during each chapter 7 liquidation process, including potential added time and expense incurred by chapter 7 trustees and any of their professionals who would need to familiarize themselves with the Chapter 11 Cases. Certain of the Debtors are already operating under the purview of the Chapter 11 Trustees. Moreover, the Plan provides for the cancellation of Intercompany Claims. However, should the Chapter 11 Cases be converted to cases under chapter 7, the Intercompany Claims would remain and there may be corresponding claims or causes of action among the different chapter 7 estates to recover and collect on account of such Intercompany Claims – increasing litigation costs and reducing creditor recoveries, as further discussed below. It simply makes little practical or economic sense at this late stage to convert the Chapter 11 Cases and appoint chapter 7 trusteees.

The Debtors believe that under the Plan all Holders of Impaired Claims and Interests will receive property with a value not less than the value such holders would receive in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors' belief is based primarily on consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of impaired Claims and Interests.

The Debtors believe that one only needs to examine the realities of a hypothetical chapter 7 scenario in order to appreciate the significant benefits of the Plan. The multiple chapter 7 trustees appointed upon such conversion would be starting their work without the benefit of the negotiations, knowledge, and agreements that the Debtors have achieved.

### B.     Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that the Bankruptcy Court find that confirmation is not likely to be followed by the liquidation of the Debtors or the need for further financial reorganization, unless the Plan contemplates such liquidation. Indeed, section 1123(b)(4) of the Bankruptcy Code permits liquidating plans that "provide for the sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests" in chapter 11 proceedings and, thus, such a plan does not violate the requirements of Section 1129(a). Moreover, when a liquidating plan is tested against section 1129(a)(11), the feasibility standard is greatly simplified. In the context of a liquidating plan, feasibility is established by demonstrating the debtor's ability to make the payments anticipated by the plan and specifying the timing of the debtor's liquidation. Notably, there is no requirement that such payments will be guaranteed.

Here, the Plan provides for the liquidation of the Debtors by the transfer and sale of property and payment of the debts and the monetization of certain Causes of Action. Further, the Debtors maintain that there is a reasonable expectation that the payments required to be made during the term of the Plan will, in fact, be made.

## C.      Acceptance by Impaired Class

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in 7.02D below, each class of claims or interests that is impaired under a plan of liquidation, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims or interests as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of allowed claims or interests in that class, counting only those claims or interests that actually voted to accept or to reject the plan. Thus, the Voting Classes described herein will have voted to accept the Plan only if two-thirds in amount and a majority in number of Holders within the Class that actually vote on the Plan vote to accept.

## D.      Confirmation Without Acceptance by Impaired Class

The Bankruptcy Court may confirm a plan of liquidation over the rejection or deemed rejection of the plan of liquidation by a class of claims or interests if the plan of liquidation "does not discriminate unfairly" and is "fair and equitable" with respect to such class.

### 1.      No Unfair Discrimination

This test applies to Classes that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." The Debtors do not believe the Plan discriminates unfairly against any Impaired Class. The Debtors believe the Plan and the treatment of all Classes under the Plan satisfy the foregoing requirements for nonconsensual confirmation.

### 2.      Fair and Equitable

This test applies to Classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no Class of Claims or Interests receive more than 100 percent of the amount of the Allowed Claims or Interests in such Class. As to a dissenting Class, the test sets different standards depending on the type of Claims or Interests of the Debtors in such Class. In order to demonstrate that a plan is fair and equitable, the plan proponent must demonstrate the following depending upon the nature of the relevant claim or interest holder:

- Class of Secured Claims: That each holder of a secured claim: (a) retains its liens on property to the extent of the allowed amount of its secured claim, and receives deferred cash payments having a value, as of the effective date of the plan, of at least the allowed amount of such claim; (b) has the right to credit bid the amount of its claim if its property is sold and retains its liens on the proceeds of the sale (or if sold, on the proceeds thereof); or (c) receives the "indubitable equivalent" of its allowed secured claim.
- Class of Unsecured Claims: That either (a) each holder of an impaired unsecured claim receives or retains under the plan property of a value equal to the amount of its allowed claim or (b) the holders of claims and interests that are junior to the claims of the non-accepting class will not receive or retain any property under the plan.

- <u>Class of Equity Interests</u>: That either (a) each holder of an impaired interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest, or (b) the holders of interests that are junior to the non-accepting class will not receive or retain any property under the plan.

The Debtors believe that the Plan satisfies the "fair and equitable" requirement notwithstanding that Classes 4-7 may be deemed to reject the Plan, because, as to each such Class, there is no Class of equal priority receiving more favorable treatment and no Class that is junior to such Class will receive or retain any property on account of the Claims or Interests in such Class.

### E.    Alternatives to Confirmation and Consummation of the Plan

The Debtors have evaluated alternatives to the Plan. After reviewing these alternatives, the Debtors believe that the Plan is the preferred approach to effectuating the Debtors' liquidation and maximizing recovery for all stakeholders and, therefore, is in the best interests of all constituencies. If the Plan is not confirmed, the realistic alternative likely will be a conversion of some or all of the Estates and a resulting liquidation under chapter 7 of the Bankruptcy Code.

### ARTICLE VIII.
### <u>RISK FACTORS</u>

The following provides a summary of various important considerations and other risk factors associated with the Plan; however, it is not exhaustive. There are risks, uncertainties, and other important factors that could affect the Plan and the Debtors undertake no obligation to update any such statement.

### 8.01   Objections to the Plan's Classification or Amounts of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests, each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims and Interests in each such Class. Nevertheless, there can be no assurance that parties in interest will not object to the classification or amounts of Claims and Interests under the Plan, or that the Bankruptcy Court will approve such classification or amounts.

### 8.02   Failure to Satisfy Voting Requirements

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation. In the event that sufficient votes are not received, the Debtors may seek to confirm an alternative chapter 11 plan. There can be no assurance that the terms of any such alternative chapter 11 plan would be similar or as favorable to the Holders of Allowed Claims as those proposed in the Plan.

### 8.03   Amendment of Plan by the Debtors Prior to Confirmation

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan or waive any conditions thereto if and to the extent necessary or desirable for Confirmation. The potential impact of any such amendment or waiver on holders of Claims and Interests

cannot presently be foreseen but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes. In addition, if the Debtors seek to modify or amend the Plan after receiving sufficient acceptances, but prior to Confirmation, re-solicitation may be required.

**8.04   Non-Confirmation or Delay of Confirmation of the Plan**

In the event that votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, findings by a bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims or equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

The Bankruptcy Court may decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation have not been met, including the requirement that the terms of the Plan do not "unfairly discriminate" and are "fair and equitable" to non-accepting Classes, or the Plan contains other terms disapproved of by the Bankruptcy Court. If the Debtors fail to achieve Confirmation, some or all of the Chapter 11 Cases may be converted to a liquidation under chapter 7 of the Bankruptcy Code.

Even if the requisite acceptances of a proposed plan are received, the Bankruptcy Court is not obligated to confirm the Plan as proposed. The Bankruptcy Court could decline to confirm the Plan if the Bankruptcy Court found that any of the statutory requirements for confirmation had not been met.

If the Plan is not confirmed by the Bankruptcy Court, (a) the distributions that Holders of Claims or Interests ultimately would receive, if any, with respect to their Claims or Interests is uncertain, and (b) there is no assurance that the Debtors will be able to successfully develop, prosecute, confirm, and consummate an alternative plan that will be acceptable to the Bankruptcy Court and the Holders of Claims or Interests.

**8.05   Non-Consensual Confirmation**

The Debtors intend to seek Confirmation notwithstanding the deemed rejection of the Plan by certain Classes of Claims or Interests. The Bankruptcy Court may confirm the Plan pursuant to the "cram-down" provisions of the Bankruptcy Code if the Plan satisfies section 1129(b) of the Bankruptcy Code. To confirm a plan over the objection of a dissenting class, the Bankruptcy Court also must find that at least one Impaired Class (which cannot be an "insider" class) has accepted the Plan.

**8.06   Other Parties in Interest May Be Permitted to Propose Alternative Plans that Are Less Favorable to Certain Stakeholders**

Under the Bankruptcy Code, a debtor in possession initially has the exclusive right to propose and solicit acceptances of a plan of reorganization for an initial period of 120 days from filing plus additional extensions granted by the Bankruptcy Court. Such exclusivity period can be reduced or terminated, however, upon order of the Bankruptcy Court. Currently, the Debtors do not have the exclusive right to

file a plan in the IOI Debtor cases. Other parties in interest can seek authority from the Bankruptcy Court to propose an alternative plan.

**8.07 Conversion to Chapter 7**

If no plan can be confirmed, or if the Bankruptcy Court otherwise finds that it would be in the best interest of Holders of Claims and Interests, some or all of the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code, pursuant to which a trustee would be appointed or elected to liquidate the Debtors' assets and distribute the sale proceeds in accordance with the priorities established by the Bankruptcy Code. See Article VII.C for a discussion of the effects that a chapter 7 liquidation would have on the recoveries of holders of Claims and Interests.

**8.08 Proceeds of Sales**

The proceeds that will be realized from the sale of the remaining Assets of the Debtors may be less than what is currently anticipated due to a broad array of factors, including but not limited to, lack of bidder interest, market fluctuations or depreciation, and broader economic conditions.

**ARTICLE IX.**
**DISCLOSURE STATEMENT DISCLAIMER**

**9.01 Information Contained Herein is for Soliciting Votes**

The information contained in this Disclosure Statement is for the purposes of soliciting acceptances of the Plan and may not be relied upon for any other purposes.

**9.02 No Legal or Tax Advice is Provided to You by this Disclosure Statement**

**This Disclosure Statement is not legal advice to you**. The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Holder of a Claim or an Existing Equity Interest should consult his, her or its own legal counsel and accountant with regard to any legal, tax, and other matters concerning his or her Claim or Existing Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

**9.03 No Admissions Made**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtors and/or the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, Holders of Allowed Claims or Existing Equity Interests, or any other parties-in-interest.

**9.04 Failure to Identify Claims, Litigation Claims or Projected Objections**

No reliance should be placed on the fact that a particular Claim, litigation Claim or objection to a particular Claim is, or is not, identified in this Disclosure Statement. The Debtors, the Debtors and/or the Plan Trustee may seek to investigate Claims, file and prosecute objections to Claims, and/or bring Causes of Action irrespective of whether this Disclosure Statement identifies such Claims, Causes of Action, or objections to Claims.

**9.05    No Waiver of Right to Object or Right to Recover Transfers and Assets**

Except as otherwise specifically provided in the Plan, the vote by a Holder of an Allowed Claim to accept or reject the Plan does not constitute a waiver or release of any Claims or rights of the Debtors, the Debtors, and/or the Plan Trustee to object to that Holder's Allowed Claim, or to bring Causes of Action, or recover any preferential, fraudulent, or other voidable transfer of assets, regardless of whether any Claims or Causes of Action of the Debtors or their respective Estates are specifically or generally identified herein.

**9.06    Reliance Upon Debtors' Information**

Counsel to and other advisors retained in the respective Chapter 11 Cases have relied upon information based on the Debtors' books and records in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained in the respective Chapter 11 Cases have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

**9.07    Potential Exists for Inaccuracies, and the Debtors have no Duty to Update**

The Debtors make the statements contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

**ARTICLE X.**
**CERTAIN UNITED STATES**
**FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**

The following discussion is a summary of certain U.S. federal income tax consequences of the Plan, is for general information purposes only, and should not be relied upon for purposes of determining the specific tax consequences of the Plan with respect to a particular holder of a Claim or Interest. This discussion does not purport to be a complete analysis or listing of all potential tax considerations.

This discussion is based on existing provisions of the Internal Revenue Code of 1986, as amended (the "IRC"), existing and proposed Treasury Regulations promulgated thereunder, and current administrative rulings and court decisions. Legislative, judicial, or administrative changes or interpretations enacted or promulgated after the date hereof could alter or modify the analyses set forth below with respect to the U.S. federal income tax consequences of the Plan. Any such changes or interpretations may be retroactive and could significantly affect the

**10.01  A.    U.S. federal income tax consequences of the Plan.**

No ruling has been requested or obtained from the Internal Revenue Service (the "IRS") with respect to any tax aspects of the Plan and no opinion of counsel has been sought or obtained with respect thereto. No representations or assurances are being made to the Holders of Claims or Interests with respect to the U.S. federal income tax consequences described herein.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM OR INTEREST. ALL HOLDERS OF CLAIMS OR INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE FEDERAL, STATE, LOCAL, AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.**

**10.02 Certain Federal Income Tax Consequences to the Debtors**

The implementation of the Plan is not expected to materially reduce or otherwise significantly affect the amount of tax attributes, except as noted below under "382(l)(5) Bankruptcy Exception."

The amount of any consolidated net operating losses ("NOLs"), tax-credit carryforwards, and amortizable tax basis remains subject to adjustment by the IRS. Under legislation enacted in 2020 in response to the COVID-19 pandemic, NOLs generated by Debtors in taxable years beginning after December 31, 2017 and before January 1, 2021 can be carried back and deducted from its taxable income generated within the five preceding taxable years and the remainder can be carried forward and deducted from the Debtors' taxable income in subsequent taxable years. For taxable years beginning after December 31, 2020, NOLs cannot be carried back and taxable income may only be offset by the sum of (i) the aggregate amount of NOLs carried to such taxable year that arose in taxable years beginning before January 1, 2018, plus (ii) the lesser of (A) the aggregate amount of NOLs carried to such taxable year that arose in taxable years beginning after December 31, 2017 or (B) 80% of a Debtors' taxable income generated during the taxable year. Any remainder can be carried forwarded indefinitely and used to offset taxable income in a future taxable year (subject to the limitations described above). Amortizable tax basis in intangible assets can generally be deducted ratably from the Debtors' taxable income over the 15-year period commencing with the year the intangible asset is acquired.

Section 382 of the IRC contains certain rules limiting the ability of corporations to utilize NOLs when there has been an "ownership change" (the "Annual Section 382 Limitation"). An "ownership change" generally is defined as a more than 50 percentage point change in ownership of the value of the stock of a "loss corporation" (a corporation with NOLs) that takes place during the three-year period ending on the date on which such change in ownership is tested.

As a general rule, the Annual Section 382 Limitation equals the product of the value of the stock of the loss corporation (with certain adjustments) immediately before the ownership change and the applicable "long-term tax-exempt rate," a rate published monthly by the Treasury Department (1.03% for ownership changes that occur during January 2021). Any unused portion of the Annual Section 382 Limitation generally is available for use in subsequent years. The Annual Section 382 Limitation is increased in the case of a corporation that has net unrealized built-in gains ("NUBIG"), i.e., gains economically accrued but unrecognized at the time of the ownership change, in excess of a threshold amount. Such a corporation can use NOLs in excess of its Annual Section 382 Limitation to the extent that it realizes those NUBIGs for U.S. federal income tax purposes in the five years following the ownership change. For purposes of determining the Annual Section 382 Limitation for a consolidated tax group, the determination as to whether the group has a NUBIG generally is made on a consolidated basis (*i.e.*, by netting the built-in losses and built-in gains of all members of the group).

In addition to limiting a corporation's ability to use NOLs, the Annual Section 382 Limitation may also apply to certain losses or deductions which are "built-in" as of the date of the ownership change and that are subsequently recognized. If a loss corporation has a net- unrealized built-in loss ("NUBIL") at the

time of the ownership change, then any built-in losses or deductions (which for this purpose includes a portion of the depreciation or amortization of depreciable or amortizable assets that have a built-in loss) that are recognized during the following five years (up to the amount of the original built-in loss) generally will be subject to the Annual Section 382 Limitation. Special rules apply for purposes of determining the amount of built-in losses of a consolidated tax group that are subject to an Annual Section 382 Limitation. Absent an applicable exception (discussed below), a Company NUBIL would also be subject to the Annual Section 382 Limitation.

Section 382(l)(5) of the IRC provides an exception to the application of the Annual Section 382 Limitation when a corporation is under the jurisdiction of a court in a Title 11 case (the "382(l)(5) Bankruptcy Exception"). The 382(l)(5) Bankruptcy Exception provides that where an ownership change occurs pursuant to a bankruptcy reorganization or similar proceeding, the Annual Section 382 Limitation will not apply if the pre-change shareholders and/or "qualified creditors" (as defined by applicable Treasury Regulations) own at least 50 percent of the stock of the reorganized corporation immediately after the ownership change. However, under the 382(l)(5) Bankruptcy Exception, a corporation's pre-change losses and excess credits that may be carried over to a post-change year must be reduced to the extent attributable to any interest paid or accrued on certain debt converted to stock in the reorganization. In addition, if the 382(l)(5) Bankruptcy Exception applies, a second ownership change of the corporation within a two-year period will cause the corporation to forfeit all of its unused NOLs that were incurred prior to the date of the second ownership change. If a corporation qualifies for the 382(l)(5) Bankruptcy Exception, the use of its NOLs will be governed by that exception unless the corporation affirmatively elects for the provisions not to apply.

If a corporation in bankruptcy is not eligible for the 382(l)(5) Bankruptcy Exception or elects out of that provision, a special rule under Section 382(l)(6) of the IRC will apply in calculating the Annual Section 382 Limitation. Under this special rule, the Annual Section 382 Limitation will be calculated by reference to the lesser of the value of the corporation's stock (with certain adjustments) immediately after the ownership change (as opposed to immediately before the ownership change, as discussed above) or the value of the Debtors' assets (determined without regard to liabilities) immediately before the ownership change.

Although it is expected that the Company will undergo an ownership change as a result of the implementation of the Plan, the Company intends to take the position that it qualifies for the 382(l)(5) Bankruptcy Exception described above. Accordingly, the Company does not expect to be subject to the Annual Section 382 Limitation as a result of the implementation of the Plan.

**10.03   Federal Income Tax Treatment of the Trust**

Upon the confirmation of the Plan, the Trust Assets will be transferred to the Trust, unless previously transferred to the Trust by order of the Bankruptcy Court, including the order of the Bankruptcy Court confirming the Plan. In consideration thereof, the Trust will assume the Debtors' obligations to make distributions in accordance with the Plan. The transfer of Trust Assets to the Trust should be treated for U.S. federal income tax purposes as a deemed transfer of those assets to the holders of Claims in exchange for their Claims, immediately followed by a deemed contribution of those assets to the Trust by such holders in exchange for a beneficial interest in the Trust. The Debtors believe that with respect to Allowed Claims the Trust would qualify as a "liquidating trust," as defined in Treasury Regulation section 301.7701-4(d), and would therefore be taxed as a grantor trust, of which the holders of Allowed Claims would be treated as the grantors and deemed owners. As soon as reasonably practicable after the transfer of the Trust Assets to the Trust, the Trustee of the Trust shall make a good faith valuation of the Trust's assets. All parties to the Trust (including but not limited to the Debtors and the beneficiaries of the Trust)

must consistently use such valuations for all U.S. federal income tax purposes. Thus, no tax should be imposed on the Trust itself or on the income earned or gain recognized by the Trust. Instead, holders of Allowed Claims would be taxed on their allocable shares of such income and gain in each taxable year, whether or not they received any distributions from the Trust in such taxable year. The Estate Trust would pay federal, state, and local tax on the taxable income and gain allocable to holders of Disputed Claims on behalf of such holders and, when such Disputed Claims were ultimately resolved, holders whose Disputed Claims were determined to be Allowed Claims would receive distributions from the Trust net of taxes that the Trust had previously paid on their behalf.

It is possible, however, that the IRS could require a different characterization of the Trust, which could result in different and possibly greater tax liability to the Trust or holders of Allowed Claims. If the IRS determines that the powers granted to the Plan Trustee or the activities of the Plan Trustee are greater than those normally associated with carrying out the liquidation and distribution of assets transferred to a liquidating trust, as described in Treasury Regulation section 301.7701-4(d), the IRS may attempt to re-characterize the Trust as a complex trust under IRC section 641 or as a corporation. A complex trust generally is subject to tax on income received, less deductions allowed for its expenses and for distributions that it makes to creditor beneficiaries up to the amount of its distributable net income ("DNI"), as defined in IRC section 643(a). The Trust would be taxed on any current DNI not distributed to the holders of Allowed Claims, and such holders would be taxed on income currently distributed to them by the Trust (up to the amount of their proportionate share of the Trust's DNI for that year).

Alternatively, the IRS may attempt to characterize the Trust as a qualified settlement fund ("QSF") pursuant to Treasury Regulations under IRC section 468(g) (the "QSF Regulations"). The QSF Regulations generally do not apply to trusts which are established to satisfy claims of general trade creditors and debt holders in a bankruptcy case. The QSF Regulations, however, do apply to a trust which is established to satisfy claims asserting liability: (i) arising out of a tort, breach of contract, or violation of law; or (ii) otherwise designated by the IRS. Thus, if the IRS asserted that Allowed Claims arose from such causes (*e.g.*, the fraudulent sale of securities or other obligations), the Trust could be treated as a QSF. If the Trust were treated as a QSF, it would be treated as a separate taxable entity subject to federal income tax at the maximum tax rate applicable to trusts. In general, amounts transferred to the QSF to resolve or satisfy a liability for which the QSF was established are not included in gross income of the QSF. Pursuant to the foregoing, if the Trust were treated as a QSF, holders of Allowed Claims could receive decreased distributions.

If the Trust were determined by the IRS to be taxable not as a liquidating trust, the taxation of the Trust and the transfer of assets by the Debtors to the Trust could be materially different than is described herein and could have a material adverse effect on the holders of Allowed Claims.

## 10.04   Federal Income Tax Consequences to Holders of Claims

The federal income tax consequences of the Plan to a holder of a Claim will depend upon several factors, including but not limited to: (i) whether the holder's Claim (or a portion thereof) constitutes a Claim for principal or interest, (ii) the origin of the holder's Claim, (iii) the type of considerations received by the holder in exchange for the Claim, (iv) whether the holder is a resident of the United States for tax purposes (or falls into any of the special classes of taxpayers excluded from this discussion as noted above), (v) whether the holder has taken a bad debt deduction or worthless security deduction with respect to this Claim, and (vii) whether the holder receives distributions under the Plan in more than one taxable year. HOLDERS ARE STRONGLY ADVISED TO CONSULT THEIR TAX ADVISORS WITH RESPECT TO THE TAX TREATMENT UNDER THE PLAN OF THEIR PARTICULAR CLAIMS.

Generally, a holder of a Claim will recognize gain or loss equal to the difference between the "amount realized" by such holder and such holder's adjusted tax basis in the Claim. The "amount realized" is equal to the sum of the Cash and the fair market value of any other consideration received under the Plan in respect of a holder's Claim, including the fair market value of each such holder's proportionate share of the assets transferred to the Trust on the behalf of and for the benefit of such holder of Allowed Claims (to the extent that such Cash or other property is not allocable to any portion of the Claim representing accrued but unpaid interest (see discussion below)).

The transfer of Cash and assets to the Trust by the Debtors should be treated for federal income tax purposes as a transfer of such Cash and assets to the holders of Allowed Claims to the extent they are creditor-beneficiaries, followed by a deemed transfer of such assets by such beneficiaries to the Trust. As a result of such treatment, holders of Allowed Claims to be paid by the Trust will have to take into account the fair market value of their pro rata share, if any, of the Cash and assets transferred on their behalf to the Trust in determining the amount of gain realized and required to be recognized upon consummation of the Plan on the Effective Date. In addition, since a holder's share of the assets held in the Trust may change depending upon the resolution of Disputed Claims, the holder may be prevented from recognizing any loss in connection with consummation of the Plan until the time that all such Disputed Claims have been resolved. Furthermore, a tax credit may be available to holders whose Disputed Claims are determined to be Allowed Claims to the extent that the Trust has previously paid taxes on their behalf.

The character of any recognized gain or loss (*e.g.*, ordinary income, or short-term or long-term capital gain or loss) will depend upon the status of the holder, the nature of the Claim in its hands, the purpose and circumstances of its acquisition, the holder's holding period of the Claim, and the extent to which the holder previously claimed a deduction for the worthlessness of all or a portion of the Claim. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF GAIN OR LOSS, FOR FEDERAL INCOME TAX PURPOSES, ON THE SATISFACTION OF THEIR CLAIMS.

## 10.05  Allocation of Consideration to Interest

A portion of the consideration received by a holder in satisfaction of an Allowed Claim pursuant to the Plan may be allocated to the portion of such Allowed Claim (if any) that represents accrued but unpaid interest. The Plan does not provide an allocation of the consideration to be received by the holders of Allowed Claims. Accordingly, the manner in which such allocation must be made for federal income tax purposes is not clear. If any portion of the distribution were required to be allocated to accrued interest, such portion would be taxable to the holder as interest income, except to the extent the holder has previously reported such interest as income.

In that event, only the balance of the distribution would be considered received by the holder in respect of the principal amount of Allowed Claim. Such an allocation would reduce the amount of the gain, or increase the amount of loss, realized by the holder with respect to the Allowed Claim. If any such loss were a capital loss, it would not offset any amount of the distribution that was treated as ordinary interest income (except, in the case of individuals, to the limited extent that capital losses may be deducted against ordinary income).

To the extent that any portion of the distribution is treated as interest, holders may be required to provide certain tax information in order to avoid the withholding of taxes. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL INCOME TAX TREATMENT OF CONSIDERATION RECEIVED IN SATISFACTION OF THEIR CLAIMS.

**10.06  Federal Income Tax Treatment of Holders of Equity Interests**

In accordance with the Plan, holders of Equity Interests in the Debtors will likely not receive a Distribution. Holders of an Equity Interest in the Debtors generally will be able to recognize loss in the amount of the holder's adjusted tax basis. The character of any recognized loss will depend upon several factors including, but not limited to, the status of the holder, the nature of the interest in the holder's hands, the purpose and circumstances of its acquisition, the holders' holding period, and the extent to which the holder had previously claimed a deduction for the likely worthlessness of all or a portion of such Equity Interest.

A loss generally is treated as sustained in the taxable year for which there has been a closed and competed transaction, and no portion of a loss with respect to which there is a reasonable prospect of reimbursement may be deducted until it can be ascertained with reasonable certainty whether or not such reimbursement will be recovered. HOLDERS OF EQUITY INTERESTS SHOULD CONSULT THEIR OWN TAX ADVISORS CONCERNING THE RECOGNITION OF LOSS FOR FEDERAL INCOME TAX PURPOSES, ON THE CONSUMMATION OF THE PLAN.

**10.07  Reservation of Rights**

The foregoing discussion is subject to change (possibly substantially) based on, among other things, subsequent changes to the Plan and events that may subsequently occur that may impact the timeline for the transactions contemplated by the Plan. The Debtors and their advisors reserve the right to further modify, revise or supplement this Article IX and the other tax related sections of the Plan and Disclosure Statement in accordance with the terms of the Plan and the Bankruptcy Code.

**ARTICLE XI.**
**SECURITIES LAWS MATTERS**

Section 1145 of the Bankruptcy Code provides that Section 5 of the Securities Act of 1933 and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security do not apply to— (1) the offer or sale under a plan of a security of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan— (A) in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor or such affiliate; or (B) principally in such exchange and partly for cash or property.  The Plan provides for the issuance of new common stock in exchange solely for claims against the Debtor.   Accordingly, Section 1145 exempts the issuance of the new common stock under the Plan from Section 5 of the Securities Act of 1933.

**ARTICLE XII.**
**CONCLUSION AND RECOMMENDATION**

In the opinion of the Debtors, the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtors' overall creditor body than would otherwise result from any other scenario. Any alternative to confirmation of the Plan, moreover, could result in extensive delays and increased administrative expenses. Accordingly, the Debtors urge holders of Claims in the Voting Classes to evidence their acceptance of the Plan by returning their Ballots so that they are timely received by the Balloting Agent.

[remainder of page intentionally blank]

Respectfully Submitted,

September 2, 2025

| Debtor | Case No. | Identifier |
|---|---|---|
| Amergent Hospitality Group, Inc. | 24-42483 | AHGI |
| I10/I20 Cuisine LLC | 24-42482 | BCK |
| LBB Acquisition, | 24-42484 | LBB Acquisition |
| LBB Acquisition 1 LLC | 24-42485 | LBBA1 |
| LBB Platform LLC | 24-42487 | LLB Platform |
| LBB Lake Oswego LLC | 24-42489 | LBB Lake Oswego |
| LBB Progress Ridge LLC. | 24-42490 | LBB Progress Ridge |
| Noveno LLC | 24-42491 | LBB Alberta |
| Quinto LLC | 24-42492 | LBB Division |
| Sexto LLC | 24-42493 | LBB Waterfront |
| Cuarto LLC | 24-42494 | LBB Eugene |

By: /s/ Mike Pruitt
Mike Pruitt,
CEO and authorized agent of each Joint Debtor
September 2, 2025

## EXHIBIT A

## JOINT PLAN OF LIQUIDATION
## (INTENTIONALLY OMITTED)

Richard G. Grant
Tex. Bar No. 08302650
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR DEBTORS

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AMERGENT HOSPITALITY GROUP, INC.; | § | Case No. 24-42483-MXM-11 |
| et al.,[1] | § | (Jointly Administered) |
| | § | Chapter 11 |
| Debtors. | § | |

**FIRST AMENDED
JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
AMERGENT HOSPITALITY GROUP, INC.
AND ITS JOINTLY ADMINISTERED DEBTORS**


September 2, 2025

---

[1] The jointly administered debtors ("Proponents") are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494).

# TABLE OF CONTENTS

Article I
TREATMENT OF  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS .........4
    1.01    General Administrative Expense Claims. ..............................................................4
    1.02    Professional Fee Claims...........................................................................................4
    1.03    Priority Tax Claims...................................................................................................4

Article II
CLASSIFICATION AND TREATMENT  OF CLASSIFIED CLAIMS AND INTERESTS .........5
    2.01    Summary of Classification and Treatment of Classified Claims and Interests. ........5
    2.02    Treatment of Claims against and Interests in the Debtors. .....................................6
    2.03    Treatment of Holders of Claims and Interests of AHGI. .........................................9

Article III
MEANS FOR IMPLEMENTATION OF THE PLAN.............................................................9
    3.01    Plan Funding. ...........................................................................................................9
    3.02    Establishment of the Plan Trust. .............................................................................9
    3.03    Distribution and Escrow Accounts. .......................................................................11
    3.04    Distributions to Creditors.......................................................................................11
    3.05    Role of the Plan Trustee.........................................................................................12

Article IV
TREATMENT OF EXECUTORY CONTRACTS,  UNEXPIRED LEASES, AND INSURANCE
POLICIES ...........................................................................................................................17
    4.01    Deemed Rejection of Executory Contracts and Unexpired Leases. ........................17
    4.02    Rejection Claims......................................................................................................17
    4.03    Assumed Contracts and Unexpired Leases.............................................................17
    4.04    Insurance Policies and Agreements. .......................................................................18
    4.05    Postpetition Contracts and Leases. ........................................................................18
    4.06    Modifications, Amendments, Supplements, Restatements, or Other Agreements. . 18

Article V
PROVISIONS GOVERNING DISTRIBUTIONS ........................................................... 18
    5.01    Distributions Made by the Plan Trustee..................................................................18

Article VI
PROCEDURES FOR RESOLVING  CONTINGENT, UNLIQUIDATED, AND DISPUTED
CLAIMS ............................................................................................................................21

Article VII
EFFECT OF PLAN CONFIRMATION...............................................................................22
    7.01    Binding Effect..........................................................................................................22
    7.02    Exculpation. ............................................................................................................23
    7.03    Injunctions ..............................................................................................................23

Article VIII

MISCELLANEOUS PROVISIONS....................................................................................24

    8.01    Effectuating Documents and Further Transactions....................................................24

    8.02    Exemption from Transfer Taxes. ...............................................................................24

    8.03    Payment of Statutory Fees. ........................................................................................25

    8.04    Amendment or Modification of this Plan. .................................................................25

    8.05    Closing of Chapter 11 Cases; Caption Change..........................................................25

    8.06    Successors and Assigns...............................................................................................25

    8.07    Non-Consummation. ...................................................................................................25

    8.08    Notice to Debtors, Consolidated Debtor, or Plan Trustee. .......................................26

    8.09    Governing Law. ..........................................................................................................26

    8.10    Exhibits. .....................................................................................................................26

    8.11    Filing of Additional Documents. ...............................................................................27

    8.12    Plan Documents. .........................................................................................................27

    8.13    Reservation of Rights..................................................................................................27

Article IX

DEFINED TERMS AND RULES OF INTERPRETATION.........................................................27

    9.01    Defined Terms. ...........................................................................................................27

    9.02    Rules of Interpretation. ..............................................................................................33

    9.03    Computation of Time. .................................................................................................34

    9.04    Exhibits and Plan Supplement. ..................................................................................34

    9.05    Deemed Acts...............................................................................................................34

**INTRODUCTION**

Each of the Debtors, as Proponents, jointly proposes the following plan of liquidation for the Debtors' liquidation under chapter 11 of the Bankruptcy Code and for the resolution of outstanding Claims and Interests. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in Article IX. The Plan Proponents are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement for a summary and analysis of this Plan and for a discussion of the Debtors' history, businesses, properties, operations, risk factors, and related matters.

**ARTICLE I**
**TREATMENT OF**
**ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article II.

**1.01   General Administrative Expense Claims.**

Subject to the terms of the Confirmation Order, each Holder of an Allowed Administrative Expense Claim, except for Priority Tax Claims and Professional Fee Claims against the Debtors shall receive cash equal to the Allowed amount of its Claim on the later of (a) the Initial Distribution Date, (b) the date such Administrative Expense Claim is Allowed, and (c) the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable.

**1.02   Professional Fee Claims.**

All final requests for payment of Professional Fee Claims must be filed no later than 30 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. Allowed Professional Fee Claims shall be paid in cash in full.

Objections to any Professional Fee Claim must be filed and served on the Plan Trustee and the applicable Professional within 21 days after the filing of the final fee application with respect to the Professional Fee Claim.

**1.03   Priority Tax Claims.**

Each Holder of an Allowed Priority Tax Claim against the Debtors shall receive cash equal to the amount of such Allowed Claim on the later of (a) the Initial Distribution Date, (b) the date such Priority Tax Claim is Allowed, and (c) the date such Allowed Priority Tax Claim becomes due and payable, or as soon thereafter as is practicable.

**ARTICLE II**
**CLASSIFICATION AND TREATMENT**
**OF CLASSIFIED CLAIMS AND INTERESTS**

**2.01**   **Summary of Classification and Treatment of Classified Claims and Interests.**

**(a)   General**

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without limitation, voting, Confirmation, and Distributions pursuant to this Plan, as set forth herein. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**(b)   Joint Administration and Partial Consolidation of the Debtors.**

This Plan provides for the joint administration of the Debtors, but not generally for the substantive consolidation of the Debtors' estates; provided, however, the Debtors' estates shall be substantively consolidated for payment of Allowed Administrative Expense Claims. Each Debtor shall contribute to payment of Allowed Administrative Expense Claims based upon its the percentage of cash assets held by each such Debtor of total cash available to the Debtors.

**(c)   Elimination of Empty Classes**

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**(d)   Identification of Classes of Claims Against and Interests in the Debtors.**

The Classes of Claims against each Debtor are separate for each Debtor. The following chart assigns a number to each Class for purposes of identifying each separate Class for each specific Debtor:

| Class | Class Description |
| --- | --- |
| Class 1 | Secured Claims |
| Class 2 | Priority Claims |
| Class 3 | General Unsecured Claims |
| Class 4 | Intercompany Claims |
| Class 5 | Subordinated Claims |
| Class 6 | Intercompany Interests |
| Class 7 | Existing Equity Interests in AHGI |

For each Debtor the Classes identified above shall be designated with the respective Debtor's Identifier. The Identifiers for the Debtors are as follows:

| Debtor | Case No. | Identifier |
|---|---|---|
| Amergent Hospitality Group, Inc. | 24-42483 | AHGI |
| I10/I20 Cuisine LLC | 24-42482 | BCK |
| LBB Acquisition, LLC | 24-42484 | LBB Acquisition |
| LBB Acquisition I, LLC | 24-42485 | LBBA1 |
| LBB Platform LLC | 24-42487 | LLB Platform |
| LBB Lake Oswego LLC | 24-42489 | LBB Lake Oswego |
| LBB Progress Ridge LLC | 24-42490 | LBB Progress Ridge |
| Noveno LLC | 24-42491 | LBB Alberta |
| Quinto LLC | 24-42492 | LBB Division |
| Sexto LLC | 24-42493 | LBB Waterfront |
| Cuarto LLC | 24-42494 | LBB Eugene |

For Example, Class 1 [AHGI] refers to Class 1 in the Amergent Hospitality Group, Inc. case.

**2.02    Treatment of Claims against and Interests in the Debtors.**

Subject to the provisions of 2.03 below and except as provided with respect to AHGI in Section 2.03 hereof, each Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Plan Trustee and such Holder. Unless otherwise indicated, each such Holder shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

**(a)  Class 1: Secured Claims.**

| | |
|---|---|
| Classification | Class 1 consists of all Secured Claims |
| Treatment | Each Holder of Allowed Secured Claims against the Applicable Debtor shall receive, at the discretion of the Plan Trustee: the return of the property securing such Holder's Secured Claim; payment in full in cash equal to the Allowed amount of such Claim, with payment to be made on the later of (A) the Initial Distribution Date, and (B) five (5) Business Days following the date the Claim becomes an Allowed Claim; or treatment in any other manner that renders the Claim unimpaired under the Bankruptcy Code. |
| Voting | Allowed Claims in Class 1 are Unimpaired. Each Holder of an Allowed Claim in Class 1 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan. |

**(b)  Class 2: Other Priority Claims.**

| Classification | Class 2 consists of all Other Priority Claims |
| --- | --- |
| Treatment | Each Holder of an Allowed Other Priority Claim against the Applicable Debtor shall receive cash equal to a Pro Rata Distribution of the Net Available Proceeds under this Plan until such time as the Allowed amount of such Claim is paid in full on the later of (i) the Initial Distribution Date, (ii) the date such Other Priority Claim is Allowed, and (iii) the date such Allowed Other Priority Claim becomes due and payable, or as soon thereafter as is practicable. |
| Voting | Allowed Claims in Class 2 are Unimpaired. Each Holder of an Allowed Claim in Class 2 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan. |

**(c)  Class 3: General Unsecured Claims.**

| Classification | Class 3 consists of all Unsecured Claims not otherwise classified |
| --- | --- |
| Treatment | Each Allowed General Unsecured Claim shall receive on the Initial Distribution Date, or as soon thereafter as is practicable, and on subsequent Distribution Dates as specified in the Trust Agreement, a Pro Rata Distribution of the Net Available Proceeds under this Plan until such time as the Allowed amount of such Claim is paid in full. |
| Voting | Claims in Class 3 are Impaired. Therefore, each Holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject this Plan. |

**(d)  Class 4: Intercompany Claims.**

| Classification | Class 4 consists of all Intercompany Claims |
| --- | --- |
| Treatment | Intercompany Claims shall be released without any Distribution on account of such Claims. |
| Voting | Allowed Claims in Class 4 are Impaired. Each Holder of an Allowed Claim in Class 4 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan. |

**(e)   Class 5: Subordinated Claims**

| | |
|---|---|
| Classification | Class 5 consists of all Subordinated Claims |
| Treatment | Each Allowed Subordinated Claim shall receive nothing under the Plan. |
| Voting | Allowed Claims in Class 5 are Impaired, and not receiving any Distribution under this Plan, in which case the Holders of Allowed Class 5 Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Allowed Class 5 Interest will not be entitled to vote to accept this Plan. |

**(f)   Class 6: Intercompany Interests**

| | |
|---|---|
| Classification | Class 6 consists of all Intercompany Interests |
| Treatment | In the sole discretion of the Plan Trustee, Intercompany Interests shall either be (a) reinstated for administrative convenience; or (b) released without any distribution on account of such Interests. |
| Voting | Allowed Claims in Class 6 are either Unimpaired, in which case the Holders of Allowed Class 6 Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any Distribution under this Plan, in which case the Holders of Allowed Class 6 Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Allowed Class 6 Interest will not be entitled to vote to accept this Plan. |

**(g)   Class 7: Existing Equity Interests.**

| | |
|---|---|
| Classification | Class 6 consists of all Existing Equity Interests in AHGI |
| Treatment | On the Effective Date, Existing Equity Interests shall be extinguished and the Holders of such Interests shall not receive or retain any Distribution, property, or other value on account of such Interests. |
| Voting | Interests in Class 7 are Impaired. Each Holder of an Allowed Interest in Class 7 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan |

**(h)  Reservation of Rights.**

   The Plan Proponents reserve the right to amend, modify, or supplement this Plan for any reason, in accordance with the terms of this Plan, the Bankruptcy Code and the Bankruptcy Rules.

**2.03   Treatment of Holders of Claims and Interests of AHGI.**

   Notwithstanding the treatments set forth in 2.02 above:

   (a)   Class 1 [AHGI] Secured Claims.  With respect to Class 1 [AHGI], each Allowed General Unsecured Claim in Class 1 [AHGI] shall receive on the Initial Distribution Date, or as soon thereafter as is practicable, and on subsequent Distribution Dates as specified in the Trust Agreement, one (1) common share of New Common Stock of AHGI, as Reorganized Debtor for each full $1.00 in Allowed Secured Claim.  Claims in Class 1 [AHGI] are Impaired. Therefore, each Holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject this Plan.

   (b)   Classes 2- 7 [AHGI] Unsecured Claims and Equity Interests.  With respect to Class 2 [AHGI], Class 3 [AHGI], Class 4 [AHGI], Class 5 [AHGI], Class 6 [AHGI] and Class 7 [AHGI] Equity Interests (the "Nonparticipating AHGI Classes"), each Claim in these Nonparticipating AHGI Classes shall receive nothing under the Plan. Allowed Claims and Interests in these Nonparticipating AHGI Classes are Impaired, and not receiving any Distribution under this Plan.  The Holders of Allowed Claims and Interests in the Nonparticipating AHGI Classes are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Allowed Claim or Interests in these AHGI Classes will not be entitled to vote to accept this Plan.

### ARTICLE III
### MEANS FOR IMPLEMENTATION OF THE PLAN

**3.01   Reorganization of AHGI**

   The assets of AHGI shall vest in AHGI (the "Reorganized Debtor") on the Effective Date; provided, however, the interests of the AHGI in the Subsidiary Debtors shall not be retained by AHGI and shall be included in the Trust Assets.  AHGI shall make all distributions of equity to Allowed Class 1 claims as described in Section 2.03 hereof.

**3.02   Plan Funding.**

   This Plan shall be funded from the Trust Assets [of the Subsidiary Debtors] transferred to the Plan Trust, including any proceeds therefrom.

**3.03   Establishment of the Plan Trust.**

   On or before the Effective Date, the Subsidiary Debtors and the Plan Trustee shall execute the Trust Agreement. On the Effective Date, (a) the Plan Trust shall be created, and (b) the Trust Assets shall be transferred to the Plan Trust.

**(a) Appointment of the Plan Trustee.**

Subject to the terms of this Plan, as of the Effective Date, the Plan Trustee shall be appointed under section 1123(b)(3)(B) of the Bankruptcy Code, and shall serve in such capacity, and shall have comparable authority as a bankruptcy trustee and the exclusive representative of the Estates or any corresponding provision of federal or state laws and shall succeed to all of the Subsidiary Debtors' and the Estates' rights. The powers, rights, and responsibilities of the Plan Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the Trust Agreement.

**(b) Appointment of Oversight Committee**

On the Effective Date, an oversight committee (the "Oversight Committee") shall be formed from representatives of the three (3) creditors holding the largest nonsubordinated Allowed Unsecured Claims entitled to distributions under the Plan willing to serve in such capacity. The Oversight Committee shall be authorized to be consulted by the Plan Trustee on matters as may be determined by the Plan Trustee or for which approval is required under the terms of this Plan. Approval of the Oversight Committee of actions taken by the Plan Trustee shall be deemed to be approval of the Allowed General Unsecured Claims to such actions.

**(c) Liquidation of Plan Trust Assets**

Subject to the terms of this Plan, the Plan Trustee, in accordance with the Trust Agreement, this Plan, and the Confirmation Order, shall liquidate the Trust Assets and distribute the proceeds thereof in accordance with this Plan. The Plan Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701- 4(d), with no objective to continue or engage in the conduct of a trade or business.

**(d) Corporate Governance**

Subject to the terms of this Plan, all corporate-governance powers with respect to the Subsidiary Debtors shall be transferred as of the Effective Date to the Plan Trustee in accordance with the Trust Agreement. After the Effective Date, the Plan Trustee may from time to time dissolve the Subsidiary Debtors as appropriate, pursuant to the terms of the Trust Agreement.

**(e) Beneficiaries of the Plan Trust.**

The Plan Trust Beneficiaries shall be the beneficiaries of the Plan Trust. The Plan Trust Beneficiaries shall be bound by the Trust Agreement. The interests of the Plan Trust Beneficiaries in the Plan Trust shall be uncertificated and nontransferable except upon death of the interest Holder or by operation of law.

**(f) Vesting and Transfer of Trust Assets to the Plan Trust.**

Pursuant to section 1141(b) of the Bankruptcy Code, the Trust Assets shall vest in the Plan Trust as of the Effective Date, free and clear of all Liens, Claims, and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Plan Trustee may abandon or otherwise not accept any non-Cash Trust Assets to any party asserting an interest in such assets that the

Plan Trustee believes, in good faith, have no value to the Plan Trust. Any non-Cash Trust Assets that the Plan Trustee so abandons or otherwise does not accept shall not be property of the Plan Trust.

**3.04    Distribution and Escrow Accounts.**

**(a)  Distribution Account**

On the Effective Date, the Plan Trustee shall establish the Distribution Account to be funded from time to time, as provided in this Plan, with the then Net Available Proceeds generated from the collection, liquidation, disposition and/or recovery of Trust Assets, for the purpose of making Distributions to the Holders of Allowed Claims.  Notwithstanding the commingling of funds in the Distribution Account, the Plan Trustee shall separately account for funds of each estate.

**(b)  Professional Fees Escrow Account.**

On the Effective Date, the Plan Trustee shall establish the Professional Fees Escrow Account in an amount equal to all asserted Professional Fee Claims outstanding as of the Effective Date (including, for the avoidance of doubt, any reasonable estimates for unbilled amounts payable from the Debtors' estates). Amounts held in the Professional Fees Escrow Account shall not constitute property of the Plan Trust. The Professional Fees Escrow Account may be an interest-bearing account. In the event there is a remaining balance in the Professional Fees Escrow Account following payment to all Holders of Allowed Professional Fee Claims under this Plan, any such amounts shall be turned over to the Plan Trust and shall be included in the Net Available Proceeds for purposes of Distribution in accordance with the terms of this Plan.

**3.05    Distributions to Creditors.**

**(a)  Initial Distributions to Creditors.**

On the Initial Distribution Date, or as soon thereafter as is practicable, the Plan Trustee shall distribute to each Creditor that holds an Allowed General Unsecured Claim against a Subsidiary Debtor for application against such Claim an amount equal to its Pro Rata share of the funds on deposit in the Distribution Account attributable to that Subsidiary Debtor.

**(b)  Subsequent Distributions.**

Subsequent Distributions of Net Available Proceeds shall be made by the Plan Trustee in accordance with the terms of this Plan and the Trust Agreement. Reserves for Disputed Administrative and Priority Claims shall be released at such time as the Claim has been resolved through agreement of the Holder of the Claim and the Plan Trustee, or entry of a Final Order resolving the Claim, and (i) that portion of the released funds shall be paid to the Holder of the Claim in satisfaction of the Allowed Claim, and (ii) the balance of the released funds, if any, shall be included in the Net Available Proceeds for purposes of subsequent Distributions under this Plan. The Plan Trustee shall release Reserves established to pay costs and expenses anticipated to be incurred in administering the Plan Trust to the extent the amount reserved exceeds the amount reasonably determined by the Plan Trustee to be necessary for such purpose, and the released funds shall be included in the Net Available Proceeds for purposes of subsequent Distributions under this Plan.

**(c) Plan Trust Expenses.**

Subject to the provisions of the Trust Agreement, all costs, expenses and obligations incurred by the Plan Trustee in administering this Plan, the Plan Trust, or in any manner connected, incidental, or related thereto, or in effecting Distributions from the Plan Trust, shall be a charge against the Trust Assets that remain after payment in Cash and in full of all Allowed Administrative Expense Claims (including Professional Fee Claims), Plan Trustee Fee Claims, Priority Tax Claims, Other Priority Claims, and Secured Claims. Such expenses shall be paid in accordance with the Trust Agreement.

### 3.06 Role of the Plan Trustee.

**(a) Exclusive Trustee.**

The Plan Trustee shall be the exclusive trustee of the Plan Trust and the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Plan Trustee shall be specified in the Trust Agreement and shall include the authority and responsibility to: (i) receive, liquidate, manage, invest, supervise, and protect the Trust Assets; (ii) pay taxes or other obligations incurred by the Plan Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Trust Assets; (iv) calculate and effectuate distributions of Trust Assets; (v) investigate, prosecute, compromise, and settle, in accordance with the specific terms of this Plan and the Trust Agreement, Reserved Causes of Action vested in the Plan Trust; (vi) resolve issues involving Claims and Interests in accordance with this Plan; (vii) undertake all administrative functions of this Plan, including the payment of fees payable to the U.S. Trustee and the ultimate closing of the Subsidiary Debtors' Chapter 11 Cases. Pursuant to the terms of this Plan, the Plan Trustee is the successor to the Subsidiary Debtors and their Estates.  The Plan Trustee may not retain professionals or incur debt in excess of $10,000 absent approval of the Oversight Committee.

**(b) Possession of Books and Records.**

On the Effective Date, the Plan Trust shall: (i) take possession of all books, records, and files of the Subsidiary Debtors and their respective Estates; and (ii) provide for the retention and storage of such books, records, and files until such time as the Plan Trust determines, in accordance with the Trust Agreement, that retention of same is no longer necessary or required.

**(c) Investment of Cash.**

The Plan Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments; provided, however, that such investments are permitted to be made by a liquidation trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

**(d) Right to Object.**

The Plan Trust shall have the right to object to Claims and Interests.

**(e)   Quarterly Reports.**

In no event later than 30 days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Plan Trust has been distributed in accordance with this Plan, the Plan Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all distributions made by the Plan Trustee under this Plan through each applicable reporting period.

**(f)   Tax Returns.**

The Plan Trustee shall file tax returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Plan Trust also shall annually (for tax years in which distributions from the Plan Trust are made) send to each beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any distribution from the Plan Trust. The Plan Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Plan Trust Beneficiaries in accordance with their relative beneficial interests in the Plan Trust. As soon as possible after the Effective Date, the Plan Trust shall make a good faith valuation of assets of the Plan Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Plan Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Plan Trust that are required by any Governmental Unit for taxing purposes. The Plan Trust may request an expedited determination of taxes of the Subsidiary Debtors or of the Plan Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Subsidiary Debtors and the Plan Trust for all taxable periods through the dissolution of the Plan Trust. The Plan Trust shall be responsible for filing all federal, state, and local tax returns for the Subsidiary Debtors and the Plan Trust. The Plan Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Plan Trust shall be subject to any such withholding and reporting requirements.

**(g)   Allowed Tax Obligations.**

The Plan Trust shall be responsible for payment of all taxes imposed on the Plan Trust.

**(h)   Preservation of Right to Conduct Investigations.**

The preservation for the Plan Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Subsidiary Debtors or the Committees prior to the Effective Date shall vest with the Plan Trust and shall continue until dissolution of the Plan Trust.

**(i)   Prosecution and Resolution of Causes of Action.**

From and after the Effective Date, prosecution and settlement of all Reserved Causes of Action transferred to the Plan Trust shall be the sole responsibility of the Plan Trustee pursuant to this Plan and the Confirmation Order. From and after the Effective Date, the Plan Trust shall have exclusive rights, powers, and interests of the Subsidiary Debtors' Estates to pursue, settle, or abandon such Reserved Causes of Action as the sole representative of the Subsidiary Debtors' Estates pursuant to section

1123(b)(3) of the Bankruptcy Code. Proceeds recovered from all Reserved Causes of Action will be deposited into the Plan Trust and will be distributed by the Plan Trustee to beneficiaries in accordance with the provisions of this Plan and Trust Agreement. All Causes of Action that are not expressly released or waived under this Plan are Reserved Causes of Action and preserved and vest in the Plan Trust in accordance with this Plan. No Person may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Subsidiary Debtors or Plan Trustee will not pursue any and all Reserved Causes of Action against such Person or Entity. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or substantial consummation of this Plan. No Causes of Action that have been otherwise released or exculpated shall be transferred to the Plan Trust; the Plan Trustee shall not have standing to pursue such released or exculpated claims or Causes of Action; and all such claims and Causes of Action shall be waived, released, and discharged pursuant to this Plan.

**(j)   Federal Income Tax Treatment of the Plan Trust for the Trust Assets.**

For federal income tax purposes, it is intended that the Plan Trust be classified as a liquidation trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Plan Trust Beneficiaries be treated as if they had received a distribution from the Subsidiary Debtors' Estates of an undivided interest in each of the Trust Assets (to the extent of the value of their respective share in the applicable Trust Assets) and then contributed such interests to the Plan Trust, and the Plan Trust Beneficiaries will be treated as the grantors and owners thereof.

**(k)   Limitation of Liability.**

No recourse will ever be had, directly or indirectly, against the Plan Trustee or its officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Plan Trust under this Plan or by reason of the creation of any indebtedness by the Plan Trust or the Plan Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Trust Assets. The Plan Trustee and its agents shall not be deemed to be the agent for any Holder of a Claim in connection with distributions made under this Plan. The Plan Trustee and its officers, directors, employees, professionals, representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound business judgment; provided, however, that the limitations of liability set forth in this section will not apply to any gross negligence or willful misconduct by any of the foregoing.

**(l)   Term of the Plan Trust.**

The Plan Trustee shall be discharged and the Plan Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Trust Assets have been liquidated, (c) all duties and obligations of the Plan Trustee under the Trust Agreement have been fulfilled, (d) all Distributions required to be made under this Plan and the Trust Agreement have been made, (e) the Plan Trustee shall

have filed with the Court a final report of assets administered and (f) the Subsidiary Debtors' Chapter 11 Cases have been closed.

**(m) Retention of Professionals.**

Subject to the terms of this Plan and Confirmation Order to the extent they address the treatment and payment of Professional Fees incurred prior to the Effective Date, the Plan Trustee may retain and compensate attorneys and other professionals to assist in their duties, on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate, without Bankruptcy Court approval. Subject to the terms of this Plan, upon the appointment of the Plan Trustee under the Trust Agreement, any Professionals retained by the Subsidiary Debtors shall no longer be obligated or required to continue to represent the Subsidiary Debtors after the Effective Date (unless such Professionals have agreed in writing to continue such representation) and, if such Professional elects to withdraw from such representation, such Professional shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Chapter 11 Cases and the confirmation of this Plan. The confirmation of this Plan shall constitute any necessary consent and court approval to withdraw from such representation. However, such Professionals shall be deemed retained after such date with respect to (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and (b) motions seeking the enforcement of the provisions of this Plan or the Confirmation Order.

**(n)  Conflicts between the Trust Agreement and the Plan.**

In the event of any inconsistencies or conflict between the Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

**(o)  Cancellation of Existing Securities and Agreements.**

Except for purposes of evidencing a right to Distributions under this Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or Interests or rights of any Holder of a Claim against or Interest in any of the Subsidiary Debtors, including, but not limited to, all indentures, notes, bonds, and share certificates evidencing such Claims and Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void, and satisfied, as against the Subsidiary Debtors but not as against any other Person or Entity.

**(p)  Automatic Stay.**

Subject to the terms of this Plan, the automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date.

**(q)  Books and Records.**

Subject to the terms of this Plan, as part of the appointment of the Plan Trustee, to the extent not already transferred on the Effective Date, the Subsidiary Debtors shall transfer dominion and control over all of their books and records to the Plan Trustee in whatever form, manner, or media those books and records existed immediately prior to the transfer thereof to the Plan Trustee. The Plan Trustee may abandon or dispose of all such books and records on or after ninety (90) days from the Effective Date; provided, however, that the Plan Trustee shall not abandon or dispose of any books and records (a) that are reasonably likely to pertain to pending or contemplated litigation in which the Subsidiary Debtors or

their current or former officers or directors are or likely will become a party and/or (b) in a manner that fails to prevent disclosure of account numbers and personally identifiable information of customers, employees of customers, and other third parties. Pursuant to section 554 of the Bankruptcy Code, this Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required, to effectuate the aforementioned abandonment or disposal of the books and records of the Subsidiary Debtors.

**(r)   D&O / E&O Insurance Policies.**

No prepaid D&O / E&O Insurance Policy shall be cancelled, and the Subsidiary Debtors' directors, officers, and employees who have valid claims against the D&O / E&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O / E&O Insurance Policies to the extent of the coverage provided by the D&O / E&O Insurance Policies. As such, and notwithstanding anything in this Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O / E&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Subsidiary Debtors and assigned to the Plan Trustee.

**(s)   Additional Transactions Authorized under This Plan.**

On or after the Effective Date, the Plan Trustee shall be authorized to take any such actions as may be necessary or appropriate to carry out the provisions of this Plan.

**(t)   Comprehensive Settlement of Claims and Controversies.**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are fair, equitable, and reasonable and are in the best interests of (a) the Subsidiary Debtors and their Estates and their respective property and (b) Claim and Interest Holders.

**3.07   Corporate Restructuring of AHGI**

The Reorganized Debtor shall cancel all of the existing classes of equity of the Debtor.  The Reorganized Debtor shall authorize the issuance of 10,000,000 shares of a single class of voting common stock to be issued pursuant to the provisions of Section 2.03 hereof.  The initial board of directors of the Reorganized Debtor shall consist solely of Mike Pruitt until his successors is duly elected.  The initial officers of the Reorganized Debtor shall consist of Mike Pruitt as Chief Executive Officer and Steve Hoelscher as Chief Financial Officer until their successors are appointed.  The Reorganized Debtor shall take such action as may be necessary and appropriate to cancel the listing of AHGI with public markets.

**ARTICLE IV**
**TREATMENT OF EXECUTORY CONTRACTS,**
**UNEXPIRED LEASES, AND INSURANCE POLICIES**

**4.01    Deemed Rejection of Executory Contracts and Unexpired Leases.**

Unless already assumed or rejected by Final Order in the Chapter 11 Cases, all executory contracts and unexpired leases of the Debtors that are not the subject of a pending application to assume as of the Confirmation Date shall be deemed rejected on the Effective Date except as provided in this Plan, including, but not limited to, Sections 6.3 and 6.4.

The Unexpired Leases of AHGI at its Oregon locations are assumed pursuant to the Plan with $0.00 cure amount.

**4.02    Rejection Claims.**

**(a)  Rejection by the Plan.**

Holders of Claims as a result of the rejection of an executory contract or unexpired lease by the terms of this Plan shall file a Proof of Claim for rejection damages no later than thirty (30) days after the Effective Date, failing which such Claim shall be disallowed.

**(b)  Rejection by Means Other than by the Plan.**

Holders of Claims as a result of the rejection of an executory contract or unexpired lease, other than by the terms of this Plan, shall follow the procedures for filing a claim previously set forth in such order authorizing rejection, failing which such Claim shall be disallowed in its entirety.

**4.03    Assumed Contracts and Unexpired Leases.**

The Debtors shall assume those Executory Contracts and Unexpired Leases set forth on an exhibit attached to any Plan Supplement with cure amounts specified in any such Plan Supplement. If no such cure amount is specified with respect to an Assumed Contract or Unexpired Lease, such cure amount shall be $0.00.  If such counterparty to the proposed Executory Contracts and Unexpired Leases to be assumed under this Plan disagrees with the cure amount set forth in this Section or on an exhibit attached to the Plan Supplement, the party must file an objection with the Bankruptcy Court not later than (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (a) each such assumption is in the best interest of the Debtors and their Estates, (b) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and (c) the assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

**4.04** **Insurance Policies and Agreements.**

To the extent that the insurance policies issued to, or insurance agreements entered into by, any Debtor before the applicable Petition Date constitute Executory Contracts under section 365 of the Bankruptcy Code, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order, or agreed to by the Debtors before the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.

Nothing contained in this Plan will constitute a waiver of any claim, right, or Cause of Action that any Debtor or the Plan Trust may hold against an insurer of any of the Debtors under any policy of insurance or insurance agreement.

**4.05** **Postpetition Contracts and Leases.**

All contracts, agreements, and leases that were entered into by the Debtors, or assumed by the Debtors, after the applicable Petition Date shall be deemed assigned by the Debtors to the Plan Trustee on the Effective Date.

**4.06** **Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**ARTICLE V**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**5.01** **Distributions Made by the Plan Trustee.**

All Distributions under this Plan to the Holders of claims of the Subsidary Debtors shall be made by the Plan Trustee pursuant to this Plan and the Trust Agreement. All Distributions under this Plan shall be made in accordance with the priorities established by this Plan.

**(a)** **Timing and Calculation of Amounts to Be Distributed.**

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such

Disputed Claims shall be made pursuant to the provisions set forth in this Article Except as otherwise provided in this Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the Distributions provided for in this Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

**(b)  Single Recovery.**

There will be only a single recovery on account of each Allowed Claim. No Holder of an Allowed Claim will be entitled to receive more than payment in full of its Allowed Claim, and each Claim will be administered and treated in the manner provided by this Plan until payment in full of that Allowed Claim.

**(c)  Distributions on Account of Claims Allowed after the Effective Date.**

Except as otherwise provided in this Plan, the Confirmation Order, or a Final Order, or as agreed to by the relevant parties, Distributions under this Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made as soon as reasonably practicable after the Disputed Claim becomes an Allowed Claim.

**(d)  Special Rules for Distributions to Holders of Disputed Claims.**

Notwithstanding any provision to the contrary in this Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Plan Trustee, in accordance with this Plan and the Trust Agreement, shall establish appropriate Reserves for potential payment of such Claims.

**(e)  Means of Cash Payment.**

Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Plan Trustee by checks or wire transfers. Cash payments to foreign creditors may be made, at the option of the Plan Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**(f)  Minimum; De Minimis Distributions.**

No Cash payment of less than $25.00, in the reasonable discretion of the Plan Trustee, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

**(g)  Withholding and Reporting Requirements.**

In connection with this Plan and all Distributions thereunder, the Plan Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. In accordance with the Trust Agreement, the Plan Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Plan

Trustee believes are reasonable and appropriate. All persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. No Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Plan Trustee for the payment and satisfaction of such tax obligations.

**(h)   Compliance Matters.**

The Plan Trustee shall be entitled to allocate and distribute all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens, and similar encumbrances.

**(i)   Setoff and Recoupment.**

The Plan Trustee may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Estates or the Plan Trustee may have against the Holder of such Claim; provided, however, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Trustee of any claim that the Estates or the Plan Trustee may assert against any Holder of an Allowed Claim.

**(j)   Undeliverable or Non-Negotiated Distributions and Unclaimed Property.**

If any Distribution is returned as undeliverable, no further Distributions to the applicable Holder shall be made unless and until the Plan Trustee is notified in writing of such Holder's then- current address, at which time the undelivered Distribution shall be made to such Holder without interest or dividends; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Distribution is made. Notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, all undeliverable Distributions under this Plan that remain unclaimed for one year after attempted distribution shall indefeasibly revert to the Plan Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed Distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Plan Trustee by the Holder of the relevant Allowed Claim within the 90-calendar- day period. After such date, Distributions to the Holder of the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be deemed undeliverable as of the date of the original issuance of the check and shall indefeasibly revert to the Plan Trust in accordance with the terms hereof, notwithstanding any federal or state escheat laws to the contrary.

**(k) Claims Paid by Third Parties.**

To the extent a Holder receives a Distribution on account of a Claim and also receives payment from a party, other than an insurer or surety, that is not the Plan Trustee on account of such Claim, such Holder shall, within thirty calendar days of receipt thereof, repay or return the Distribution to the Plan Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of the Claim as of the date of any such Distribution under this Plan.

**ARTICLE VI
PROCEDURES FOR RESOLVING
CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS**

**(a) Allowance of Claims.**

After the Effective Date, the Plan Trustee shall have and retain any and all rights and defenses the Subsidiary Debtors had with respect to any Claim or Interest immediately before the Effective Date, other than Claims that are Allowed under this Plan or pursuant to a Final Order entered by the Bankruptcy Court on or before the Effective Date. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

**(b) Claims Administration Responsibilities.**

Except as otherwise specifically provided in this Plan, after the Effective Date, the Plan Trustee shall have the sole authority to: (a) reconcile Claims, file, litigate to judgment, or withdraw objections to Claims; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust (or cause to be administered or adjusted) the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**(c) Adjustment to Claims Without Objection.**

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Plan Trustee without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**(d) Time to File Objections to Claims.**

Any objections to Claims shall be filed on or before the Claims Objection Bar Date.

**(e) Disallowance of Claims.**

Any Claims held by an Entity from which property may be recoverable pursuant to a Reserved Cause of Action under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such

Claims may not receive any distributions on account of such Claims until such time as such Reserved Causes of Action or Avoidance Action against that Entity have been settled or a Final Order with respect thereto has been entered.

**(f)   Late-Filed Claims.**

Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims will not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late-filed Claims have been deemed timely filed by a Final Order.

**(g)   Amendments to Claims.**

On or after the Effective Date, except as provided in this Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court and the Plan Trustee, and any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

**(h)   No Distributions Pending Allowance.**

If an objection to a Claim or portion thereof is filed as set forth in Article VIII of this Plan, no payment or Distribution provided under this Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**(i)   Distributions after Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Plan Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, less any previous Distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim.

**(j)   Remedies Not Exclusive.**

All of the Claims objection and estimation procedures set forth in this Article are cumulative and not exclusive of one another.

**ARTICLE VII**
**EFFECT OF PLAN CONFIRMATION**

**7.01   Binding Effect.**

On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of this Plan or the Plan Supplement, including all agreements, instruments, and other documents filed in connection with this Plan and executed by the Debtors in connection with this Plan or

the Plan Supplement, shall be binding upon the Debtors and their Estates, the Plan Trust, and all Holders of Claims against and Interests in the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan, and all other parties that are affected in any manner by this Plan. Except as expressly provided otherwise in this Plan, all agreements, instruments, and other documents filed in connection with this Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

### 7.02   <u>Exculpation.</u>

From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective current or former employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any Post-Petition Date act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating, or implementing this Plan, the Plan Supplement, the Disclosure Statement, the solicitation of acceptances of this Plan, Confirmation, and the pursuit thereof, the consummation of this Plan, the administration of this Plan, the property to be distributed under this Plan, or any other Post-Petition Date act taken or omitted to be taken in connection with the Chapter 11 Cases or implementation of this Plan.

Notwithstanding the foregoing, solely to the extent provided by section 1125(e) of the Bankruptcy Code, the Debtors' Estates shall neither have, nor incur any liability to any Entity for any exculpated Claim; <u>provided</u>, <u>however</u>, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, willful misconduct or gross negligence.

Any of the Exculpated Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under this Plan.

### 7.03   <u>Injunctions .</u>

**(a)  Term of Bankruptcy Injunction or Stays.**

All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**(b)  Liability to Governmental Units.**

Nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Order enjoin or otherwise

bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

Further, nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

For the avoidance of doubt, the foregoing shall not limit the scope of discharge of all Claims and Interests arising prior to the Effective Date under sections 524 and 1141 of the Bankruptcy Code, or limit the Debtors' rights under section 525 of the Bankruptcy Code. Nothing in the Confirmation Order or this Plan shall affect any setoff or recoupment rights of any Governmental Unit.

For the avoidance of doubt, the State of Texas and its agencies, including but not limited to the Texas Alcohol and Beverage Committee, opts out of any and all releases provided in the Plan.

## ARTICLE VIII
## MISCELLANEOUS PROVISIONS

**8.01   Effectuating Documents and Further Transactions.**

Each of the Debtors, and the Plan Trustee is authorized to execute, deliver, file, or record such contracts, instruments, certificates, notes, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan.

**8.02   Exemption from Transfer Taxes.**

Pursuant to section 1146(a) of the Bankruptcy Code: (a) the issuance, transfer, or exchange of equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, deeds, bills of sale, and transfers of tangible property, specifically including but not limited to transfers made pursuant to the Auction Order, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**8.03     Payment of Statutory Fees.**

All Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtor or the Plan Trustee on the Effective Date. After the Effective Date, AHGI and the Plan Trustee, shall be liable for any and all respective Quarterly Fees when they are due and payable after the Effective Date. The Debtors shall file all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, AHGI and the Plan Trustee shall timely file with the Bankruptcy Court Quarterly Reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Plan Trustee and AHGI, as the case may be, during the applicable period. AHGI and the Plan Trust shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**8.04     Amendment or Modification of this Plan.**

Subject to section 1127 of the Bankruptcy Code, the Plan Proponents, collectively or singularly, may alter, amend, or modify this Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. Any Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**8.05     Closing of Chapter 11 Cases; Caption Change.**

The Plan Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases. Upon the filing of a motion to close the Chapter 11 Cases, the Plan Trustee shall file a final report with respect to all of the Chapter 11 Cases.

**8.06     Successors and Assigns.**

This Plan shall be binding upon and inure to the benefit of the Debtors and the Estates and their successors and assigns, including, without limitation, the Reorganized Debtor. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**8.07     Non-Consummation.**

Any proposed settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), any proposed assumption or rejection of Executory Contracts or Unexpired Leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall not become effective until the Effective Date. Until the Effective Date, nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, or (ii) prejudice in any manner the rights of the Debtors, the Chapter 11 Trustees, or any other Person.

**8.08**   **Notice to Debtors, Reoganized Debtor or Plan Trustee.**

All notices, requests, and demands to or upon the Debtors, the Plan Trustee or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Party | Notice Address: |
|-------|-----------------|
| Debtor/Reorganized Debtor: | c/o Mike Pruitt<br>CEO<br>Amergent Hospitality Group, Inc. (AMHG)<br>7529 Red Oak Lane<br>Charlotte NC 28226<br>Email: mp@amergenthg.com<br><br>*with copy to:*<br>Richard G. Grant<br>Tex. Bar No. 08302650<br>CM LAW PLLC<br>National Litigation Support Center<br>13101 Preston Road, Suite 110-1510<br>Dallas, Texas 75240<br>Telephone: 214-210-2929<br>Email: rgrant@cm.law |

and with respect to matters relating to the Plan Trustee's role and responsibilities under this Plan, a copy to the notice address(es) provided in the Trust Agreement. Copies of all such Notices shall also be given to the following:

**8.09**   **Governing Law.**

Subject to the provisions of any contract, certificates, or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, and subject further to Section 11.1 of this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with (a) the Bankruptcy Code, the Bankruptcy Rules, or other federal law to the extent applicable and (b) if none of such law is applicable, the laws of the State of Texas, without giving effect to the principles of conflicts of law of such jurisdiction.

**8.10**   **Exhibits.**

All exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**8.11    Filing of Additional Documents.**

On or before substantial consummation of this Plan, the Debtors shall, as applicable, file such agreements and other documents as may be necessary or appropriate to effectuate and evidence further the terms and conditions of this Plan.

**8.12    Plan Documents.**

This Plan and the Plan Supplement, including all exhibits, supplements, appendices, and schedules thereto, and any modifications to any of the foregoing, shall be in form and substance acceptable to the Plan Proponents.

**8.13    Reservation of Rights.**

Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order. The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Plan Proponents with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Plan Proponents or any other Person with respect to Claims against and Interests in the Debtors.

## ARTICLE IX
## DEFINED TERMS AND RULES OF INTERPRETATION

**9.01    Defined Terms.**

As used in this Plan, capitalized terms shall have the meanings set forth in this Article I. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**Administrative Expense Claim** means a Claim for costs and expenses of administration of the Chapter 11 Cases arising after the Petition Date and prior to the Effective Date under sections 326, 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors after the Petition Date and Claims of Governmental Units for taxes (including tax audit Claims) related to tax years commencing after the Petition Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date; (b) any Professional Fee Claim or Plan Trustee Fee Claims, to the extent Allowed by Final Order under sections 326, 328, 330, 331 or 503 of the Bankruptcy Code; (c) with the exception of Claims arising under section 507(b) of the Bankruptcy Code, any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; or (d) any Quarterly Fees.

**Affiliate** has the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

**Allowed** means, with respect to a Claim or Interest, such Claim or Interest or any portion thereof to which a Debtor or other party in interest has not objected, and is not disputed, contingent or unliquidated, as of the Claims Objection Bar Date, or that has been (a) allowed by an order of the Bankruptcy Court, (b) allowed pursuant to the terms of this Plan, (c) following the Effective Date, allowed by agreement between the Holder of such Claim or Interest and the Plan Trustee or (d) allowed by an

order of a court in which such Claim or Interest could have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced; provided, however, that the Plan Trustee shall retain all Causes of Action and defenses with respect to Allowed Claims that are Unimpaired pursuant to this Plan (including, for the avoidance of doubt, Administrative Expense Claims not paid prior to the Effective Date).

**Avoidance Actions** means (a) any and all claims for relief against any and all third parties for the recovery of transfers of Cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable pursuant to sections 502, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, or otherwise applicable non-bankruptcy law, (b) any claims or causes of action of the Estates under section 510 of the Bankruptcy Code or under other applicable laws, and (c) all claims or causes of action that arise under chapter 5 of the Bankruptcy Code.

**Ballot** means the form distributed to each Holder of an Impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

**Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532, as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

**Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas (Fort Worth Division).

**Bankruptcy Rules** means, collectively: (a) the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

**Business Day** means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**Cash** means the equivalent of legal tender of the United States of America, however paid or transmitted.

**Cause of Action** means any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, including without limitation claims for consequential or punitive damages, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**Chapter 11 Cases** means, collectively, the chapter 11 bankruptcy proceedings in the Bankruptcy Court with the following case numbers: Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform

LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (24-42494).

**Claim** means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

**Claims Bar Date** means the applicable bar date by which Proofs of Claim must be filed, as established by: (a) the applicable Claims Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

**Claims Objection Bar Date** means <u>90 days</u> after the Effective Date, subject to the right of the Plan Trustee to seek an extension of such date by motion served on parties requesting notice pursuant to Bankruptcy Rule 2002.

**Claims Register** means that certain register maintained by the Bankruptcy Court or the Claims Agent containing a list of all of the proofs of claim that have been filed in the Chapter 11 Cases.

**Class** means each category of Holders of Claims or Interests established under Article II of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket(s).

**Confirmation Hearing** means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

**Confirmation** means the entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** means an order confirming this Plan, in form and substance satisfactory to the Plan Proponents.

**D&O / E&O Insurance Policies** means all primary and excess insurance policies of each of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of each of the Debtors' directors and officers.

**Debtors** means, collectively, the debtors and debtors in possession in each of these Chapter 11 cases including, without limitation, Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494).

**Definitive Documentation** means the definitive documents and agreements governing this Plan and the transactions contemplated thereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (a) this Plan (and all exhibits and other documents and instruments related thereto); (b) the Plan Supplement; (c) the Disclosure Statement; (d) the Trust

Agreement; and (e) the Confirmation Order, which shall be in each case in form and substance reasonably acceptable to the Plan Proponents.

**Disclosure Statement** means the written disclosure statement that relates to this Plan (including, without limitation, all exhibits and schedules to such Plan, as the same may be amended, supplemented or otherwise modified from time to time, in a manner acceptable to the Plan Proponents), as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**Disputed Administrative and Priority Claim** has the meaning given to such term in Section 5.10(a) of this Plan.

**Disputed** means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

**Distribution Date** means (a) the Initial Distribution Date with respect to any Distribution to be made under this Plan on the Initial Distribution Date, and (b) with respect to all other Distributions to be made under this Plan, such date(s) as provided in the Trust Agreement, or as otherwise established by the Plan Trustee in accordance with the Trust Agreement.

**Distribution** means any payment of Cash or property to any Holder of an Allowed Claim as provided in this Plan.

**Distribution Record Date** means the record date for determining entitlement to receive Distributions under this Plan on account of Allowed Claims, which date shall be the third Business Day after the Confirmation Date at 5:00 p.m. (prevailing Central time).

**Effective Date** means a date to be specified by the Plan Proponents in a Notice of Effective Date to be filed with the Bankruptcy Court in accordance with this Plan to occur no later than 60 days after entry of the Confirmation Order.

**Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

**Estate** means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

**Exculpated Parties** means the Debtor and the Reorganized Debtor.

**Executory Contracts** means all executory contracts to which any Debtor is a party.

**Existing Equity Interests** means the Interests in the Debtors as of the Petition Date except for Intercompany Interests.

**Final Order** means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket by the clerk of such court, which order or judgment has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have

been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to submit any further appeal, petition for *certiorari* or motion for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not solely cause such order not to be a Final Order.

**General Unsecured Claims** means Claims that are not secured, excluding (a) Administrative Expense Claims, (b) priority claims, including Priority Tax Claims and Other Priority Claims, (c) Professional Fee Claims, (d) Plan Trustee Fee Claims, and (e) Intercompany Claims.

**Governmental Unit** has the meaning provided in section 101(27) of the Bankruptcy Code.

**Holder** means an Entity holding a Claim or Interest.

**Impaired** has the meaning provided in section 1124 of the Bankruptcy Code.

**Initial Distribution Date** means that date which is five (5) Business Days following the Effective Date, or as soon thereafter as is practicable.

**Insider Claims** means any Claim held by (a) any Person that is an Insider of any of the Debtors or (b) any entity that was or is wholly owned or controlled by an Insider.

**Insider** has the meaning provided in section 101(31) of the Bankruptcy Code.

**Intercompany Claim** means any Claim that is held by a Debtor against any other Debtor arising at any time prior to or as of the Effective Date.

**Intercompany Interests** means any Interest in a Debtor held by another Debtor.

**Interest** means any equity security, as such term is used in section 101(16) of the Bankruptcy Code, in a Debtor.

**Lien** means, with respect to any interest in property, any mortgage, "lien" as defined in section 101(37) of the Bankruptcy Code, pledge, charge, security interest, easement, or encumbrance of any kind whatsoever affecting such interest in property.

**Net Available Proceeds** means the gross proceeds generated from the collection, liquidation, disposition and/or recovery of Trust Assets, less (a) the actual and reasonable fees and expenses of the Plan Trustee, including reasonable attorney's fees, incurred to collect, liquidate, recover and/or administer such assets, (b) amounts required by this Plan to be paid to the Holders of Allowed Administrative Expense Claims, Professional Fee Claims, Plan Trustee Fee Claims, Priority Tax Claims, and Other Priority Claims, (c) amounts required by this Plan to be paid to the Holders of Allowed Claims in Classes 1 and 2, (d) the amount required to fund the Distribution Account, and (e) Reserves established by the Plan Trustee pursuant to 3.04 of this Plan.

**Other Priority Claim** means a General Unsecured Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim.

**Oversight Committee** shall consist of Paul Mannion, Steve Apolant and a qualified third member selected by them pursuant to Section 3.03(b).

**Person or person** means a person as defined in section 101(41) of the Bankruptcy Code.

**Petition Date** means July 18, 2024.

**Plan** means this joint chapter 11 plan of liquidation for the Debtors' estates, jointly proposed and filed by the Plan Proponents, including all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**Plan Proponents** shall mean the Debtors.

**Plan Supplement** means the supplement to this Plan, in a form reasonably acceptable to the Plan Proponents, to be filed with the Bankruptcy Court no later than 10 days prior to the Voting Deadline and shall include the Trust Agreement.

**Plan Trust Beneficiaries** means the Holders of Allowed Claims.

**Plan Trust** means the trust created for the benefit of the Holders of Allowed Claims.

**Plan Trustee** means Mike Pruitt [the current CEO of the Debtor] and appointed pursuant to this Plan and the Trust Agreement and his successors as may be appointed by the Oversight Committee.

**Priority Tax Claim** means any Claim of a Governmental Unit against any Debtor entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code or a specified section of section 502(i) of the Bankruptcy Code.

**Pro Rata** means a proportion calculated as the ratio of (a) the amount of an Allowed Claim in a Class to the amount of all Allowed Claims in such Class, in the event that all Claims in the Class have been Allowed, or (b) prior to the allowance or disallowance of all Claims in a Class, the amount of an Allowed Claim in a Class to the sum of all Allowed Claims and Disputed Claims (in their face amount or estimated maximum allowable amount) in such Class.

**Professional Fee Claim** means any Claim of a Professional for allowance of compensation and/or reimbursement of costs and expenses incurred in the respective Chapter 11 Cases on or before the Effective Date.

**Professional Fees Escrow Account** means the account established pursuant to 3.04(b) of this Plan.

**Professional** means any Entity retained by the Debtors, the Subchapter V Trustee in accordance with a Final Order entered in a Bankruptcy Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code.

**Proof of Claim** means a written statement filed with the Court setting forth a creditor's claim pursuant to section 501 of the Bankruptcy Code and Rule 3001 *et. seq*. of the Bankruptcy Rules.

**Punitive Damage Claims** means General Unsecured Claims seeking non-compensatory damages, or damage multipliers, based on statutory, common law, equitable, or other punitive damage theories of relief.

**Quarterly Fees** means all fees payable to the Office of the United States Trustee.

**Reorganized Debtor** means AHGI after the Effective Date.

**Reserved Causes of Action** means all Causes of Action assertable by the Debtors, directly or derivatively, other than any Causes of Action that are released pursuant to the exculpation provisions in Section 7.02 of this Plan. The Reserved Causes of Action shall include, without limitation, all causes of action against Robert Hersch and his Affiliates including, without limitation, Oz Rey, LLC.

**Section 510(b) Claim** means a Claim that is subordinated, or subject to subordination, pursuant to section 510(b) of the Bankruptcy Code, including, without limitation, a Claim arising from the rescission or purchase of a sale or security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such security or for reimbursement or contribution on account of such Claim pursuant to section 502 of the Bankruptcy Code.

**Secured Claim** means Claim for which performance is secured by a Lien.

**Securities Act** means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

**Subsidiary Debtor** means each of the Debtors other than AHGI.

**Trust Agreement** means that certain Liquidating Trust Agreement, in a form reasonably acceptable to the Debtors to be filed as an exhibit to the Plan Supplement.

**Trust Assets** means all assets of the Subsidiary Debtors including, without limitation, the cash proceeds of the sales of the restaurants.

**U.S. Trustee** means the Office of the United States Trustee for the Northern District of Texas.

**Unexpired Lease** means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Unimpaired** means with respect to a Claim, a Claim that is not Impaired

**9.02    Rules of Interpretation.**

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions

means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule, or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections or Articles are references to Sections or Articles of this Plan or the Plan Supplement, as the same may be amended, waived, or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code (other than section 102(5) of the Bankruptcy Code) will apply; and (i) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

### 9.03    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, Distribution, act, or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or Distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but if so made, performed, or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

### 9.04    Exhibits and Plan Supplement.

All exhibits to this Plan, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein. Holders of Claims and Interests may obtain a copy of the Plan Supplement and the filed exhibits upon written request to counsel for the Debtor at rgrant@cm.law. Upon their filing, the Plan Supplement and the exhibits may be inspected (i) in the office of the Clerk of the Bankruptcy Court during normal business hours, (ii) at the Bankruptcy Court's website at http://www.txnb.uscourts.gov,.

### 9.05    Deemed Acts.

Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of this Plan and/or Confirmation Order without any further act by any party.

Respectfully Submitted,

| Debtor | Case No. | Identifier |
|---|---|---|
| Amergent Hospitality Group, Inc. | 24-42483 | AHGI |
| I10/I20 Cuisine LLC | 24-42482 | BCK |
| LBB Acquisition, | 24-42484 | LBB Acquisition |
| LBB Acquisition 1 LLC | 24-42485 | LBBA1 |

September 2, 2025

| LBB Platform LLC | 24-42487 | LLB Platform |
|---|---|---|
| LBB Lake Oswego LLC | 24-42489 | LBB Lake Oswego |
| LBB Progress Ridge LLC. | 24-42490 | LBB Progress Ridge |
| Noveno LLC | 24-42491 | LBB Alberta |
| Quinto LLC | 24-42492 | LBB Division |
| Sexto LLC | 24-42493 | LBB Waterfront |
| Cuarto LLC | 24-42494 | LBB Eugene |

By: /s/ Mike Pruitt
    Mike Pruitt,
    CEO and authorized agent of each Joint Debtor
    September 2, 2025

# EXHIBIT B

# ESTIMATED ACCOUNTING OF
# PROCEEDS AND DISTRIBUTIONS

**Amergent Hospitality Group, Inc etal**
**Closing Proceeds Schedule - Bankruptcy Report**
**6/20/2025**

| | Estimate | LBB Franching | Noveno | Quinto | Cuarto | Platform | Progress | Sexto | Oswego | LBB Acq | LBB 1 Acq | I10 I20 Cusine | AMHG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Proceeds | 1,000,000.00 | 1,000,000.00 | 198,400.00 | 40,900.00 | 48,600.00 | 198,400.00 | 219,900.00 | 167,300.00 | 126,500.00 | | | | |
| Sales commission | (60,000.00) | (56,300.00) | (11,169.92) | (2,302.67) | (2,736.18) | (11,169.92) | (12,380.37) | (9,418.99) | (7,121.95) | | | | |
| Cure Amounts | (264,964.00) | (278,019.73) | (23,056.10) | (19,987.47) | (26,870.00) | (10,391.25) | (79,165.79) | (61,265.65) | (57,283.47) | | | | |
| Net from Sale | 675,036.00 | 665,680.27 | 164,173.98 | 18,609.86 | 18,993.82 | 176,838.83 | 128,353.84 | 96,615.36 | 62,094.58 | | | | |
| | | | | | | | | | | | | | |
| Close store accounts into LBB Franchising | | 88,905.11 | 22,042.69 | 14,448.37 | 5,030.56 | 8,456.66 | 9,985.61 | 14,721.58 | 14,219.64 | | | | |
| | | | | | | | | | | | | | |
| Operations paid: | | | | | | | | | | | | | |
| BCBS | | (15,102.57) | | | | | | | | (1,128.30) | | (3,698.65) | (10,275.62) |
| UST Fees | | (12,442.00) | (1,154.00) | (988.00) | (609.00) | (1,117.00) | (1,618.00) | (1,239.00) | (1,286.00) | (500.00) | (500.00) | (2,931.00) | (500.00) |
| Administration expenses | | (23,722.67) | (3,388.95) | (3,388.95) | (3,388.95) | (3,388.95) | (3,388.95) | (3,388.95) | (3,388.95) | | | | |
| Pre Sale Payroll-Spark Team | | (69,911.72) | (8,857.62) | (12,250.80) | (7,978.02) | (8,926.74) | (9,921.40) | (8,966.79) | (7,281.00) | (5,729.35) | | | |
| Post Sale Payroll-Spark Team | | (20,496.78) | - | - | - | - | - | - | - | - | | | (20,496.78) |
| - Reserve for Professional Fees | | (150,000.00) | (29,760.00) | (6,135.00) | (7,290.00) | (29,760.00) | (32,985.00) | (25,095.00) | (18,975.00) | | | | |
| Current Bank Balance (6-20-2025) | | 462,909.64 | 143,056.10 | 10,295.48 | 4,758.41 | 142,102.80 | 90,426.10 | 72,647.20 | 45,383.27 | (7,357.65) | (500.00) | (6,629.65) | (31,272.40) |
| Allocation of Corp overhead to LBB Stores(sales price) | | | (9,078.72) | (1,871.57) | (2,223.92) | (9,078.72) | (10,062.56) | (7,655.60) | (5,788.60) | 7,357.65 | 500.00 | 6,629.65 | 31,272.40 |
| Adjusted Current Bank Balance (6-20-2025) | | 462,909.64 | 133,977.37 | 8,423.91 | 2,534.49 | 133,024.07 | 80,363.54 | 64,991.60 | 39,594.67 | - | - | - | - |
| | | | | | | | | | | | | | |
| Estimated Secured Claims | | | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | 10,000.00 | | | | |
| Estimated Priority Claims | | | 15,608.32 | - | - | - | 6,248.89 | 6.22 | - | | | | |
| Estimated Unsecured Claims | | | 976,739.21 | 900,000.00 | 900,000.00 | 881,375.40 | 937,976.87 | 946,732.17 | 856,468.57 | | | | |
| Estimated Distribution to Unsecured Creditors (+/-10%) | | | 11% | - | - | 14% | 7% | 6% | 4% | | | | |

## EXHIBIT 2
## FORM OF BALLOT

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AMERGENT HOSPITALITY GROUP, INC.; | § | Case No. 24-42483-MXM-11 |
| et al.,[1] | § | (Jointly Administered) |
| | § | Chapter 11 |
| Debtors. | § | |

**BALLOT FOR VOTING TO ACCEPT OR REJECT
THE JOINT CHAPTER 11 PLAN OF LIQUIDATION OF AMERGENT HOSPITALITY GROUP, INC. AND ITS
DEBTOR AFFILIATES**

---

**Information Regarding Claim being Voted:**

Claimant Name:
Claim Amount of Record
Debtor:
Class:

---

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE DEBTORS' COUNSEL BY OCTOBER ___, 2025 AT 11:59 P.M., PREVAILING CENTRAL TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* [Docket No. 248] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* [Docket No. 249] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") has approved the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code, by entry of an order on [●], 2025 [Docket No. [●]] (the "Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.

You are receiving this ballot (this "Ballot") because you are a holder of a Claim as of September ___, 2025 (the "Voting Record Date"). Accordingly, you have a right to execute this Ballot and to vote to accept or reject the Plan.

YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHOM YOU HAVE CLAIMS.

Your rights are described in the Disclosure Statement, which is included in the package (the "Solicitation Package") you are receiving with this Ballot (as well as the Plan, the Disclosure Statement Order, and certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them (a) for a fee via PACER at http://www.txnb.uscourts.gov; or (b) at no charge from Stretto (the "Solicitation Agent") by: (i) accessing the Solicitation Agent's website at cases.stretto.com/AHGI; (ii) writing to AHGI, Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (iii) emailing TeamAmergent@stretto.com; or (iv) calling the Solicitation Agent at 866-209-9801 (toll free).

---

[1] The jointly administered debtors are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494).

*Page 1*

**PLEASE TAKE FURTHER NOTICE THAT** if you need to obtain a copy of the Disclosure Statement Order, the Disclosure Statement, the Plan, any Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at cases.stretto.com/AHGI; (b) write to AHGI, Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (c) call 866-209-9801 (toll free) and request to speak with a member of the Solicitation Group; or (d) email TeamAmergent@stretto.com and reference "AHGI" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txnb.uscourts.gov.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe you have received the wrong ballot, please contact the Solicitation Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in the Class under the Plan specified above (the "Class").

You may vote to accept or reject the Plan. You must check the applicable box in the right-hand column below to "accept" or "reject" the Plan for the Class in order to have your vote counted.

Please note that you are voting all of your Claims in the Class either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote in the Class may not be counted. If you indicate that you both accept and reject the Plan for your Claims by checking both boxes below, your vote may not be counted.

The Plan, though proposed jointly, constitutes a separate Plan proposed by each Debtor. Accordingly, your vote cast below will be applied in the same manner and in the same amount against each applicable Debtor.

The Holder votes to (please check one and only one box):

| Voting Class | Class Description | Amount | Vote to Accept or Reject the Plan |
|---|---|---|---|
| _____ | _____ | $_____ | ACCEPT (VOTE FOR) THE PLAN <br><br> REJECT (VOTE AGAINST) THE PLAN |

Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated above.

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of the Claim described above.

| |
|---|
| Name of Holder of Claim: [insert] |
| Signature: |
| Name of Signatory: |
| Title: |
| Address: |
| Telephone Number: |

*Page 2*

| Email: |
| --- |
| Date Completed: |

**IF THE DEBTORS' COUNSEL DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE (AND IF THE VOTING DEADLINE IS NOT EXTENDED), YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

**Complete, sign, and date this Ballot and return it (with an original signature) promptly via first class mail (or in the enclosed reply envelope provided), overnight courier, or hand delivery to:**

**AHGI BALLOT PROCESSING**

C/O Richard G. Grant

CM LAW PLLC

National Litigation Support Center

13101 Preston Road, Suite 110-1510

Dallas, Texas 75240

214-210-2929

rgrant@cmlaw.com

*Page 4*

## **EXHIBIT 3**
## **FORM OF COVER LETTER**

_____, 2025

**RE:**    ***In re Amergent Hospitality Group, Inc. et al.*, Chapter 11 Case No. 24-42483 (MXM) (Jointly Administered)**

TO ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN:

Amergent Hospitality Group, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas (the "Court") on July 18, 2024.

You have received this letter and the enclosed materials because you are entitled to vote on the *Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* [Docket No. 248] (as modified, amended, or supplemented from time to time, the "Plan"). On **[●], 2025**, the Court entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (a) approving the adequacy of the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* [Docket No. 249] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"); (b) approving the solicitation procedures (the "Solicitation Procedures") with respect to the Plan; (c) approving the forms of ballots and notices in connection therewith; (d) scheduling certain dates with respect thereto; and (e) granting related relief.

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

In addition to this cover letter, the enclosed materials comprise your Solicitation Package, and were approved by the Court for distribution to holders of Claims and Interests in connection with the solicitation of votes to accept the Plan. The Solicitation Package consists of the following:

- the Disclosure Statement Order (excluding exhibits);

- the approved Disclosure Statement (annexed as **Exhibit 1** to the Disclosure Statement Order) and the exhibits thereto, including the Plan;

- the applicable form of Ballot;

- the *Notice of Hearing to Consider Confirmation of the Chapter 11 Plan Filed by the Debtors and Related Voting and Objection Procedures* (the "Confirmation Hearing Notice");

- a pre-addressed, postage pre-paid reply envelope; and

- any additional documents that the Court has ordered to be made available.

> **PLEASE TAKE FURTHER NOTICE THAT** if you need to obtain a copy of the Disclosure Statement Order, the Disclosure Statement, the Plan, any Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at cases.stretto.com/AHGI; (b) write to AHGI, Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (c) call 866-209-9801 (toll free) and request to speak with a member of the Solicitation Group; or (d) email TeamAmergent@stretto.com and reference "AHGI" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txnb.uscourts.gov.

---

1 The jointly administered debtors are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494). Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

Amergent Hospitality Group, Inc. (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept the Plan. The Debtors believe that the acceptance of the Plan is in the best interests of their Estates, holders of Claims and Interests, and all other parties in interest. Moreover, the Debtors believe that any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) on account of Claims or Interests in the Chapter 11 Cases.

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN. BALLOTS SHOULD BE SUBMITTED IN ACCORDANCE WITH THE INSTRUCTIONS INDICATED ON YOUR BALLOT.**

**THE VOTING DEADLINE IS AT 11:59 P.M., PREVAILING CENTRAL TIME ON OCTOBER \_\_\_, 2025.**

The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions, however, please feel free to contact Stretto, the solicitation agent retained by the Debtors in the Chapter 11 Cases (the "Solicitation Agent"), by: (a) accessing the Solicitation Agent's website at cases.stretto.com/AHGI; (b) writing to AHGI, Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (c) emailing TeamAHGI@stretto.com and referencing "AHGI" in the subject line; or (d) calling the Solicitation Agent at 866-209-9801 (toll free). You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txnb.uscourts.gov.

Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, the solicitation materials, but may *not* advise you as to whether you should vote to accept or reject the Plan or provide any legal advice.

> Sincerely,
>
> Amergent Hospitality Group, Inc.
> on its own behalf and for each of the Debtors

*Page 2*

**EXHIBIT 4**
**FORM OF NON-VOTING STATUS NOTICE**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AMERGENT HOSPITALITY GROUP, INC.; | § | Case No. 24-42483-MXM-11 |
| et al.,[1] | § | (Jointly Administered) |
| | § | Chapter 11 |
| Debtors. | § | |

**NOTICE OF NON-VOTING STATUS TO HOLDERS OF CLAIMS OR INTEREST
CONCLUSIVELY PRESUMED TO REJECT THE PLAN**

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the Northern District of Texas (the "Court") entered an order [Docket No.[●]] (the "Disclosure Statement Order"): (a) approving the adequacy of the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* (the "Disclosure Statement"), (b) approving the solicitation procedures (the "Solicitation Procedures") with respect to confirmation of the *Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* (the "Plan"),[2] (c) approving the forms of ballots and notices in connection therewith, (d) scheduling certain dates with respect thereto, and (e) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, ***you are not entitled to vote on the Plan***. Specifically, to the extent the Class under the Plan in which your Claim or Interest is classified does not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests, such Class is deemed to have rejected the Plan. Accordingly, collection of Ballot for members of such Class of Claims or Interests is not necessary.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and related voting and objection procedures (the "Confirmation Hearing") will commence on **October 21, 2025 at [●] a/p.m.** prevailing Central Time, before the Honorable Mark X. Mullin, in the United States Bankruptcy Court for the Northern District of Texas, located at Room 128, United States Courthouse, 501 West 10th Street, Fort Worth, Texas 76102.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan is **October ___, 2025 at 5:00 p.m.**, prevailing Central Time (the "Confirmation Objection Deadline"). Any objection to the Plan ***must***: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) on or before the Confirmation Objection Deadline.

---

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement Order, the Disclosure Statement, the Plan, any Plan Supplement, or related documents, you may: (a) access the Debtors' restructuring website at cases.stretto.com/AHGI; (b) write to AHGI, Ballot Processing Center, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (c) call 866-209-9801 (toll free) and request to speak with a member of the Solicitation Group; or (d) email TeamAmergent@stretto.com and reference "AHGI" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txnb.uscourts.gov.

---

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT COUNSEL FOR THE DEBTOR (INFORMATION BELOW).**

---

1 The jointly administered debtors are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (24-42494). Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable

Dated: September 2, 2025

CM LAW, PLLC
Richard G. Grant
Tex. Bar No. 08302650
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR
DEBTORS IN POSSESSION

**EXHIBIT 5**
**FORM OF CONFIRMATION HEARING NOTICE**

UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AMERGENT HOSPITALITY GROUP, INC.; | § | Case No. 24-42483-MXM-11 |
| et al.,[1] | § | (Jointly Administered) |
| | § | Chapter 11 |
| | § | |
| Debtors. | § | |

**NOTICE OF HEARING TO CONSIDER CONFIRMATION OF THE CHAPTER 11 PLAN FILED BYTHE DEBTORS AND RELATED VOTING AND OBJECTION DEADLINES**

---

**PLEASE TAKE NOTICE THAT** on **[●], 2025**, the United States Bankruptcy Court for the Northern District of Texas (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order") that, among other things: (a) approved the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* [Docket No. 249] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125(a) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"); and (b) authorized the above-captioned debtors and debtors in possession (the "Debtors") to solicit acceptances for the *Joint Chapter 11 Plan of Liquidation of Amergent Hospitality Group, Inc. and Its Debtor Affiliates* [Docket No. 248] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan, and related voting and objection procedures (the "Confirmation Hearing") will commence on **October 21, 2025 at 1:30 p.m.** prevailing Central Time, before the Honorable Mark X. Mullin, in the United States Bankruptcy Court for the Northern District of Texas, located at _____.

> **PLEASE BE ADVISED: THE CONFIRMATION HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS WITHOUT FURTHER NOTICE OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.**

**Voting Record Date**. The voting record date is **September ___, 2025**, which is the date for determining which holders of Claims and Interests are entitled to vote on the Plan.

**Voting Deadline**. The deadline for voting on the Plan is **October ___, 2025, at 11:59 p.m.**, prevailing Central Time (the "Voting Deadline"). If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan you *must*: (a) follow the instructions carefully; (b) complete *all* of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is *actually received* by the Debtors' counsel, CM Law on or before the Voting Deadline. *A failure to follow such instructions may disqualify your vote*.

**Confirmation Objection Deadline**. The deadline for filing objections to the Plan, including with regard to the treatment of Executory Contracts and Unexpired Leases thereunder, is **October ___, 2025, at 5:00 p.m.**, prevailing Central Time (the "Confirmation Objection Deadline"). Any objection to the relief sought at the Confirmation Hearing *must*: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules for the Northern District of Texas; (c) state, with particularity, the name and address of the objecting party, the basis and nature of any objection to the Plan, and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the **Confirmation Objection Deadline**.

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or **IF YOU WOULD LIKE TO OBTAIN A COPY of the Disclosure Statement Order, Disclosure Statement, the Plan, any Plan Supplement, or related documents, you may**: (a) access the Debtors' restructuring website at cases.stretto.com/AHGI; (b) write to AHGI, Ballot Processing Center c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (c) call 866-209-9801 (toll free) and request to speak with a member of the Solicitation Group; or (d) email TeamAmergent@stretto.com and reference "AHGI" in the subject line. You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: http://www.txnb.uscourts.gov. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may *not* advise you as to whether you should vote to accept or reject the Plan or provide legal advice.

---

[1] The jointly administered debtors are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC ( 24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494).

**BINDING NATURE OF THE PLAN**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

Dated: September 2, 2025

CM LAW, PLLC
Richard G. Grant
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR
DEBTORS IN POSSESSION