Richard G. Grant
Tex. Bar No. 08302650
CM LAW PLLC
National Litigation Support Center
13101 Preston Road, Suite 110-1510
Dallas, Texas 75240
Telephone: 214-210-2929
Email: rgrant@cm.law

ATTORNEYS FOR DEBTORS

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| AMERGENT HOSPITALITY GROUP, INC.; | § | Case No. 24-42483-MXM-11 |
| et al.,[1] | § | (Jointly Administered) |
| | § | Chapter 11 |
| Debtors. | § | |

## FIRST AMENDED
## JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
## AMERGENT HOSPITALITY GROUP, INC.
## AND ITS JOINTLY ADMINISTERED DEBTORS

### September 2, 2025

---

[1] The jointly administered debtors ("Proponents") are Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494).

# TABLE OF CONTENTS

Article I
TREATMENT OF  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS ......... 4
    1.01    General Administrative Expense Claims. ................................................................. 4
    1.02    Professional Fee Claims ......................................................................................... 4
    1.03    Priority Tax Claims ................................................................................................ 4

Article II
CLASSIFICATION AND TREATMENT  OF CLASSIFIED CLAIMS AND INTERESTS ......... 5
    2.01    Summary of Classification and Treatment of Classified Claims and Interests. ........ 5
    2.02    Treatment of Claims against and Interests in the Debtors. ....................................... 6
    2.03    Treatment of Holders of Claims and Interests of AHGI ........................................... 9

Article III
MEANS FOR IMPLEMENTATION OF THE PLAN ...................................................................... 9
    3.01    Plan Funding. ......................................................................................................... 9
    3.02    Establishment of the Plan Trust. ............................................................................ 9
    3.03    Distribution and Escrow Accounts. ....................................................................... 11
    3.04    Distributions to Creditors ....................................................................................... 11
    3.05    Role of the Plan Trustee ......................................................................................... 12

Article IV
TREATMENT OF EXECUTORY CONTRACTS,  UNEXPIRED LEASES, AND INSURANCE
POLICIES ...................................................................................................................................... 17
    4.01    Deemed Rejection of Executory Contracts and Unexpired Leases. ......................... 17
    4.02    Rejection Claims ................................................................................................... 17
    4.03    Assumed Contracts and Unexpired Leases ............................................................ 17
    4.04    Insurance Policies and Agreements. ....................................................................... 18
    4.05    Postpetition Contracts and Leases. ........................................................................ 18
    4.06    Modifications, Amendments, Supplements, Restatements, or Other Agreements. . 18

Article V
PROVISIONS GOVERNING DISTRIBUTIONS ......................................................................... 18
    5.01    Distributions Made by the Plan Trustee .................................................................. 18

Article VI
PROCEDURES FOR RESOLVING  CONTINGENT, UNLIQUIDATED, AND DISPUTED
CLAIMS ........................................................................................................................................ 21

Article VII
EFFECT OF PLAN CONFIRMATION .......................................................................................... 22
    7.01    Binding Effect. ...................................................................................................... 22
    7.02    Exculpation. .......................................................................................................... 23
    7.03    Injunctions ............................................................................................................. 23

Article VIII

MISCELLANEOUS PROVISIONS......................................................................................24

    8.01    Effectuating Documents and Further Transactions..................................................24

    8.02    Exemption from Transfer Taxes. ............................................................................24

    8.03    Payment of Statutory Fees. ...................................................................................25

    8.04    Amendment or Modification of this Plan. ..............................................................25

    8.05    Closing of Chapter 11 Cases; Caption Change.......................................................25

    8.06    Successors and Assigns..........................................................................................25

    8.07    Non-Consummation................................................................................................25

    8.08    Notice to Debtors, Consolidated Debtor, or Plan Trustee. ......................................26

    8.09    Governing Law. ....................................................................................................26

    8.10    Exhibits. ...............................................................................................................26

    8.11    Filing of Additional Documents. ...........................................................................27

    8.12    Plan Documents. ...................................................................................................27

    8.13    Reservation of Rights.............................................................................................27

Article IX

DEFINED TERMS AND RULES OF INTERPRETATION.......................................................27

    9.01    Defined Terms. .....................................................................................................27

    9.02    Rules of Interpretation. .........................................................................................33

    9.03    Computation of Time. ...........................................................................................34

    9.04    Exhibits and Plan Supplement. ..............................................................................34

    9.05    Deemed Acts.........................................................................................................34

# INTRODUCTION

Each of the Debtors, as Proponents, jointly proposes the following plan of liquidation for the Debtors' liquidation under chapter 11 of the Bankruptcy Code and for the resolution of outstanding Claims and Interests. Capitalized terms used but not defined in this paragraph have the meanings assigned to them in Article IX. The Plan Proponents are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code. Reference is made to the accompanying Disclosure Statement for a summary and analysis of this Plan and for a discussion of the Debtors' history, businesses, properties, operations, risk factors, and related matters.

# ARTICLE I
# TREATMENT OF
# ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article II.

## 1.01    General Administrative Expense Claims.

Subject to the terms of the Confirmation Order, each Holder of an Allowed Administrative Expense Claim, except for Priority Tax Claims and Professional Fee Claims against the Debtors shall receive cash equal to the Allowed amount of its Claim on the later of (a) the Initial Distribution Date, (b) the date such Administrative Expense Claim is Allowed, and (c) the date such Allowed Administrative Expense Claim becomes due and payable, or as soon thereafter as is practicable.

## 1.02    Professional Fee Claims.

All final requests for payment of Professional Fee Claims must be filed no later than 30 days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court. Allowed Professional Fee Claims shall be paid in cash in full.

Objections to any Professional Fee Claim must be filed and served on the Plan Trustee and the applicable Professional within 21 days after the filing of the final fee application with respect to the Professional Fee Claim.

## 1.03    Priority Tax Claims.

Each Holder of an Allowed Priority Tax Claim against the Debtors shall receive cash equal to the amount of such Allowed Claim on the later of (a) the Initial Distribution Date, (b) the date such Priority Tax Claim is Allowed, and (c) the date such Allowed Priority Tax Claim becomes due and payable, or as soon thereafter as is practicable.

# ARTICLE II
## CLASSIFICATION AND TREATMENT
## OF CLASSIFIED CLAIMS AND INTERESTS

**2.01** **Summary of Classification and Treatment of Classified Claims and Interests.**

**(a) General**

Pursuant to sections 1122 and 1123 of the Bankruptcy Code, Claims and Interests are classified for all purposes, including, without limitation, voting, Confirmation, and Distributions pursuant to this Plan, as set forth herein. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**(b) Joint Administration and Partial Consolidation of the Debtors.**

This Plan provides for the joint administration of the Debtors, but not generally for the substantive consolidation of the Debtors' estates; provided, however, the Debtors' estates shall be substantively consolidated for payment of Allowed Administrative Expense Claims. Each Debtor shall contribute to payment of Allowed Administrative Expense Claims based upon its the percentage of cash assets held by each such Debtor of total cash available to the Debtors.

**(c) Elimination of Empty Classes**

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**(d) Identification of Classes of Claims Against and Interests in the Debtors.**

The Classes of Claims against each Debtor are separate for each Debtor. The following chart assigns a number to each Class for purposes of identifying each separate Class for each specific Debtor:

| Class | Class Description |
| --- | --- |
| Class 1 | Secured Claims |
| Class 2 | Priority Claims |
| Class 3 | General Unsecured Claims |
| Class 4 | Intercompany Claims |
| Class 5 | Subordinated Claims |
| Class 6 | Intercompany Interests |
| Class 7 | Existing Equity Interests in AHGI |

For each Debtor the Classes identified above shall be designated with the respective Debtor's Identifier. The Identifiers for the Debtors are as follows:

| Debtor | Case No. | Identifier |
|---|---|---|
| Amergent Hospitality Group, Inc. | 24-42483 | AHGI |
| I10/I20 Cuisine LLC | 24-42482 | BCK |
| LBB Acquisition, LLC | 24-42484 | LBB Acquisition |
| LBB Acquisition I, LLC | 24-42485 | LBBA1 |
| LBB Platform LLC | 24-42487 | LLB Platform |
| LBB Lake Oswego LLC | 24-42489 | LBB Lake Oswego |
| LBB Progress Ridge LLC | 24-42490 | LBB Progress Ridge |
| Noveno LLC | 24-42491 | LBB Alberta |
| Quinto LLC | 24-42492 | LBB Division |
| Sexto LLC | 24-42493 | LBB Waterfront |
| Cuarto LLC | 24-42494 | LBB Eugene |

For Example, Class 1 [AHGI] refers to Class 1 in the Amergent Hospitality Group, Inc. case.

**2.02    Treatment of Claims against and Interests in the Debtors.**

Subject to the provisions of 2.03 below and except as provided with respect to AHGI in Section 2.03 hereof, each Holder shall receive under this Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent less favorable treatment is agreed to by the Plan Trustee and such Holder. Unless otherwise indicated, each such Holder shall receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

**(a)    Class 1: Secured Claims.**

| Classification | Class 1 consists of all Secured Claims |
|---|---|
| Treatment | Each Holder of Allowed Secured Claims against the Applicable Debtor shall receive, at the discretion of the Plan Trustee: the return of the property securing such Holder's Secured Claim; payment in full in cash equal to the Allowed amount of such Claim, with payment to be made on the later of (A) the Initial Distribution Date, and (B) five (5) Business Days following the date the Claim becomes an Allowed Claim; or treatment in any other manner that renders the Claim unimpaired under the Bankruptcy Code. |
| Voting | Allowed Claims in Class 1 are Unimpaired. Each Holder of an Allowed Claim in Class 1 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan. |

**(b) Class 2: Other Priority Claims.**

| | |
|---|---|
| Classification | Class 2 consists of all Other Priority Claims |
| Treatment | Each Holder of an Allowed Other Priority Claim against the Applicable Debtor shall receive cash equal to a Pro Rata Distribution of the Net Available Proceeds under this Plan until such time as the Allowed amount of such Claim is paid in full on the later of (i) the Initial Distribution Date, (ii) the date such Other Priority Claim is Allowed, and (iii) the date such Allowed Other Priority Claim becomes due and payable, or as soon thereafter as is practicable. |
| Voting | Allowed Claims in Class 2 are Unimpaired. Each Holder of an Allowed Claim in Class 2 shall be conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan. |

**(c) Class 3: General Unsecured Claims.**

| | |
|---|---|
| Classification | Class 3 consists of all Unsecured Claims not otherwise classified |
| Treatment | Each Allowed General Unsecured Claim shall receive on the Initial Distribution Date, or as soon thereafter as is practicable, and on subsequent Distribution Dates as specified in the Trust Agreement, a Pro Rata Distribution of the Net Available Proceeds under this Plan until such time as the Allowed amount of such Claim is paid in full. |
| Voting | Claims in Class 3 are Impaired. Therefore, each Holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject this Plan. |

**(d) Class 4: Intercompany Claims.**

| | |
|---|---|
| Classification | Class 4 consists of all Intercompany Claims |
| Treatment | Intercompany Claims shall be released without any Distribution on account of such Claims. |
| Voting | Allowed Claims in Class 4 are Impaired. Each Holder of an Allowed Claim in Class 4 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan. |

**(e) Class 5: Subordinated Claims**

| | |
|---|---|
| Classification | Class 5 consists of all Subordinated Claims |
| Treatment | Each Allowed Subordinated Claim shall receive nothing under the Plan. |
| Voting | Allowed Claims in Class 5 are Impaired, and not receiving any Distribution under this Plan, in which case the Holders of Allowed Class 5 Claims are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Allowed Class 5 Interest will not be entitled to vote to accept this Plan. |

**(f) Class 6: Intercompany Interests**

| | |
|---|---|
| Classification | Class 6 consists of all Intercompany Interests |
| Treatment | In the sole discretion of the Plan Trustee, Intercompany Interests shall either be (a) reinstated for administrative convenience; or (b) released without any distribution on account of such Interests. |
| Voting | Allowed Claims in Class 6 are either Unimpaired, in which case the Holders of Allowed Class 6 Interests are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and not receiving any Distribution under this Plan, in which case the Holders of Allowed Class 6 Interests are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Allowed Class 6 Interest will not be entitled to vote to accept this Plan. |

**(g) Class 7: Existing Equity Interests.**

| | |
|---|---|
| Classification | Class 6 consists of all Existing Equity Interests in AHGI |
| Treatment | On the Effective Date, Existing Equity Interests shall be extinguished and the Holders of such Interests shall not receive or retain any Distribution, property, or other value on account of such Interests. |
| Voting | Interests in Class 7 are Impaired. Each Holder of an Allowed Interest in Class 7 shall be conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, shall not be entitled to vote to accept or reject this Plan |

**(h) Reservation of Rights.**

The Plan Proponents reserve the right to amend, modify, or supplement this Plan for any reason, in accordance with the terms of this Plan, the Bankruptcy Code and the Bankruptcy Rules.

**2.03    Treatment of Holders of Claims and Interests of AHGI.**

Notwithstanding the treatments set forth in 2.02 above:

(a)    Class 1 [AHGI] Secured Claims.  With respect to Class 1 [AHGI], each Allowed General Unsecured Claim in Class 1 [AHGI] shall receive on the Initial Distribution Date, or as soon thereafter as is practicable, and on subsequent Distribution Dates as specified in the Trust Agreement, one (1) common share of New Common Stock of AHGI, as Reorganized Debtor for each full $1.00 in Allowed Secured Claim.  Claims in Class 1 [AHGI] are Impaired.  Therefore, each Holder of an Allowed Claim in Class 3 shall be entitled to vote to accept or reject this Plan.

(b)    Classes 2- 7 [AHGI] Unsecured Claims and Equity Interests.  With respect to Class 2 [AHGI], Class 3 [AHGI], Class 4 [AHGI], Class 5 [AHGI], Class 6 [AHGI] and Class 7 [AHGI] Equity Interests (the "Nonparticipating AHGI Classes"), each Claim in these Nonparticipating AHGI Classes shall receive nothing under the Plan. Allowed Claims and Interests in these Nonparticipating AHGI Classes are Impaired, and not receiving any Distribution under this Plan.  The Holders of Allowed Claims and Interests in the Nonparticipating AHGI Classes are conclusively deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each Holder of an Allowed Claim or Interests in these AHGI Classes will not be entitled to vote to accept this Plan.


### ARTICLE III
### MEANS FOR IMPLEMENTATION OF THE PLAN

**3.01    Reorganization of AHGI**

The assets of AHGI shall vest in AHGI (the "Reorganized Debtor") on the Effective Date; provided, however, the interests of the AHGI in the Subsidiary Debtors shall not be retained by AHGI and shall be included in the Trust Assets.  AHGI shall make all distributions of equity to Allowed Class 1 claims as described in Section 2.03 hereof.

**3.02    Plan Funding.**

This Plan shall be funded from the Trust Assets [of the Subsidiary Debtors] transferred to the Plan Trust, including any proceeds therefrom.

**3.03    Establishment of the Plan Trust.**

On or before the Effective Date, the Subsidiary Debtors and the Plan Trustee shall execute the Trust Agreement. On the Effective Date, (a) the Plan Trust shall be created, and (b) the Trust Assets shall be transferred to the Plan Trust.

(a) **Appointment of the Plan Trustee.**

Subject to the terms of this Plan, as of the Effective Date, the Plan Trustee shall be appointed under section 1123(b)(3)(B) of the Bankruptcy Code, and shall serve in such capacity, and shall have comparable authority as a bankruptcy trustee and the exclusive representative of the Estates or any corresponding provision of federal or state laws and shall succeed to all of the Subsidiary Debtors' and the Estates' rights. The powers, rights, and responsibilities of the Plan Trustee, all of which shall arise upon the occurrence of the Effective Date, shall be specified in the Trust Agreement.

(b) **Appointment of Oversight Committee**

On the Effective Date, an oversight committee (the "Oversight Committee") shall be formed from representatives of the three (3) creditors holding the largest nonsubordinated Allowed Unsecured Claims entitled to distributions under the Plan willing to serve in such capacity. The Oversight Committee shall be authorized to be consulted by the Plan Trustee on matters as may be determined by the Plan Trustee or for which approval is required under the terms of this Plan. Approval of the Oversight Committee of actions taken by the Plan Trustee shall be deemed to be approval of the Allowed General Unsecured Claims to such actions.

(c) **Liquidation of Plan Trust Assets**

Subject to the terms of this Plan, the Plan Trustee, in accordance with the Trust Agreement, this Plan, and the Confirmation Order, shall liquidate the Trust Assets and distribute the proceeds thereof in accordance with this Plan. The Plan Trust shall be established for the sole purpose of liquidating and distributing the Trust Assets, in accordance with Treasury Regulation section 301.7701- 4(d), with no objective to continue or engage in the conduct of a trade or business.

(d) **Corporate Governance**

Subject to the terms of this Plan, all corporate-governance powers with respect to the Subsidiary Debtors shall be transferred as of the Effective Date to the Plan Trustee in accordance with the Trust Agreement. After the Effective Date, the Plan Trustee may from time to time dissolve the Subsidiary Debtors as appropriate, pursuant to the terms of the Trust Agreement.

(e) **Beneficiaries of the Plan Trust.**

The Plan Trust Beneficiaries shall be the beneficiaries of the Plan Trust. The Plan Trust Beneficiaries shall be bound by the Trust Agreement. The interests of the Plan Trust Beneficiaries in the Plan Trust shall be uncertificated and nontransferable except upon death of the interest Holder or by operation of law.

(f) **Vesting and Transfer of Trust Assets to the Plan Trust.**

Pursuant to section 1141(b) of the Bankruptcy Code, the Trust Assets shall vest in the Plan Trust as of the Effective Date, free and clear of all Liens, Claims, and interests, except as otherwise specifically provided in this Plan or in the Confirmation Order; provided, however, that the Plan Trustee may abandon or otherwise not accept any non-Cash Trust Assets to any party asserting an interest in such assets that the

Plan Trustee believes, in good faith, have no value to the Plan Trust. Any non-Cash Trust Assets that the Plan Trustee so abandons or otherwise does not accept shall not be property of the Plan Trust.

### 3.04    Distribution and Escrow Accounts.

#### (a)  Distribution Account

On the Effective Date, the Plan Trustee shall establish the Distribution Account to be funded from time to time, as provided in this Plan, with the then Net Available Proceeds generated from the collection, liquidation, disposition and/or recovery of Trust Assets, for the purpose of making Distributions to the Holders of Allowed Claims.  Notwithstanding the commingling of funds in the Distribution Account, the Plan Trustee shall separately account for funds of each estate.

#### (b)  Professional Fees Escrow Account.

On the Effective Date, the Plan Trustee shall establish the Professional Fees Escrow Account in an amount equal to all asserted Professional Fee Claims outstanding as of the Effective Date (including, for the avoidance of doubt, any reasonable estimates for unbilled amounts payable from the Debtors' estates). Amounts held in the Professional Fees Escrow Account shall not constitute property of the Plan Trust. The Professional Fees Escrow Account may be an interest-bearing account. In the event there is a remaining balance in the Professional Fees Escrow Account following payment to all Holders of Allowed Professional Fee Claims under this Plan, any such amounts shall be turned over to the Plan Trust and shall be included in the Net Available Proceeds for purposes of Distribution in accordance with the terms of this Plan.

### 3.05    Distributions to Creditors.

#### (a)  Initial Distributions to Creditors.

On the Initial Distribution Date, or as soon thereafter as is practicable, the Plan Trustee shall distribute to each Creditor that holds an Allowed General Unsecured Claim against a Subsidiary Debtor for application against such Claim an amount equal to its Pro Rata share of the funds on deposit in the Distribution Account attributable to that Subsidiary Debtor.

#### (b)  Subsequent Distributions.

Subsequent Distributions of Net Available Proceeds shall be made by the Plan Trustee in accordance with the terms of this Plan and the Trust Agreement. Reserves for Disputed Administrative and Priority Claims shall be released at such time as the Claim has been resolved through agreement of the Holder of the Claim and the Plan Trustee, or entry of a Final Order resolving the Claim, and (i) that portion of the released funds shall be paid to the Holder of the Claim in satisfaction of the Allowed Claim, and (ii) the balance of the released funds, if any, shall be included in the Net Available Proceeds for purposes of subsequent Distributions under this Plan. The Plan Trustee shall release Reserves established to pay costs and expenses anticipated to be incurred in administering the Plan Trust to the extent the amount reserved exceeds the amount reasonably determined by the Plan Trustee to be necessary for such purpose, and the released funds shall be included in the Net Available Proceeds for purposes of subsequent Distributions under this Plan.

**(c) Plan Trust Expenses.**

Subject to the provisions of the Trust Agreement, all costs, expenses and obligations incurred by the Plan Trustee in administering this Plan, the Plan Trust, or in any manner connected, incidental, or related thereto, or in effecting Distributions from the Plan Trust, shall be a charge against the Trust Assets that remain after payment in Cash and in full of all Allowed Administrative Expense Claims (including Professional Fee Claims), Plan Trustee Fee Claims, Priority Tax Claims, Other Priority Claims, and Secured Claims. Such expenses shall be paid in accordance with the Trust Agreement.

**3.06   Role of the Plan Trustee.**

**(a) Exclusive Trustee.**

The Plan Trustee shall be the exclusive trustee of the Plan Trust and the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3). The powers, rights, and responsibilities of the Plan Trustee shall be specified in the Trust Agreement and shall include the authority and responsibility to: (i) receive, liquidate, manage, invest, supervise, and protect the Trust Assets; (ii) pay taxes or other obligations incurred by the Plan Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and consultants to advise and assist in the administration, prosecution, and distribution of Trust Assets; (iv) calculate and effectuate distributions of Trust Assets; (v) investigate, prosecute, compromise, and settle, in accordance with the specific terms of this Plan and the Trust Agreement, Reserved Causes of Action vested in the Plan Trust; (vi) resolve issues involving Claims and Interests in accordance with this Plan; (vii) undertake all administrative functions of this Plan, including the payment of fees payable to the U.S. Trustee and the ultimate closing of the Subsidiary Debtors' Chapter 11 Cases. Pursuant to the terms of this Plan, the Plan Trustee is the successor to the Subsidiary Debtors and their Estates. The Plan Trustee may not retain professionals or incur debt in excess of $10,000 absent approval of the Oversight Committee.

**(b) Possession of Books and Records.**

On the Effective Date, the Plan Trust shall: (i) take possession of all books, records, and files of the Subsidiary Debtors and their respective Estates; and (ii) provide for the retention and storage of such books, records, and files until such time as the Plan Trust determines, in accordance with the Trust Agreement, that retention of same is no longer necessary or required.

**(c) Investment of Cash.**

The Plan Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by section 345 of the Bankruptcy Code or in other prudent investments; provided, however, that such investments are permitted to be made by a liquidation trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

**(d) Right to Object.**

The Plan Trust shall have the right to object to Claims and Interests.

### (e) Quarterly Reports.

In no event later than 30 days after the end of the first full month following the Effective Date and on a quarterly basis thereafter until all Cash in the Plan Trust has been distributed in accordance with this Plan, the Plan Trustee shall file with the Bankruptcy Court a report setting forth the amounts, recipients, and dates of all distributions made by the Plan Trustee under this Plan through each applicable reporting period.

### (f) Tax Returns.

The Plan Trustee shall file tax returns for the Plan Trust as a grantor trust pursuant to Treasury Regulation section 1.671-4(a) and in accordance with this Plan. The Plan Trust also shall annually (for tax years in which distributions from the Plan Trust are made) send to each beneficiary a separate statement setting forth the beneficiary's share of items of income, gain, loss, deduction, or credit and all such holders shall report such items on their federal income tax returns; provided, however, that no such statement need be sent to any Class that is not expected to receive any distribution from the Plan Trust. The Plan Trust's taxable income, gain, loss, deduction, or credit will be allocated to the Plan Trust Beneficiaries in accordance with their relative beneficial interests in the Plan Trust. As soon as possible after the Effective Date, the Plan Trust shall make a good faith valuation of assets of the Plan Trust, and such valuation shall be used consistently by all parties for all federal income tax purposes. The Plan Trust also shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Plan Trust that are required by any Governmental Unit for taxing purposes. The Plan Trust may request an expedited determination of taxes of the Subsidiary Debtors or of the Plan Trust under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Subsidiary Debtors and the Plan Trust for all taxable periods through the dissolution of the Plan Trust. The Plan Trust shall be responsible for filing all federal, state, and local tax returns for the Subsidiary Debtors and the Plan Trust. The Plan Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions made by the Plan Trust shall be subject to any such withholding and reporting requirements.

### (g) Allowed Tax Obligations.

The Plan Trust shall be responsible for payment of all taxes imposed on the Plan Trust.

### (h) Preservation of Right to Conduct Investigations.

The preservation for the Plan Trust of any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 is necessary and relevant to the liquidation and administration of the Trust Assets. Accordingly, any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Subsidiary Debtors or the Committees prior to the Effective Date shall vest with the Plan Trust and shall continue until dissolution of the Plan Trust.

### (i) Prosecution and Resolution of Causes of Action.

From and after the Effective Date, prosecution and settlement of all Reserved Causes of Action transferred to the Plan Trust shall be the sole responsibility of the Plan Trustee pursuant to this Plan and the Confirmation Order. From and after the Effective Date, the Plan Trust shall have exclusive rights, powers, and interests of the Subsidiary Debtors' Estates to pursue, settle, or abandon such Reserved Causes of Action as the sole representative of the Subsidiary Debtors' Estates pursuant to section

1123(b)(3) of the Bankruptcy Code. Proceeds recovered from all Reserved Causes of Action will be deposited into the Plan Trust and will be distributed by the Plan Trustee to beneficiaries in accordance with the provisions of this Plan and Trust Agreement. All Causes of Action that are not expressly released or waived under this Plan are Reserved Causes of Action and preserved and vest in the Plan Trust in accordance with this Plan. No Person may rely on the absence of a specific reference in this Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Subsidiary Debtors or Plan Trustee will not pursue any and all Reserved Causes of Action against such Person or Entity. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of confirmation or substantial consummation of this Plan. No Causes of Action that have been otherwise released or exculpated shall be transferred to the Plan Trust; the Plan Trustee shall not have standing to pursue such released or exculpated claims or Causes of Action; and all such claims and Causes of Action shall be waived, released, and discharged pursuant to this Plan.

**(j) Federal Income Tax Treatment of the Plan Trust for the Trust Assets.**

For federal income tax purposes, it is intended that the Plan Trust be classified as a liquidation trust under Treasury Regulation section 301.7701-4 and that such trust be owned by its beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Plan Trust Beneficiaries be treated as if they had received a distribution from the Subsidiary Debtors' Estates of an undivided interest in each of the Trust Assets (to the extent of the value of their respective share in the applicable Trust Assets) and then contributed such interests to the Plan Trust, and the Plan Trust Beneficiaries will be treated as the grantors and owners thereof.

**(k) Limitation of Liability.**

No recourse will ever be had, directly or indirectly, against the Plan Trustee or its officers, directors, employees, professionals, representatives, agents, successors, or assigns, by legal or equitable proceedings or by virtue of any statute or otherwise, or any deed of trust, mortgage, pledge, or note, nor upon any promise, contract, instrument, undertaking, obligation, covenant, or agreement whatsoever executed by the Plan Trust under this Plan or by reason of the creation of any indebtedness by the Plan Trust or the Plan Trustee under this Plan. All such liabilities under this Plan will be enforceable only against, and will be satisfied only out of, the Trust Assets. The Plan Trustee and its agents shall not be deemed to be the agent for any Holder of a Claim in connection with distributions made under this Plan. The Plan Trustee and its officers, directors, employees, professionals, representatives, agents, successors, or assigns will not be liable for any act they may do, or omit to do hereunder in good faith and in the exercise of their sound business judgment; provided, however, that the limitations of liability set forth in this section will not apply to any gross negligence or willful misconduct by any of the foregoing.

**(l) Term of the Plan Trust.**

The Plan Trustee shall be discharged and the Plan Trust shall be terminated, at such time as (a) all Disputed Claims have been resolved, (b) all of the Trust Assets have been liquidated, (c) all duties and obligations of the Plan Trustee under the Trust Agreement have been fulfilled, (d) all Distributions required to be made under this Plan and the Trust Agreement have been made, (e) the Plan Trustee shall

have filed with the Court a final report of assets administered and (f) the Subsidiary Debtors' Chapter 11 Cases have been closed.

**(m) Retention of Professionals.**

Subject to the terms of this Plan and Confirmation Order to the extent they address the treatment and payment of Professional Fees incurred prior to the Effective Date, the Plan Trustee may retain and compensate attorneys and other professionals to assist in their duties, on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate, without Bankruptcy Court approval. Subject to the terms of this Plan, upon the appointment of the Plan Trustee under the Trust Agreement, any Professionals retained by the Subsidiary Debtors shall no longer be obligated or required to continue to represent the Subsidiary Debtors after the Effective Date (unless such Professionals have agreed in writing to continue such representation) and, if such Professional elects to withdraw from such representation, such Professional shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Chapter 11 Cases and the confirmation of this Plan. The confirmation of this Plan shall constitute any necessary consent and court approval to withdraw from such representation. However, such Professionals shall be deemed retained after such date with respect to (a) applications filed pursuant to sections 330 and 331 of the Bankruptcy Code and (b) motions seeking the enforcement of the provisions of this Plan or the Confirmation Order.

**(n) Conflicts between the Trust Agreement and the Plan.**

In the event of any inconsistencies or conflict between the Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

**(o) Cancellation of Existing Securities and Agreements.**

Except for purposes of evidencing a right to Distributions under this Plan or as otherwise provided hereunder, on the Effective Date, all agreements and other documents evidencing Claims or Interests or rights of any Holder of a Claim against or Interest in any of the Subsidiary Debtors, including, but not limited to, all indentures, notes, bonds, and share certificates evidencing such Claims and Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void, and satisfied, as against the Subsidiary Debtors but not as against any other Person or Entity.

**(p) Automatic Stay.**

Subject to the terms of this Plan, the automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date.

**(q) Books and Records.**

Subject to the terms of this Plan, as part of the appointment of the Plan Trustee, to the extent not already transferred on the Effective Date, the Subsidiary Debtors shall transfer dominion and control over all of their books and records to the Plan Trustee in whatever form, manner, or media those books and records existed immediately prior to the transfer thereof to the Plan Trustee. The Plan Trustee may abandon or dispose of all such books and records on or after ninety (90) days from the Effective Date; provided, however, that the Plan Trustee shall not abandon or dispose of any books and records (a) that are reasonably likely to pertain to pending or contemplated litigation in which the Subsidiary Debtors or

their current or former officers or directors are or likely will become a party and/or (b) in a manner that fails to prevent disclosure of account numbers and personally identifiable information of customers, employees of customers, and other third parties. Pursuant to section 554 of the Bankruptcy Code, this Plan shall constitute a motion and notice, so that no further notice or Bankruptcy Court filings are required, to effectuate the aforementioned abandonment or disposal of the books and records of the Subsidiary Debtors.

**(r) D&O / E&O Insurance Policies.**

No prepaid D&O / E&O Insurance Policy shall be cancelled, and the Subsidiary Debtors' directors, officers, and employees who have valid claims against the D&O / E&O Insurance Policies for indemnification, defense, reimbursement, or limitation of liability may be paid from the D&O / E&O Insurance Policies to the extent of the coverage provided by the D&O / E&O Insurance Policies. As such, and notwithstanding anything in this Plan to the contrary, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the D&O / E&O Insurance Policies, to the extent the contract providing for such is determined to be an executory contract, shall be deemed assumed by the Subsidiary Debtors and assigned to the Plan Trustee.

**(s) Additional Transactions Authorized under This Plan.**

On or after the Effective Date, the Plan Trustee shall be authorized to take any such actions as may be necessary or appropriate to carry out the provisions of this Plan.

**(t) Comprehensive Settlement of Claims and Controversies.**

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good-faith compromise and settlement of all Claims or controversies relating to the rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Distribution to be made pursuant to this Plan on account of any Allowed Claim or Allowed Interest. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are fair, equitable, and reasonable and are in the best interests of (a) the Subsidiary Debtors and their Estates and their respective property and (b) Claim and Interest Holders.

**3.07  Corporate Restructuring of AHGI**

The Reorganized Debtor shall cancel all of the existing classes of equity of the Debtor. The Reorganized Debtor shall authorize the issuance of 10,000,000 shares of a single class of voting common stock to be issued pursuant to the provisions of Section 2.03 hereof. The initial board of directors of the Reorganized Debtor shall consist solely of Mike Pruitt until his successors is duly elected. The initial officers of the Reorganized Debtor shall consist of Mike Pruitt as Chief Executive Officer and Steve Hoelscher as Chief Financial Officer until their successors are appointed. The Reorganized Debtor shall take such action as may be necessary and appropriate to cancel the listing of AHGI with public markets.

# ARTICLE IV
## TREATMENT OF EXECUTORY CONTRACTS,
## UNEXPIRED LEASES, AND INSURANCE POLICIES

**4.01    Deemed Rejection of Executory Contracts and Unexpired Leases.**

Unless already assumed or rejected by Final Order in the Chapter 11 Cases, all executory contracts and unexpired leases of the Debtors that are not the subject of a pending application to assume as of the Confirmation Date shall be deemed rejected on the Effective Date except as provided in this Plan, including, but not limited to, Sections 6.3 and 6.4.

The Unexpired Leases of AHGI at its Oregon locations are assumed pursuant to the Plan with $0.00 cure amount.

**4.02    Rejection Claims.**

**(a)    Rejection by the Plan.**

Holders of Claims as a result of the rejection of an executory contract or unexpired lease by the terms of this Plan shall file a Proof of Claim for rejection damages no later than thirty (30) days after the Effective Date, failing which such Claim shall be disallowed.

**(b)    Rejection by Means Other than by the Plan.**

Holders of Claims as a result of the rejection of an executory contract or unexpired lease, other than by the terms of this Plan, shall follow the procedures for filing a claim previously set forth in such order authorizing rejection, failing which such Claim shall be disallowed in its entirety.

**4.03    Assumed Contracts and Unexpired Leases.**

The Debtors shall assume those Executory Contracts and Unexpired Leases set forth on an exhibit attached to any Plan Supplement with cure amounts specified in any such Plan Supplement. If no such cure amount is specified with respect to an Assumed Contract or Unexpired Lease, such cure amount shall be $0.00. If such counterparty to the proposed Executory Contracts and Unexpired Leases to be assumed under this Plan disagrees with the cure amount set forth in this Section or on an exhibit attached to the Plan Supplement, the party must file an objection with the Bankruptcy Court not later than (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute a finding by the Bankruptcy Court that (a) each such assumption is in the best interest of the Debtors and their Estates, (b) the requirements of section 365(b)(1) of the Bankruptcy Code are deemed satisfied, and (c) the assumption of any Executory Contract or Unexpired Lease pursuant to this Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether money or nonmonetary, as of the Effective Date.

**4.04    Insurance Policies and Agreements.**

To the extent that the insurance policies issued to, or insurance agreements entered into by, any Debtor before the applicable Petition Date constitute Executory Contracts under section 365 of the Bankruptcy Code, this Plan will constitute a motion to assume such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order, or agreed to by the Debtors before the Effective Date, no payments are required to cure any defaults of any Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.

Nothing contained in this Plan will constitute a waiver of any claim, right, or Cause of Action that any Debtor or the Plan Trust may hold against an insurer of any of the Debtors under any policy of insurance or insurance agreement.

**4.05    Postpetition Contracts and Leases.**

All contracts, agreements, and leases that were entered into by the Debtors, or assumed by the Debtors, after the applicable Petition Date shall be deemed assigned by the Debtors to the Plan Trustee on the Effective Date.

**4.06    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in this Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contracts or Unexpired Leases including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under this Plan. Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**ARTICLE V**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**5.01    Distributions Made by the Plan Trustee.**

All Distributions under this Plan to the Holders of claims of the Subsidary Debtors shall be made by the Plan Trustee pursuant to this Plan and the Trust Agreement. All Distributions under this Plan shall be made in accordance with the priorities established by this Plan.

**(a)    Timing and Calculation of Amounts to Be Distributed.**

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such

Disputed Claims shall be made pursuant to the provisions set forth in this Article Except as otherwise provided in this Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the Distributions provided for in this Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

**(b)  Single Recovery.**

There will be only a single recovery on account of each Allowed Claim. No Holder of an Allowed Claim will be entitled to receive more than payment in full of its Allowed Claim, and each Claim will be administered and treated in the manner provided by this Plan until payment in full of that Allowed Claim.

**(c)  Distributions on Account of Claims Allowed after the Effective Date.**

Except as otherwise provided in this Plan, the Confirmation Order, or a Final Order, or as agreed to by the relevant parties, Distributions under this Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made as soon as reasonably practicable after the Disputed Claim becomes an Allowed Claim.

**(d)  Special Rules for Distributions to Holders of Disputed Claims.**

Notwithstanding any provision to the contrary in this Plan and except as otherwise agreed to by the relevant parties, no partial payments and no partial Distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order. In the event that there are Disputed Claims requiring adjudication and resolution, the Plan Trustee, in accordance with this Plan and the Trust Agreement, shall establish appropriate Reserves for potential payment of such Claims.

**(e)  Means of Cash Payment.**

Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of the Plan Trustee by checks or wire transfers. Cash payments to foreign creditors may be made, at the option of the Plan Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

**(f)  Minimum; De Minimis Distributions.**

No Cash payment of less than $25.00, in the reasonable discretion of the Plan Trustee, shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

**(g)  Withholding and Reporting Requirements.**

In connection with this Plan and all Distributions thereunder, the Plan Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. In accordance with the Trust Agreement, the Plan Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Distribution to be made under this Plan to generate sufficient funds to pay applicable withholding taxes or establishing such other mechanisms that the Plan

Trustee believes are reasonable and appropriate. All persons holding Claims or Interests shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution. No Distribution shall be made to or on behalf of such Holder pursuant to this Plan unless and until such Holder has made arrangements satisfactory to the Plan Trustee for the payment and satisfaction of such tax obligations.

**(h) Compliance Matters.**

The Plan Trustee shall be entitled to allocate and distribute all Distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, Liens, and similar encumbrances.

**(i) Setoff and Recoupment.**

The Plan Trustee may, pursuant to sections 553 and/or 558 of the Bankruptcy Code or applicable non-bankruptcy laws, but shall not be required to, set off and/or recoup against any Claim the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Estates or the Plan Trustee may have against the Holder of such Claim; provided, however, that neither the failure to assert such rights of setoff and/or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Plan Trustee of any claim that the Estates or the Plan Trustee may assert against any Holder of an Allowed Claim.

**(j) Undeliverable or Non-Negotiated Distributions and Unclaimed Property.**

If any Distribution is returned as undeliverable, no further Distributions to the applicable Holder shall be made unless and until the Plan Trustee is notified in writing of such Holder's then- current address, at which time the undelivered Distribution shall be made to such Holder without interest or dividends; provided, however, such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the date the Distribution is made. Notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary, all undeliverable Distributions under this Plan that remain unclaimed for one year after attempted distribution shall indefeasibly revert to the Plan Trust. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed Distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Checks issued on account of Allowed Claims shall be null and void if not negotiated within ninety (90) calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Plan Trustee by the Holder of the relevant Allowed Claim within the 90-calendar- day period. After such date, Distributions to the Holder of the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be deemed undeliverable as of the date of the original issuance of the check and shall indefeasibly revert to the Plan Trust in accordance with the terms hereof, notwithstanding any federal or state escheat laws to the contrary.

**(k)  Claims Paid by Third Parties.**

To the extent a Holder receives a Distribution on account of a Claim and also receives payment from a party, other than an insurer or surety, that is not the Plan Trustee on account of such Claim, such Holder shall, within thirty calendar days of receipt thereof, repay or return the Distribution to the Plan Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the amount of the Claim as of the date of any such Distribution under this Plan.

## ARTICLE VI
## PROCEDURES FOR RESOLVING
## CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

**(a)  Allowance of Claims.**

After the Effective Date, the Plan Trustee shall have and retain any and all rights and defenses the Subsidiary Debtors had with respect to any Claim or Interest immediately before the Effective Date, other than Claims that are Allowed under this Plan or pursuant to a Final Order entered by the Bankruptcy Court on or before the Effective Date. Except as expressly provided in this Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under this Plan or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

**(b)  Claims Administration Responsibilities.**

Except as otherwise specifically provided in this Plan, after the Effective Date, the Plan Trustee shall have the sole authority to: (a) reconcile Claims, file, litigate to judgment, or withdraw objections to Claims; (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust (or cause to be administered or adjusted) the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**(c)  Adjustment to Claims Without Objection.**

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Plan Trustee without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**(d)  Time to File Objections to Claims.**

Any objections to Claims shall be filed on or before the Claims Objection Bar Date.

**(e)  Disallowance of Claims.**

Any Claims held by an Entity from which property may be recoverable pursuant to a Reserved Cause of Action under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such

Claims may not receive any distributions on account of such Claims until such time as such Reserved Causes of Action or Avoidance Action against that Entity have been settled or a Final Order with respect thereto has been entered.

**(f)   Late-Filed Claims.**

Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the applicable Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims will not receive any Distributions on account of such Claims, unless on or before the Confirmation Hearing such late-filed Claims have been deemed timely filed by a Final Order.

**(g)   Amendments to Claims.**

On or after the Effective Date, except as provided in this Plan or the Confirmation Order, a Claim may not be filed or amended without the prior authorization of the Bankruptcy Court and the Plan Trustee, and any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further action.

**(h)   No Distributions Pending Allowance.**

If an objection to a Claim or portion thereof is filed as set forth in Article VIII of this Plan, no payment or Distribution provided under this Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

**(i)   Distributions after Allowance.**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Plan Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, less any previous Distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim.

**(j)   Remedies Not Exclusive.**

All of the Claims objection and estimation procedures set forth in this Article are cumulative and not exclusive of one another.

## ARTICLE VII
## EFFECT OF PLAN CONFIRMATION

### 7.01   Binding Effect.

On the Effective Date, except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, all provisions of this Plan or the Plan Supplement, including all agreements, instruments, and other documents filed in connection with this Plan and executed by the Debtors in connection with this Plan or

the Plan Supplement, shall be binding upon the Debtors and their Estates, the Plan Trust, and all Holders of Claims against and Interests in the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan, and all other parties that are affected in any manner by this Plan. Except as expressly provided otherwise in this Plan, all agreements, instruments, and other documents filed in connection with this Plan shall be given full force and effect, and shall bind all parties referred to therein as of the Effective Date, whether or not such agreements are actually issued, delivered, or recorded on the Effective Date or thereafter and whether or not a party has actually executed such agreement.

**7.02    Exculpation.**

From and after the Effective Date, the Exculpated Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or an Interest, or any other party in interest, or any of their respective current or former employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or Affiliates, or any of their successors or assigns, for any Post-Petition Date act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating, or implementing this Plan, the Plan Supplement, the Disclosure Statement, the solicitation of acceptances of this Plan, Confirmation, and the pursuit thereof, the consummation of this Plan, the administration of this Plan, the property to be distributed under this Plan, or any other Post-Petition Date act taken or omitted to be taken in connection with the Chapter 11 Cases or implementation of this Plan.

Notwithstanding the foregoing, solely to the extent provided by section 1125(e) of the Bankruptcy Code, the Debtors' Estates shall neither have, nor incur any liability to any Entity for any exculpated Claim; provided, however, that the foregoing "Exculpation" shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted fraud, willful misconduct or gross negligence.

Any of the Exculpated Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under this Plan.

**7.03    Injunctions .**

**(a)    Term of Bankruptcy Injunction or Stays.**

All injunctions or stays provided for in the Chapter 11 Cases under section 105 or section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**(b)    Liability to Governmental Units.**

Nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date; (iii) any liability to a Governmental Unit under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors. Nor shall anything in this Order enjoin or otherwise

bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence.

Further, nothing in this Confirmation Order, the Plan, any amendments thereto, or related documents, authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in this Order shall relieve any entity from any obligation to address or comply with information requests or inquiries from any Governmental Unit. Nothing in this Order shall affect any setoff or recoupment rights of any Governmental Unit. Nothing in this Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Order or to adjudicate any defense asserted under this Order.

For the avoidance of doubt, the foregoing shall not limit the scope of discharge of all Claims and Interests arising prior to the Effective Date under sections 524 and 1141 of the Bankruptcy Code, or limit the Debtors' rights under section 525 of the Bankruptcy Code. Nothing in the Confirmation Order or this Plan shall affect any setoff or recoupment rights of any Governmental Unit.

For the avoidance of doubt, the State of Texas and its agencies, including but not limited to the Texas Alcohol and Beverage Committee, opts out of any and all releases provided in the Plan.

**ARTICLE VIII**
**MISCELLANEOUS PROVISIONS**

**8.01    Effectuating Documents and Further Transactions.**

Each of the Debtors, and the Plan Trustee is authorized to execute, deliver, file, or record such contracts, instruments, certificates, notes, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of this Plan.

**8.02    Exemption from Transfer Taxes.**

Pursuant to section 1146(a) of the Bankruptcy Code: (a) the issuance, transfer, or exchange of equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; or (c) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation, or dissolution, deeds, bills of sale, and transfers of tangible property, specifically including but not limited to transfers made pursuant to the Auction Order, will not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing, or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state, or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**8.03     Payment of Statutory Fees.**

All Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtor or the Plan Trustee on the Effective Date. After the Effective Date, AHGI and the Plan Trustee, shall be liable for any and all respective Quarterly Fees when they are due and payable after the Effective Date. The Debtors shall file all Quarterly Reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, AHGI and the Plan Trustee shall timely file with the Bankruptcy Court Quarterly Reports in a form reasonably acceptable to the U.S. Trustee, which reports shall include a separate schedule of disbursements made by the Plan Trustee and AHGI, as the case may be, during the applicable period. AHGI and the Plan Trust shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

**8.04     Amendment or Modification of this Plan.**

Subject to section 1127 of the Bankruptcy Code, the Plan Proponents, collectively or singularly, may alter, amend, or modify this Plan or any exhibits thereto at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan. Any Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim of such Holder.

**8.05     Closing of Chapter 11 Cases; Caption Change.**

The Plan Trustee shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases. Upon the filing of a motion to close the Chapter 11 Cases, the Plan Trustee shall file a final report with respect to all of the Chapter 11 Cases.

**8.06     Successors and Assigns.**

This Plan shall be binding upon and inure to the benefit of the Debtors and the Estates and their successors and assigns, including, without limitation, the Reorganized Debtor. The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Entity.

**8.07     Non-Consummation.**

Any proposed settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Interest or Class of Claims or Interests), any proposed assumption or rejection of Executory Contracts or Unexpired Leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall not become effective until the Effective Date. Until the Effective Date, nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, the Debtors or any other Person, or (ii) prejudice in any manner the rights of the Debtors, the Chapter 11 Trustees, or any other Person.

**8.08    Notice to Debtors, Reoganized Debtor or Plan Trustee.**

All notices, requests, and demands to or upon the Debtors, the Plan Trustee or the Reorganized Debtor to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| Party | Notice Address: |
|-------|-----------------|
| Debtor/Reorganized Debtor: | c/o Mike Pruitt<br>CEO<br>Amergent Hospitality Group, Inc. (AMHG)<br>7529 Red Oak Lane<br>Charlotte NC 28226<br>Email: mp@amergenthg.com<br><br>*with copy to:*<br>Richard G. Grant<br>Tex. Bar No. 08302650<br>CM LAW PLLC<br>National Litigation Support Center<br>13101 Preston Road, Suite 110-1510<br>Dallas, Texas 75240<br>Telephone: 214-210-2929<br>Email: rgrant@cm.law |

and with respect to matters relating to the Plan Trustee's role and responsibilities under this Plan, a copy to the notice address(es) provided in the Trust Agreement. Copies of all such Notices shall also be given to the following:

**8.09    Governing Law.**

Subject to the provisions of any contract, certificates, or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, and subject further to Section 11.1 of this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with (a) the Bankruptcy Code, the Bankruptcy Rules, or other federal law to the extent applicable and (b) if none of such law is applicable, the laws of the State of Texas, without giving effect to the principles of conflicts of law of such jurisdiction.

**8.10    Exhibits.**

All exhibits to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

**8.11 Filing of Additional Documents.**

On or before substantial consummation of this Plan, the Debtors shall, as applicable, file such agreements and other documents as may be necessary or appropriate to effectuate and evidence further the terms and conditions of this Plan.

**8.12 Plan Documents.**

This Plan and the Plan Supplement, including all exhibits, supplements, appendices, and schedules thereto, and any modifications to any of the foregoing, shall be in form and substance acceptable to the Plan Proponents.

**8.13 Reservation of Rights.**

Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order. The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Plan Proponents with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Plan Proponents or any other Person with respect to Claims against and Interests in the Debtors.

## ARTICLE IX
## DEFINED TERMS AND RULES OF INTERPRETATION

**9.01 Defined Terms.**

As used in this Plan, capitalized terms shall have the meanings set forth in this <u>Article I</u>. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**Administrative Expense Claim** means a Claim for costs and expenses of administration of the Chapter 11 Cases arising after the Petition Date and prior to the Effective Date under sections 326, 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estates and operating the businesses of the Debtors after the Petition Date and Claims of Governmental Units for taxes (including tax audit Claims) related to tax years commencing after the Petition Date, but excluding Claims related to tax periods, or portions thereof, ending on or before the Petition Date; (b) any Professional Fee Claim or Plan Trustee Fee Claims, to the extent Allowed by Final Order under sections 326, 328, 330, 331 or 503 of the Bankruptcy Code; (c) with the exception of Claims arising under section 507(b) of the Bankruptcy Code, any indebtedness or obligations incurred or assumed by the Debtors during the Chapter 11 Cases; or (d) any Quarterly Fees.

**Affiliate** has the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

**Allowed** means, with respect to a Claim or Interest, such Claim or Interest or any portion thereof to which a Debtor or other party in interest has not objected, and is not disputed, contingent or unliquidated, as of the Claims Objection Bar Date, or that has been (a) allowed by an order of the Bankruptcy Court, (b) allowed pursuant to the terms of this Plan, (c) following the Effective Date, allowed by agreement between the Holder of such Claim or Interest and the Plan Trustee or (d) allowed by an

order of a court in which such Claim or Interest could have been determined, resolved, or adjudicated if the Chapter 11 Cases had not been commenced; provided, however, that the Plan Trustee shall retain all Causes of Action and defenses with respect to Allowed Claims that are Unimpaired pursuant to this Plan (including, for the avoidance of doubt, Administrative Expense Claims not paid prior to the Effective Date).

**Avoidance Actions** means (a) any and all claims for relief against any and all third parties for the recovery of transfers of Cash, offsets, debt forgiveness and other types or kinds of property, or the value thereof, recoverable pursuant to sections 502, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code, or otherwise applicable non-bankruptcy law, (b) any claims or causes of action of the Estates under section 510 of the Bankruptcy Code or under other applicable laws, and (c) all claims or causes of action that arise under chapter 5 of the Bankruptcy Code.

**Ballot** means the form distributed to each Holder of an Impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

**Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 through 1532, as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

**Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas (Fort Worth Division).

**Bankruptcy Rules** means, collectively: (a) the Federal Rules of Bankruptcy Procedure promulgated by the United States Supreme Court under section 2075 of Title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as in effect on the Petition Date, together with any amendments and modifications thereto that may subsequently be made applicable to the Chapter 11 Cases.

**Business Day** means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**Cash** means the equivalent of legal tender of the United States of America, however paid or transmitted.

**Cause of Action** means any claim, cause of action (including Avoidance Actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, including without limitation claims for consequential or punitive damages, assertable directly or derivatively, whether arising before, on, or after the applicable Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**Chapter 11 Cases** means, collectively, the chapter 11 bankruptcy proceedings in the Bankruptcy Court with the following case numbers: Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform

LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (24-42494).

**Claim** means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

**Claims Bar Date** means the applicable bar date by which Proofs of Claim must be filed, as established by: (a) the applicable Claims Bar Date Order; (b) a Final Order of the Bankruptcy Court; or (c) this Plan.

**Claims Objection Bar Date** means <u>90 days</u> after the Effective Date, subject to the right of the Plan Trustee to seek an extension of such date by motion served on parties requesting notice pursuant to Bankruptcy Rule 2002.

**Claims Register** means that certain register maintained by the Bankruptcy Court or the Claims Agent containing a list of all of the proofs of claim that have been filed in the Chapter 11 Cases.

**Class** means each category of Holders of Claims or Interests established under Article II of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the Bankruptcy Court's docket(s).

**Confirmation Hearing** means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

**Confirmation** means the entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** means an order confirming this Plan, in form and substance satisfactory to the Plan Proponents.

**D&O / E&O Insurance Policies** means all primary and excess insurance policies of each of the Debtors that provide for, among other things, coverage for liability related to the actions or omissions of each of the Debtors' directors and officers.

**Debtors** means, collectively, the debtors and debtors in possession in each of these Chapter 11 cases including, without limitation, Amergent Hospitality Group, Inc. (24-42483); I10/I20 Cuisine LLC (24-42482); LBB Acquisition, LLC (24-42484); LBB Acquisition 1 LLC (24-42485); LBB Platform LLC (24-42487); LBB Lake Oswego LLC (24-42489); LBB Progress Ridge LLC (24-42490); Noveno LLC (Alberta) (24-42491); Quinto LLC (Division) (24-42492); Sexto LLC (Waterfront) (24-42493); and Cuarto LLC (Eugene) (24-42494).

**Definitive Documentation** means the definitive documents and agreements governing this Plan and the transactions contemplated thereunder (including any related orders, agreements, instruments, schedules, or exhibits) that are contemplated by and referenced in this Plan (as amended, modified, or supplemented from time to time), including: (a) this Plan (and all exhibits and other documents and instruments related thereto); (b) the Plan Supplement; (c) the Disclosure Statement; (d) the Trust

Agreement; and (e) the Confirmation Order, which shall be in each case in form and substance reasonably acceptable to the Plan Proponents.

**Disclosure Statement** means the written disclosure statement that relates to this Plan (including, without limitation, all exhibits and schedules to such Plan, as the same may be amended, supplemented or otherwise modified from time to time, in a manner acceptable to the Plan Proponents), as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**Disputed Administrative and Priority Claim** has the meaning given to such term in Section 5.10(a) of this Plan.

**Disputed** means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

**Distribution Date** means (a) the Initial Distribution Date with respect to any Distribution to be made under this Plan on the Initial Distribution Date, and (b) with respect to all other Distributions to be made under this Plan, such date(s) as provided in the Trust Agreement, or as otherwise established by the Plan Trustee in accordance with the Trust Agreement.

**Distribution** means any payment of Cash or property to any Holder of an Allowed Claim as provided in this Plan.

**Distribution Record Date** means the record date for determining entitlement to receive Distributions under this Plan on account of Allowed Claims, which date shall be the third Business Day after the Confirmation Date at 5:00 p.m. (prevailing Central time).

**Effective Date** means a date to be specified by the Plan Proponents in a Notice of Effective Date to be filed with the Bankruptcy Court in accordance with this Plan to occur no later than 60 days after entry of the Confirmation Order.

**Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

**Estate** means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

**Exculpated Parties** means the Debtor and the Reorganized Debtor.

**Executory Contracts** means all executory contracts to which any Debtor is a party.

**Existing Equity Interests** means the Interests in the Debtors as of the Petition Date except for Intercompany Interests.

**Final Order** means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered on the docket by the clerk of such court, which order or judgment has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari* or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have

been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to submit any further appeal, petition for *certiorari* or motion for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion pursuant to section 502(j) or 1144 of the Bankruptcy Code or under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not solely cause such order not to be a Final Order.

**General Unsecured Claims** means Claims that are not secured, excluding (a) Administrative Expense Claims, (b) priority claims, including Priority Tax Claims and Other Priority Claims, (c) Professional Fee Claims, (d) Plan Trustee Fee Claims, and (e) Intercompany Claims.

**Governmental Unit** has the meaning provided in section 101(27) of the Bankruptcy Code.

**Holder** means an Entity holding a Claim or Interest.

**Impaired** has the meaning provided in section 1124 of the Bankruptcy Code.

**Initial Distribution Date** means that date which is five (5) Business Days following the Effective Date, or as soon thereafter as is practicable.

**Insider Claims** means any Claim held by (a) any Person that is an Insider of any of the Debtors or (b) any entity that was or is wholly owned or controlled by an Insider.

**Insider** has the meaning provided in section 101(31) of the Bankruptcy Code.

**Intercompany Claim** means any Claim that is held by a Debtor against any other Debtor arising at any time prior to or as of the Effective Date.

**Intercompany Interests** means any Interest in a Debtor held by another Debtor.

**Interest** means any equity security, as such term is used in section 101(16) of the Bankruptcy Code, in a Debtor.

**Lien** means, with respect to any interest in property, any mortgage, "lien" as defined in section 101(37) of the Bankruptcy Code, pledge, charge, security interest, easement, or encumbrance of any kind whatsoever affecting such interest in property.

**Net Available Proceeds** means the gross proceeds generated from the collection, liquidation, disposition and/or recovery of Trust Assets, less (a) the actual and reasonable fees and expenses of the Plan Trustee, including reasonable attorney's fees, incurred to collect, liquidate, recover and/or administer such assets, (b) amounts required by this Plan to be paid to the Holders of Allowed Administrative Expense Claims, Professional Fee Claims, Plan Trustee Fee Claims, Priority Tax Claims, and Other Priority Claims, (c) amounts required by this Plan to be paid to the Holders of Allowed Claims in Classes 1 and 2, (d) the amount required to fund the Distribution Account, and (e) Reserves established by the Plan Trustee pursuant to 3.04 of this Plan.

**Other Priority Claim** means a General Unsecured Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code that is not a Priority Tax Claim.

**Oversight Committee** shall consist of Paul Mannion, Steve Apolant and a qualified third member selected by them pursuant to Section 3.03(b).

**Person or person** means a person as defined in section 101(41) of the Bankruptcy Code.

**Petition Date** means July 18, 2024.

**Plan** means this joint chapter 11 plan of liquidation for the Debtors' estates, jointly proposed and filed by the Plan Proponents, including all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**Plan Proponents** shall mean the Debtors.

**Plan Supplement** means the supplement to this Plan, in a form reasonably acceptable to the Plan Proponents, to be filed with the Bankruptcy Court no later than 10 days prior to the Voting Deadline and shall include the Trust Agreement.

**Plan Trust Beneficiaries** means the Holders of Allowed Claims.

**Plan Trust** means the trust created for the benefit of the Holders of Allowed Claims.

**Plan Trustee** means Mike Pruitt [the current CEO of the Debtor] and appointed pursuant to this Plan and the Trust Agreement and his successors as may be appointed by the Oversight Committee.

**Priority Tax Claim** means any Claim of a Governmental Unit against any Debtor entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code or a specified section of section 502(i) of the Bankruptcy Code.

**Pro Rata** means a proportion calculated as the ratio of (a) the amount of an Allowed Claim in a Class to the amount of all Allowed Claims in such Class, in the event that all Claims in the Class have been Allowed, or (b) prior to the allowance or disallowance of all Claims in a Class, the amount of an Allowed Claim in a Class to the sum of all Allowed Claims and Disputed Claims (in their face amount or estimated maximum allowable amount) in such Class.

**Professional Fee Claim** means any Claim of a Professional for allowance of compensation and/or reimbursement of costs and expenses incurred in the respective Chapter 11 Cases on or before the Effective Date.

**Professional Fees Escrow Account** means the account established pursuant to 3.04(b) of this Plan.

**Professional** means any Entity retained by the Debtors, the Subchapter V Trustee in accordance with a Final Order entered in a Bankruptcy Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code.

**Proof of Claim** means a written statement filed with the Court setting forth a creditor's claim pursuant to section 501 of the Bankruptcy Code and Rule 3001 *et. seq.* of the Bankruptcy Rules.

**Punitive Damage Claims** means General Unsecured Claims seeking non-compensatory damages, or damage multipliers, based on statutory, common law, equitable, or other punitive damage theories of relief.

**Quarterly Fees** means all fees payable to the Office of the United States Trustee.

**Reorganized Debtor** means AHGI after the Effective Date.

**Reserved Causes of Action** means all Causes of Action assertable by the Debtors, directly or derivatively, other than any Causes of Action that are released pursuant to the exculpation provisions in Section 7.02 of this Plan. The Reserved Causes of Action shall include, without limitation, all causes of action against Robert Hersch and his Affiliates including, without limitation, Oz Rey, LLC.

**Section 510(b) Claim** means a Claim that is subordinated, or subject to subordination, pursuant to section 510(b) of the Bankruptcy Code, including, without limitation, a Claim arising from the rescission or purchase of a sale or security of the Debtors or an Affiliate of the Debtors, for damages arising from the purchase or sale of such security or for reimbursement or contribution on account of such Claim pursuant to section 502 of the Bankruptcy Code.

**Secured Claim** means Claim for which performance is secured by a Lien.

**Securities Act** means the Securities Act of 1933, as now in effect or hereafter amended, and the rules and regulations of the U.S. Securities and Exchange Commission promulgated thereunder.

**Subsidiary Debtor** means each of the Debtors other than AHGI.

**Trust Agreement** means that certain Liquidating Trust Agreement, in a form reasonably acceptable to the Debtors to be filed as an exhibit to the Plan Supplement.

**Trust Assets** means all assets of the Subsidiary Debtors including, without limitation, the cash proceeds of the sales of the restaurants.

**U.S. Trustee** means the Office of the United States Trustee for the Northern District of Texas.

**Unexpired Lease** means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

**Unimpaired** means with respect to a Claim, a Claim that is not Impaired

## 9.02 <u>Rules of Interpretation.</u>

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions

means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule, or exhibit filed or to be filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) all references in this Plan to Sections or Articles are references to Sections or Articles of this Plan or the Plan Supplement, as the same may be amended, waived, or modified from time to time; (f) the words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular Section, subsection, or clause contained in this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code (other than section 102(5) of the Bankruptcy Code) will apply; and (i) any reference to an Entity's "subsidiaries" means its direct and indirect subsidiaries.

### 9.03    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply. In the event that any payment, Distribution, act, or deadline under this Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or Distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but if so made, performed, or completed by such next succeeding Business Day shall be deemed to have been completed or to have occurred as of the required date.

### 9.04    Exhibits and Plan Supplement.

All exhibits to this Plan, as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein. Holders of Claims and Interests may obtain a copy of the Plan Supplement and the filed exhibits upon written request to counsel for the Debtor at rgrant@cm.law. Upon their filing, the Plan Supplement and the exhibits may be inspected (i) in the office of the Clerk of the Bankruptcy Court during normal business hours, (ii) at the Bankruptcy Court's website at http://www.txnb.uscourts.gov,.

### 9.05    Deemed Acts.

Whenever an act or event is expressed under this Plan to have been deemed done or to have occurred, it shall be deemed to have been done or to have occurred by virtue of this Plan and/or Confirmation Order without any further act by any party.

Respectfully Submitted,

| Debtor | Case No. | Identifier |
|---|---|---|
| Amergent Hospitality Group, Inc. | 24-42483 | AHGI |
| I10/I20 Cuisine LLC | 24-42482 | BCK |
| LBB Acquisition, | 24-42484 | LBB Acquisition |
| LBB Acquisition 1 LLC | 24-42485 | LBBA1 |

September 2, 2025

| LBB Platform LLC | 24-42487 | LLB Platform |
| LBB Lake Oswego LLC | 24-42489 | LBB Lake Oswego |
| LBB Progress Ridge LLC. | 24-42490 | LBB Progress Ridge |
| Noveno LLC | 24-42491 | LBB Alberta |
| Quinto LLC | 24-42492 | LBB Division |
| Sexto LLC | 24-42493 | LBB Waterfront |
| Cuarto LLC | 24-42494 | LBB Eugene |

By: /s/ Mike Pruitt
     Mike Pruitt,
     CEO and authorized agent of each Joint Debtor
     September 2, 2025